Morris D. Weiss
Texas Bar No. 21110850
**Waller Lansden Dortch & Davis, LLP**
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Tel. (512) 685-6400
Fax (512) 685-6417
morris.weiss@wallerlaw.com

Tyler N. Layne (admitted *pro hac vice*)
Courtney K. Stone (admitted *pro hac vice*)
Texas Bar No. 24093208
**Waller Lansden Dortch & Davis, LLP**
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Tel. (615) 244-6380
Fax. (615) 244-6804
tyler.layne@wallerlaw.com;
courtney.stone@wallerlaw.com

**COUNSEL FOR THE DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 18-60526-rbk** |
| | § | |
| **LITTLE RIVER HEALTHCARE** | § | |
| **HOLDINGS, LLC,** *et al.* | § | **Chapter 11** |
| | § | |
| | § | |
| **Debtors.**[1] | § | |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT, NOR HAS THE BANKRUPTCY COURT APPROVED A DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN.**

---

## DATED: November 28, 2018

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Compass Pointe Holdings, LLC (1142), Little River Healthcare Holdings, LLC (7956), Timberlands Healthcare, LLC (1890), King's Daughters Pharmacy, LLC (7097), Rockdale Blackhawk, LLC (0791), Little River Healthcare - Physicians of King's Daughters, LLC (5264), Cantera Way Ventures, LLC (7815), and Little River Healthcare Management, LLC (6688). The Debtors' mailing address is 1700 Brazos Avenue, Rockdale, TX 76567.

# TABLE OF CONTENTS

**Page**

Article I DEFINITIONS ................................................................5

Article II TREATMENT OF ADMINISTRATIVE CLAIMS ......................................19
    2.1    Treatment .......................................................................19
    2.2    Subsequent Administrative Claims Bar Date ...............................20
    2.3    Professional Fee Claims ......................................................20
    2.4    Allowed Priority Tax Claims ...............................................20
    2.5    U.S. Trustee Fees ...............................................................20
    2.6    DIP Obligations .................................................................20

Article III DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ................21
    3.1    Introduction .....................................................................21
    3.2    Claims Against and Equity Interests in the Debtor ........................21

Article IV PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS ........21
    4.1    Introduction .....................................................................21
    4.2    Treatment of Classified Claims and Equity Interests......................21
    4.3    Designation of Impaired and Unimpaired Classes ...........................23

Article V ACCEPTANCE OR REJECTION OF THIS PLAN ...............................23
    5.1    Classes Entitled to Vote ........................................................23
    5.2    Acceptance by Impaired Classes of Claims ..................................23
    5.3    Cramdown ........................................................................23
    5.4    Elimination of Vacant Classes ...............................................23
    5.5    Presumed Acceptance of Non-Voting Classes ..............................24

Article VI MEANS FOR IMPLEMENTATION OF THIS PLAN .............................24
    6.1    Conditions Precedent to the Effective Date .................................24
    6.2    Asset Purchase Transaction.....................................................24
    6.3    Creation of the Liquidating Trusts ..........................................25
    6.4    Transfer of Liquidating Trust 1 Assets ....................................25
    6.5    Transfer of Liquidating Trust 2 Assets ....................................25
    6.6    Conflicts Between Liquidating Trust Agreements and Plan................25
    6.7    Plan is Motion to Transfer Liquidating Trust 1 Assets ..................25
    6.8    Plan is Motion to Transfer Liquidating Trust 2 Assets ..................26
    6.9    Issuance of Liquidating Trusts' Interests ...................................26
    6.10   Termination of Directors, Officers, and/or Managers of the Debtors...................27
    6.11   Amendment of Debtors' Certificates and Agreements ........................27
    6.12   Abandonment of Non-Vesting Assets ........................................27
    6.13   Cancellation of Equity Interests ...............................................27
    6.14   Authority .........................................................................27
    6.15   Preservation of Rights of Action..............................................28

034414-81107/4817-6732-1466.7

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

Article VII THE LIQUIDATING TRUSTS AND THE LIQUIDATING TRUSTEES ............... 28
    7.1    The Liquidating Trusts ............................................................... 28
    7.2    Funding of Res of Trust ............................................................ 29
    7.3    Liquidating Trust Distributions ................................................ 30
    7.4    The Liquidating Trustees ........................................................... 30
    7.5    Retention of Professionals ........................................................ 31
    7.6    Compensation of the Liquidating Trustees .............................. 31
    7.7    Liquidating Trust Expenses ...................................................... 31
    7.8    Liability; Indemnification ......................................................... 31
    7.9    Termination ............................................................................... 32

Article VIII LIQUIDATING TRUST COMMITTEES ....................................................... 32
    8.1    Creation of Liquidating Trust Committees .............................. 32
    8.2    Procedures ................................................................................. 33
    8.3    Function, Duties, and Responsibilities ..................................... 33
    8.4    Duration .................................................................................... 33
    8.5    Reimbursement of Costs and Expenses ................................... 33
    8.6    Liability; Indemnification ......................................................... 33

Article IX PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ............................ 34
    9.1    Means of Cash Payment ............................................................ 34
    9.2    Delivery of Distribution ............................................................ 34
    9.3    Fractional Dollars; De Minimis Distributions ......................... 34
    9.4    Withholding and Reporting Requirements ............................... 34
    9.5    Setoffs ...................................................................................... 34
    9.6    Claims Paid by Third Parties .................................................... 34
    9.7    Claims Payable by Insurance Carriers ..................................... 35

Article X RESERVES ADMINISTERED BY THE LIQUIDATING TRUSTS ......................... 35
    10.1    Undeliverable Distribution Reserve ........................................ 35
    10.2    Distribution from Reserve ........................................................ 36

Article XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS ............................................................................................ 36
    11.1    Objection Deadline; Prosecution of Objections ...................... 36
    11.2    No Distributions Pending Allowance ....................................... 37

Article XII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................................................... 37

Article XIII EFFECTS OF CONFIRMATION ................................................................. 37
    13.1    Discharge .................................................................................. 37
    13.2    Legal Binding Effect ................................................................ 37
    **13.3**    Release and Covenant Not to Sue ............................................ 38
    **13.4**    Exculpation ............................................................................... 39
    **13.5**    Permanent Injunction ............................................................... 40

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

13.6    Releases by Holders of Claims .................................................................41
13.7    Insurance ....................................................................................................42

Article XIV RETENTION OF JURISDICTION.................................................................43
14.1    Retention ....................................................................................................43
14.2    Rights of the Liquidating Trustees ............................................................44

Article XV MISCELLANEOUS PROVISIONS....................................................................44
15.1    Revocation, Withdrawal or Non-Consummation.....................................44
15.2    Severability of Plan Provisions ................................................................45
15.3    Exemption from Transfer Taxes and Recording Fees.............................45
15.4    Expedited Tax Determination ...................................................................45
15.5    Interest Accrual .........................................................................................45
15.6    Allocation of Plan Distributions between Principal and Interest.............45
15.7    Rules of Interpretation; Computation of Time .........................................46
15.8    The Liquidating Trusts Are Not Successors ............................................46
15.9    Dissolution of the Committee ...................................................................46
15.10  Plan Documents .........................................................................................46
15.11  Reservation of Rights................................................................................46
15.12  Further Assurances....................................................................................47
15.13  Successors and Assigns.............................................................................47
15.14  Governing Law ..........................................................................................47
15.15  Notice of Effective Date ...........................................................................47
15.16  Entire Agreement ......................................................................................47
15.17  Waiver of Stay ..........................................................................................47

Article XVI MODIFICATION OF THIS PLAN...................................................................47

EXHIBIT A    Retained Causes of Action

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

## JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
## LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES

Little River Healthcare Holdings, LLC, and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 Cases[2] jointly propose this *Joint Chapter 11 Plan of Liquidation of Little River Healthcare Holdings, LLC and its Debtor Affiliates* dated November 28, 2018 pursuant to the provisions of chapter 11 of the Bankruptcy Code for the resolution and treatment of the Debtors' outstanding Claims, Liens, and Equity Interests. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Equity Interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Equity Interests set forth in <u>Article III</u> of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is hereby made to the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Little River Healthcare Holdings, LLC and its Debtor Affiliates* for a discussion of, among other things, the history, business, properties, results of operations, and risk factors, a summary and analysis of this Plan, and related matters of the Debtors. All Holders of Claims, Liens, and Equity Interests are encouraged to read both this Plan and the Disclosure Statement before voting to accept or to reject this Plan. In the event of any inconsistencies between this Plan and the Disclosure Statement, the terms and provisions of this Plan shall control. Subject to approval of the Agent, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan at any time prior to Confirmation of the Plan pursuant to the terms herein.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS WHO ARE ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## Article I

## DEFINITIONS

Except as expressly provided or unless the context otherwise requires, the terms set forth in this <u>Article I</u> shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**1.1** <u>**1933 Act**</u> means the Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

---

[2]     Capitalized terms not immediately defined herein shall have the meanings ascribed to them in Article I.
034414-81107/4817-6732-1466.7

**1.2** **Administrative Claim** means an unpaid Claim for payment of an administrative expense of the kind specified in Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a)(2), including Professional Fee Claims and U.S. Trustee Fees.

**1.3** **Administrative Claims Bar Date Order** means the *Order Authorizing the Shortening of the Bar Date for the Filing of Administrative Expense Claims and Priority Claims* [Docket No. 242].

**1.4** **Ad Valorem Tax Claim** means a Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of a Debtors' property and which is secured by a statutory Lien upon that property, or the net proceeds from the sale of such property, to the extent of the value, as of the Effective Date (or such other date as is established by the Bankruptcy Court) of such Lien as determined by a Non-Appealable Order, or as otherwise agreed upon in writing by the Holder of such Claim and (a) the Debtors (if such agreement is effectuated prior to the Effective Date) with consent of the Agent;[3] or (b) the applicable Liquidating Trustee (if such agreement is effectuated on or after the Effective Date).

**1.5** **Agent** means Monroe Capital Management Advisors, LLC, in its capacity as the Pre-Petition Agent for itself and the Pre-Petition Lenders, and as the Post-Petition Agent for itself and the Post-Petition Lenders.

**1.6** **Allowed** means, with reference to a Claim or any portion thereof: (a) a Claim against the Debtors, proof of which, if required, was Filed on or before the Bar Date (or with respect to an Administrative Claim, the Initial Administrative Claims Bar Date or Subsequent Administrative Claims Bar Date, as applicable), which is not a Disputed Claim; (b) if no Proof of Claim was so Filed, a Claim against the Debtors which has been or hereafter is listed by the Debtors in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent and on account of which payment has not been made; or (c) a Claim allowed hereunder or by a Non-Appealable Order. An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released, or waived by the Holder thereof or pursuant to a Non-Appealable Order. Unless otherwise specifically provided in this Plan, or by a Non-Appealable Order of the Bankruptcy Court or otherwise allowed under applicable bankruptcy law, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines, post-petition interest, attorney's fees or other costs.

**1.7** **Allowed Amount** means the amount of any Allowed Claim.

**1.8** **Asset Purchase Transaction** means a Purchaser's acquisition from the Debtors, as Sellers, of any Purchased Assets, pursuant to the Plan and an applicable Purchase Agreement.

---

[3]    Unless expressly required otherwise hereunder, any determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of the Agent or Lenders hereunder or related hereto, shall be in the Agent's and Lenders' sole and absolute discretion.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

**1.9** <u>**Avoidance Actions**</u> means any and all Causes of Action which a trustee, Debtors or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542 through 551, and 553. For the avoidance of doubt, Avoidance Actions exclude any Claims against directors and officers and any insurance coverage of the Debtors for such Claims.

**1.10** <u>**Ballot**</u> means each of the ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims entitled to vote on this Plan, in which the Holder is to indicate acceptance or rejection of this Plan in accordance with the voting instructions and to make any other elections or representations required pursuant to this Plan or re the Disclosure Statement Order.

**1.11** <u>**Bankruptcy Code**</u> means title 11 of the United States Code, as amended.

**1.12** <u>**Bankruptcy Court**</u> means the United States Bankruptcy Court for the Western District of Texas, Waco Division.

**1.13** <u>**Bankruptcy Rules**</u> means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Western District of Texas, each as now in effect or as hereafter amended, to the extent applicable to this Case or proceedings therein, as the case may be.

**1.14** <u>**Bankruptcy Schedules**</u> means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007, as same may be amended, supplemented or modified from time to time.

**1.15** <u>**Bar Date**</u> means (i) with respect to a Claim of a non-governmental entity, November 1, 2018, (ii) with respect to a Claim of a governmental entity, January 20, 2019, (iii) with respect to a Claim for damages arising from the rejection of an executory contract or unexpired lease, thirty days after entry of an Order of the Bankruptcy Court approving the rejection of such executory contract or unexpired lease, (iv) the Initial Administrative Claims Bar Date; (v) the Subsequent Administrative Claims Bar Date; and (vi) such other date as the Bankruptcy Court may fix, or as otherwise established in this Plan.

**1.16** <u>**Business Day**</u> means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Waco, Texas.

**1.17** <u>**Case**</u> means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Court, and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 case assigned Case No. 18-60526-rbk, in the Bankruptcy Court as styled *In re Little River Healthcare Holdings, LLC, et al.*

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

7

**1.18**     **Cash** means legal tender of the United States of America or equivalents thereof.

**1.19**     **Causes of Action** means any and all rights, Claims, causes of action, litigation, suits, proceedings, rights of setoff, rights of recoupment, complaints, defenses, counterclaims, cross-claims and affirmative defenses of any kind or character whatsoever whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, currently existing or hereafter arising, whether Scheduled or not Scheduled and whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring, prior to the Petition Date or during the course of the Case, to and including the Effective Date, including, but not limited to, (a) Claims pursuant to Bankruptcy Code § 362, (b) Claims and defenses such as fraud, mistake, duress and usury, (c) Claims under Bankruptcy Code § 510(c), and (d) all Avoidance Actions.

**1.20**     **Claim** means a claim as defined in Bankruptcy Code § 101(5).

**1.21**     **Claim Objection Deadline** means the later of (a) 365 days after the Effective Date and (b) such other date as may be specifically fixed by an Order.

**1.22**     **Class** means all of the Holders of Claims or Equity Interests with respect to the Debtors having characteristics substantially similar to the other Claims or Equity Interests with respect to the Debtors and which have been designated as a Class in this Plan.

**1.23**     **Collateral** means any property or interest in property of the Debtors subject to a valid, enforceable Lien that secures the payment or performance of any Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

**1.24**     **Committee** means the official committee of unsecured Creditors in the Debtors' chapter 11 Cases.

**1.25**     **Confirmation** means the entry of the Confirmation Order on the Bankruptcy Court's docket.

**1.26**     **Confirmation Date** means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**1.27**     **Confirmation Hearing** means the hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of this Plan pursuant to Bankruptcy Code § 1128, as such hearings may be adjourned or continued from time to time.

**1.28**     **Confirmation Hearing Date** means the date or dates on which the Confirmation Hearing is held.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

8

**1.29** **Confirmation Order** means the Order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129, as such Order may be amended, modified or supplemented.

**1.30** **Credit Agreement** means that certain credit agreement, dated as of March 31, 2015, by and between the Debtors, the Agent, and the Lenders, as amended from time to time.

**1.31** **Creditor** means a Holder of a Claim.

**1.32** **Debtors** means, collectively, each of the debtors in the above-captioned chapter 11 cases as a debtor and debtor-in-possession of its respective Estate.

**1.33** **DIP Agreement** means that certain Debtor-in-Possession Financing Amendment to Credit Agreement, dated as of August 7, 2018, as amended by the Amended and Restated Debtor-in-Possession Financing Amendment to Credit Agreement, dated as of September 4, 2018, the Second Amended and Restated Debtor-in-Possession Financing Amendment to Credit Agreement, dated as of October 18, 2018, the Third Amended and Restated Debtor-in-Possession Financing Amendment to Credit Agreement dated as of [__], 2018, and as otherwise amended from time to time.

**1.34** **DIP Facility** means the post-petition loans and other extensions of credit from the Lenders in an amount not to exceed $22,000,000 of the Lenders' Pre-Petition Claim becoming DIP Obligations, cumulative of and including any amounts advanced on an interim basis, plus the amounts advanced on a final basis, subject to the limitations on advances of new funds set forth in the Final DIP Order, and including, without limitation, principal, other extensions of credit and financial accommodations, interest, fees, expenses, and other costs of the Post-Petition Agent and the Post-Petition Lenders in the Cases, in accordance with the terms and conditions set forth in the Final DIP Order, the Credit Agreement, the DIP Agreement, the DIP Facility Documents, the other Loan Documents (as defined in the Credit Agreement), and all other related agreements and documents collectively, and as amended from time to time.

**1.35** **DIP Facility Documents** means the DIP Facility and Loan Documents (as defined in the Credit Agreement), and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the Debtors to the Post-Petition Agent and the Post-Petition Lenders on account of the DIP Facility or granting or perfecting Liens or security interests by any of the Debtors in favor of and for the benefit of the Post-Petition Agent, for itself and for and on behalf of the Post-Petition Lenders, on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the Debtors and the Post-Petition Agent, and the Post-Petition Lenders.

**1.36** **DIP Obligations** means all obligations and indebtedness of the Post-Petition Agent and the Post-Petition Lenders under the DIP Facility pursuant to the terms of the DIP Facility Documents.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

9

**1.37** **Disallowed Claim** means a Claim, or any portion thereof, that (a) has been disallowed by a Non-Appealable Order, (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date, or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date.

**1.38** **Disclosure Statement** means the Disclosure Statement for the *Joint Chapter 11 Plan of Liquidation of Little River Healthcare Holdings, LLC and its Debtor Affiliates* dated November 28, 2018 as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125(b) of the Bankruptcy Code.

**1.39** **Disclosure Statement Order** means the *Order Approving Disclosure Statement For the Joint Chapter 11 Plan of Reorganization of Little River Healthcare Holdings, LLC and its Debtor Affiliates* [Docket No. ___].

**1.40** **Disputed Claim** means a Claim, or any portion thereof, that is set forth in a Filed Proof of Claim: (a) that (i) has not been Scheduled, or (ii) has been Scheduled at zero or as contingent, unliquidated or disputed, (b) that differs in nature, amount or priority from the Bankruptcy Schedules, or (c) that is the subject of an objection Filed by the Debtors or the Liquidating Trustee (as applicable) and such objection has not been withdrawn or overruled by a Non-Appealable Order; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that has not been paid, that has not been Allowed by Non-Appealable Order or that is a Disallowed Claim.

**1.41** **Distribution** means the payment of Cash or Liquidating Trust Interests to the Holders of Allowed Claims pursuant to this Plan.

**1.42** **Effective Date** means the later of (a) the first Business Day on which all conditions precedent to the effectiveness of this Plan have been satisfied or waived as provided in Section 6.1 of this Plan, and (b) such other date determined by the Debtors with the consent of the Agent.

**1.43** **Equity Interest** means an existing membership, stock, limited partnership, and/or equity interest in the Debtors or equity security (within the meaning of Bankruptcy Code §101(16)), in the Debtors, including, without limitation, all issued, unissued, authorized or outstanding shares of stock, limited partnership, or other equity interests (including common and preferred) of the Debtors, together with any warrants, options, other derivative securities, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

**1.44** **Estate** means the estate created by Bankruptcy Code § 541 upon the commencement of the Case.

**1.45** **Excluded Parties** means Cody Wilson, Jeff Madison, Kevin Owens, Ryan Downton, Peggy Borgfeld, and Effective Healthcare Holdings.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

10

**1.46** **Exculpated Party** means each of the following in its capacity as such: (a) the Debtors; (b) the Agent; (c) the Lenders; (d) the Committee; and (e) with respect to each of the foregoing entities in clauses (a) through (d), such entity's current and former subsidiaries, predecessors, successors, assigns, heirs, agents, equity holders, principals, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and their current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided*, *however*, that no Excluded Party shall be an Exculpated Party.

**1.47** **Face Amount** means (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated amount claimed by the Holder of such Claim in any Proof of Claim timely Filed or otherwise deemed timely Filed by a Non-Appealable Order or other applicable bankruptcy law and (b) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

**1.48** **Fee Application** means an application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to Bankruptcy Code § 330 and Bankruptcy Rule 2016(a).

**1.49** **Filed** means filed with the clerk of the Bankruptcy Court.

**1.50** **Final DIP Order** means the *Final Order (I) Authorizing Debtors to (A) Use Cash Collateral on a Limited Basis and (B) Obtain Post-Petition Financing on a Secured, Superpriority Basis, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 346] as such Order may be subsequently amended with the consent of the Agent.

**1.51** **Free and Clear** means free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in this Case, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors' or the Estate, including U.S. Trustee Fees on account of post-Effective Date transfers of Liquidating Trust 1 Distributions and Liquidating Trust 2 Distributions, and all expenses, and charges, of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all Liens, rights of offset, replacement Liens, adequate protection Liens, charges, obligations, or claims granted, Allowed or directed in any Order, except any Permitted Liens.

**1.52** **General Account** means one or more general accounts (A) into which shall be deposited all funds not required or permitted to be deposited into any other account or reserve described in or contemplated by the Liquidating Trust Agreement, and (B) from which shall be made all Distributions to Liquidating Trust Beneficiaries and Holders of Allowed Claims.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

11

**1.53** **General Unsecured Claim** means a Claim that is not a Priority Tax Claim, Administrative Claim, Ad Valorem Tax Claim, Other Priority Claim, Lender Secured Claim, Other Secured Claim or Subordinated Claim.

**1.54** **Governmental Authority** means any transnational, domestic or foreign federal, state or local, governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority.

**1.55** **Holder** means the beneficial holder of any Claim or Equity Interest.

**1.56** **Impaired** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code § 1124.

**1.57** **Initial Administrative Claims Bar Date** means the date set by the Court pursuant to the Administrative Claims Bar Date Order as the last date for filing applications for allowance of certain Administrative Claims incurred during the period before October 16, 2018 that are in an amount in excess of $25,000, which date is November 9, 2018.

**1.58** **Intercompany Claim** means any Claim held by a Debtor against any other Debtor.

**1.59** **Lender Secured Claim** means, collectively, the Lenders' Pre-Petition Claim, together with the DIP Obligations.

**1.60** **Lenders** means the Pre-Petition Lenders together with the Post-Petition Lenders.

**1.61** **Lenders' Pre-Petition Claim** means the remaining amount as of the Effective Date of the aggregate amount equal to at least $40,700,000.00 of unpaid principal as of the Petition Date, plus any and all unpaid interest, fees, costs, expenses, charges, Royalty Fees (as defined in the Credit Agreement), Closing Fees (as defined in the Credit Agreement), and other unpaid Claims, debts or obligations of the Debtors to the Pre-Petition Agent and the Pre-Petition Lenders that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law together with all post-Petition Date interest, fees, costs, and charges Allowed to the Pre-Petition Agent and the Pre-Petition Lenders on such Claim pursuant to Bankruptcy Code § 506(b).

**1.62** **Lien** means, with respect to any property or asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanic's lien, materialman's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interests in property within the meaning of "lien" under Bankruptcy Code § 101(37).

**1.63** **Liquidating Trust 1** means the liquidating trust created under this Plan and the Liquidating Trust 1 Agreement containing Liquidating Trust 1 Property.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

12

**1.64    Liquidating Trust 1 Agreement** means an agreement establishing Liquidating Trust 1 to be executed by the Debtors and the Liquidating Trustee, in substantially the form Filed in the Plan Supplement.

**1.65    Liquidating Trust 1 Committee** means the committee established upon the Effective Date, to monitor and supervise Liquidating Trustee 1's administration of Liquidating Trust 1 and to take such other actions as are set forth in this Plan, the Liquidating Trust 1 Agreement, and the Confirmation Order or as may be approved by the Bankruptcy Court.

**1.66    Liquidating Trust 1 Distributions** means all proceeds from the disposition and liquidation of the Liquidating Trust 1 Property.

**1.67    Liquidating Trust 1 Interest** means any Series A Liquidating Trust 1 Interest or any Series B Liquidating Trust 1 Interest.

**1.68    Liquidating Trust 1 Property** means the Payor Claims and the Avoidance Actions, including the Debtors' attorney-client privilege with respect to the Payor Claims and Avoidance Actions, and excluding all Non-Vesting Assets.

**1.69    Liquidating Trust 1 Waterfall** means, subject to all conditions and other terms contained herein, only the Net Payor Proceeds and only the Net Avoidance Actions Proceeds received by Liquidating Trust 1 that shall be distributed as follows: (a) first, full payment of allowed fees and expenses of Liquidating Trustee 1; (b) second, full payment of the Liquidating Trust Loan, including all fees and interest associated therewith and an amount to Agent equal to any and all amounts of insurance paid in connection with the recovery of Net Payor Proceeds or Net Avoidance Actions Proceeds; (c) third, full payment of the total "new-money" advances extended to the Debtors under the DIP Facility during the Cases, including all fees and interest associated therewith; (d) fourth, following full payment of the amounts in subsections (a) through (c), up to $50,000,001.00 shall be divided as follows: (i) 95% to the Series A Liquidating Trust 1 Beneficiaries, and (ii) 5% to the Series B Liquidating Trust 1 Beneficiaries (if any); (e) fifth, following full payment of the amounts in subsections (a) through (d) above, from and above $50,000,001.00 shall be divided as follows: (i) 92.5% to the Series A Liquidating Trust 1 Beneficiaries, and (ii) 7.5% to the Series B Liquidating Trust 1 Beneficiaries (if any).

**1.70    Liquidating Trust 2** means the liquidating trust created under this Plan and the Liquidating Trust 2 Agreement containing Liquidating Trust 2 Property.

**1.71    Liquidating Trust 2 Agreement** means an agreement establishing Liquidating Trust 2 to be executed by the Debtors and Liquidating Trustee 2, in substantially the form Filed in the Plan Supplement.

**1.72    Liquidating Trust 2 Committee** means the committee established upon the Effective Date, to monitor and supervise Liquidating Trustee 2's administration of Liquidating Trust 2 and to take such other actions as are set forth in this Plan, the Liquidating Trust 2 Agreement, and the Confirmation Order or as may be approved by the Bankruptcy Court.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

**1.73** **Liquidating Trust 2 Distributions** means all proceeds from the disposition and liquidation of the Liquidating Trust 2 Property.

**1.74** **Liquidating Trust 2 Property** means all assets of the Debtors' Estates, other than only the Payor Claims and Avoidance Actions, including the Debtors' attorney-client privilege with respect to such assets, and excluding all Non-Vesting Assets.

**1.75** **Liquidating Trust Agreements** means the Liquidating Trust 1 Agreement and the Liquidating Trust 2 Agreement.

**1.76** **Liquidating Trust Assets** means the Liquidating Trust 1 Property and the Liquidating Trust 2 Property.

**1.77** **Liquidating Trust Beneficiary** means any Holder of a Liquidating Trust Interest.

**1.78** **Liquidating Trust Committees** means both Liquidating Trust 1 Committee and Liquidating Trust 2 Committee.

**1.79** **Liquidating Trust Distributions** means any Liquidating Trust 1 Distributions and any Liquidating Trust 2 Distributions.

**1.80** **Liquidating Trust Interest** means any Liquidating Trust 1 Interest or any Series A Liquidating Trust 2 Interest.

**1.81** **Liquidating Trust Loan** means the financing extended by the Agent or any other entity as may be determined by the Agent to the Liquidating Trusts on terms and conditions acceptable to the Agent, on behalf of itself and the Lenders, in a maximum amount to be disclosed in the Plan Supplement, for the sole purpose of funding the Liquidating Trusts' reasonable and necessary costs and expenses to meet their obligations under this Plan and liquidate Liquidating Trust Assets, and distribute the Net Proceeds therefrom, including the Net Payor Proceeds and Net Avoidance Actions Proceeds.  The Liquidating Trust Loan shall be repaid first from the Net Payor Proceeds and Net Avoidance Actions Proceeds unless otherwise directed by Lenders in writing.  The Agent shall have the first option to fund the Liquidating Trust Loan at an interest rate of 18%, plus a 3% fee payable at the initial funding of the Liquidating Trust Loan.

**1.82** **Liquidating Trust Property** means any Liquidating Trust 1 Property or any Liquidating Trust 2 Property.

**1.83** **Liquidating Trustee** means Liquidating Trustee 1 or Liquidating Trustee 2.

**1.84** **Liquidating Trustee 1** means the trustee of Liquidating Trust 1.

**1.85** **Liquidating Trustee 2** means the trustee of Liquidating Trust 2.

**1.86** **Liquidating Trusts** means both Liquidating Trust 1 and Liquidating Trust 2.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

14

**1.87** **Net Avoidance Actions Proceeds** means all Cash proceeds received on account of the Avoidance Actions, whether from a judgment, settlement, insurance proceeds, or otherwise, net of fees and expenses incurred in connection therewith.

**1.88** **Net Payor Proceeds** means all Cash proceeds received on account of the Payor Claims, whether from a judgment, settlement, insurance proceeds, or otherwise, net of fees and expenses incurred in connection therewith.

**1.89** **Net Proceeds** means available Cash from the income from and the proceeds of the sale or other disposition of the applicable Liquidating Trust Assets (a) following the payment of (i) fees and expenses of the applicable Liquidating Trustee and the applicable Liquidating Trust Committee in connection with the administration of the Liquidating Trust, (ii) normal expenses of administration of the applicable Liquidating Trust Assets (including the establishment of such reserves as the applicable Liquidating Trustee deems appropriate and are approved by the applicable Liquidating Trust Committee) and the payments permitted by the Plan and the applicable Liquidating Trust Agreement, (iii) normal and customary expenses associated with the disposition, transfer, sale, and liquidation of the applicable Liquidating Trust Assets, (iv) all taxes, fees, levies, assessments, or other governmental charges incurred by the applicable Liquidating Trust; minus (b) amounts held in the Undeliverable Distribution Reserve.

**1.90** **Non-Appealable Order** means an Order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument, new trial or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, new trial or rehearing shall then be pending; or (b) in the event that any appeal, writ of certiorari, reargument, new trial or rehearing thereof has been sought, such Order shall have been affirmed by the highest court to which such Order was appealed, or certiorari has been denied, or from which reargument, new trial or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument, new trial or rehearing shall have expired; provided, however, that no Order shall fail to be a Non-Appealable Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be Filed with respect to such Order.

**1.91** **Non-Vesting Asset** means (i) any property of any Debtor's Estate that is abandoned under section 554 of the Bankruptcy Code prior to the Effective Date with the consent of the Agent; (ii) all of the Debtors' Equity Interests in any of the other Debtors; and (iii) any asset, right, arrangement, non-executory contract, or other property that is listed in the Plan Supplement as a Non-Vesting Asset with the consent of the Agent.

**1.92** **Order** means an order of the Bankruptcy Court.

**1.93** **Other Priority Claim** means a Claim that is entitled to priority under Bankruptcy Code §§ 507(a)(4)-(7), (9)-(10).

**1.94** **Other Secured Claim** means a Secured Claim that is not an Ad Valorem Tax Claim or Lender Secured Claim.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

15

**1.95** **Payor Claim** means all of the Debtors' Claims, rights, and remedies against Blue Cross and Blue Shield of Texas and any other insurance payors that relate to Claims incurred prior to January 1, 2018, as applicable, and for avoidance of doubt, excluding any Claims on account of accounts receivables or other Claims not based on Claims for breach of contract or course of dealing, commission of tort, or other improper or unlawful acts or actions by such insurance payors.

**1.96** **Permitted Liens** means any Lien on account of an Allowed Ad Valorem Tax Claim.

**1.97** **Person** means any person, entity or Governmental Authority of any nature whatsoever, specifically including an individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity or organization.

**1.98** **Petition Date** means July 24, 2018, the date on which the Debtors commenced their Cases in the Bankruptcy Court.

**1.99** **Plan** means this *Joint Chapter 11 Plan of Liquidation of Little River Healthcare Holdings, LLC and its Debtor Affiliates*, dated November 28, 2018, together with any supplements, amendments, or modifications thereto.

**1.100** **Plan Documents** means all documents, forms, lists, and agreements contemplated under this Plan to effectuate the terms and conditions hereof, including any Purchase Agreements and director, officer or manager board agreements and indemnification agreements, all of which shall be acceptable to the Agent.

**1.101** **Plan Supplement** means the compilation of documents and forms of documents, schedules and exhibits to the Plan, including the Liquidating Trust Agreements and any Purchase Agreements, which shall in each case be in form and substance acceptable to the Debtors subject to the consent of the Agent, to be Filed with the Bankruptcy Court not later than ten (10) days prior to the Confirmation Hearing Date or such later date as may be approved by the Bankruptcy Court, as they may be altered, amended, modified or supplemented from time to time.

**1.102** **Post-Petition Agent** means Monroe Capital Management Advisors, LLC, as administrative agent for the Post-Petition Lenders.

**1.103** **Post-Petition Lenders** means the Pre-Petition Lenders and certain affiliates of the Pre-Petition Lenders including but not limited to Monroe Private Credit Fund A, LP.

**1.104** **Pre-Petition Agent** means Monroe Capital Management Advisors, LLC, in its capacity as administrative agent for itself and the other Pre-Petition Lenders.

**1.105** **Pre-Petition Lenders** means the Monroe Capital Management Advisors, LLC, and the other pre-petition lenders under the Credit Agreement.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

16

**1.106  Priority Tax Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(8).

**1.107  Pro Rata** means the proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims.  For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of (a) its Face Amount, and (b) the amount estimated as allowable by the Bankruptcy Court.

**1.108  Professional** means any Person employed in the Case pursuant to Bankruptcy Code §§ 327, 363, or 1103.

**1.109  Professional Fee Claim** means an Administrative Claim of a Professional for compensation for services rendered and/or reimbursement of costs and expenses incurred on and after the Petition Date and prior to the Effective Date.

**1.110  Proof of Claim** means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

**1.111  Purchase Agreement** means any purchase and sale agreement by and among the Debtors or any Debtor, as Sellers or Seller (as applicable), and any Purchaser or Purchasers, including all schedules, exhibits, instruments, and other documents to be delivered pursuant thereto or in connection therewith, all of which shall be in form and substance acceptable to the Agent.

**1.112  Purchased Assets** means the particular assets of the Debtors to be acquired by a Purchaser pursuant to a Purchase Agreement.

**1.113  Purchaser** means a purchaser of any Purchased Assets of the Debtors pursuant to any Purchase Agreement.

**1.114  Released Party** means each of the following in its capacity as such: (a) the Agent; (b) the Lenders; (c) the Committee; (d) the Liquidating Trusts, (e) the Liquidating Trustees and (f) with respect to the Debtors and each of the foregoing entities in clauses (a) through (e), such entity's current and former subsidiaries, predecessors, successors, assigns, heirs, agents, equity holders, principals, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and their current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided, however*, that no Excluded Party shall be an Released Party.

**1.115  Releasing Party** means each of the following in its capacity as such: (a) the Debtors; (b) the Agent; (c) the Lenders; (d) the Committee; (e) the Liquidating Trusts, (f) the Liquidating Trustees, and (g) with respect to each of the foregoing entities in clauses (a) through (f), such entity's current and former subsidiaries, predecessors, successors, assigns, heirs, agents,

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

17

equity holders, principals, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and their current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.116 **Scheduled** means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Bankruptcy Schedules.

1.117 **Secured Claim** means (a) any Claim or portion thereof that is reflected in the Bankruptcy Schedules or a Proof of Claim as secured, or any Claim or portion thereof that is secured by a Lien granted by Order of the Bankruptcy Court for adequate protection, which is secured by a valid, perfected, and unavoidable security interest in, or Lien upon, any Collateral (or the net proceeds from the sale of such Collateral) in which the Debtors have an interest, to the extent of the value (net of any senior Lien or senior security interest) of such security interest or Lien as determined by a Non-Appealable Order pursuant to Bankruptcy Code § 506 or as otherwise agreed upon in writing by the Holder of such Claim and (i) the Debtors (if such agreement is effectuated prior to the Effective Date) subject to the consent of the Agent, or (ii) either of the Liquidating Trustees (if such agreement is effectuated on or after the Effective Date) subject to the consent of the Agent; or (b) a Setoff Claim.

1.118 **Seller** means a Debtor that is party to a Purchase Agreement as a seller of any Purchased Assets of the Debtors.

1.119 **Series A Liquidating Trust 1 Beneficiary** means the Holder of a Series A Liquidating Trust 1 Interest.

1.120 **Series A Liquidating Trust 1 Interest** means a beneficial interest in Liquidating Trust 1 issued to the Agent and the Lenders.

1.121 **Series A Liquidating Trust 2 Beneficiary** means the Holder of a Series A Liquidating Trust 2 Interest.

1.122 **Series A Liquidating Trust 2 Interest** means a beneficial interest in Liquidating Trust 2 issued to the Agent and the Lenders.

1.123 **Series A Liquidating Trust Interest** means any Series A Liquidating Trust 1 Interest or any Series A Liquidating Trust 2 Interest.

1.124 **Series B Liquidating Trust 1 Beneficiary** means the Holder of a Series B Liquidating Trust 1 Interest, if any.

1.125 **Series B Liquidating Trust 1 Interest** means a beneficial interest in Liquidating Trust 1 issued to the Holder of a General Unsecured Claim, if any.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

18

**1.126** **Setoff Claim** means a Claim of a Holder that has a valid right of setoff with respect to such Claim which right is enforceable under Bankruptcy Code § 553 as determined by a Non-Appealable Order or as otherwise agreed in writing by the Holder of such Claim and (a) the Debtors (if such agreement is effectuated prior to the Effective Date) subject to the consent of the Agent, or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date) subject to the consent of the Agent, to the extent of the amount subject to such right of setoff.

**1.127** **Subordinated Claim** means any Claim (a) arising from rescission of a purchase or sale of a security of the Debtors or of an affiliate of the Debtors, (b) for damages arising from the purchase or sale of such a security, (c) for reimbursement or contribution Allowed under Bankruptcy Code § 502 on account of a Claim described in (a) or (b) above, (d) otherwise subordinated pursuant to Bankruptcy Code § 510, (e) subordinated by Non-Appealable Order, or (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages.

**1.128** **Subsequent Administrative Claims Bar Date** means, with respect to (a) Administrative Claims arising after October 15, 2018 but on or before the Effective Date, (b) Administrative Claims arising on or before October 15, 2018 which are less than $25,000 in the aggregate, and (c) Professional Fee Claims, the date that is thirty (30) days after the Effective Date which is the last date by which any Persons must have Filed an application for allowance of Administrative Claims against any Debtor or be forever barred from asserting such Claims.

**1.129** **Undeliverable** or **Unclaimed Distribution** means a Distribution by the Liquidating Trustee pursuant to this Plan that is either (a) attributable to a Holder of an Allowed Claim in Classes 1-7 that has failed to prepare, execute and return to the Liquidating Trustee an Internal Revenue Service Form W-9 if so requested by the Liquidating Trustee, or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

**1.130** **Undeliverable Distribution Reserve** means (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 10.1 of this Plan.

**1.131** **Unimpaired** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

**1.132** **U.S. Trustee Fees** means fees payable pursuant to 28 U.S.C. § 1930.

## Article II

## TREATMENT OF ADMINISTRATIVE CLAIMS

**2.1** **Treatment**. Except as otherwise provided herein, the Holder of an Allowed Administrative Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim, shall (a) be paid by the Liquidating Trustee 1 from either the Liquidating Trust 1 Property or the proceeds of the Liquidating Trust Loan, as determined by a majority vote of the Liquidating Trust 1 Committee and as set forth in Section 9.1 of this Plan, in the Allowed

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

19

Amount in one Cash payment on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) or (ii) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (b) receive such other less favorable treatment as may be agreed upon in writing by the Liquidating Trustee 1 and such Holder.

2.2 **Subsequent Administrative Claims Bar Date**.  The Confirmation Order shall set the Subsequent Administrative Claims Bar Date as the date that is thirty (30) days after the Effective Date, which is the last date by which any Persons must have Filed an application for allowance of (a) Administrative Claims arising after October 15, 2018 but on or before the Effective Date, (b) Administrative Claims arising on or before October 15, 2018 which are less than $25,000 in the aggregate, and (c) Professional Fee Claims.

2.3 **Professional Fee Claims**.  Each Professional whose retention with respect to the Debtors' Cases has been approved by the Bankruptcy Court, who is required by the terms of their engagement to file Fee Applications, and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Subsequent Administrative Claims Bar Date.  The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged.  A Professional Fee Claim with respect to which a Fee Application has been properly and timely Filed pursuant to this Section 2.3 of this Plan shall be treated and paid as an Administrative Claim only to the extent Allowed by Non-Appealable Order.  No Professional Fee Claims shall be Allowed on account of any services rendered by a Professional whose retention with respect to this Case has not been approved by the Bankruptcy Court.

2.4 **Allowed Priority Tax Claims**.  Each Holder of an Allowed Priority Tax Claim will receive on account of such Allowed Priority Tax Claim regular installment payments of Cash (i) of a total value, as of the Effective Date, equal to the Allowed Amount of the Allowed Priority Tax Claim, and (ii) over a period ending not later than five years after the Petition Date, unless such Holder of an Allowed Priority Tax Claim elects in writing to receive the treatment of a Class 5 General Unsecured Creditor.

2.5 **U.S. Trustee Fees**.  All unpaid U.S. Trustee Fees shall be paid in Cash in full by the Liquidating Trustee 1 on and after the Effective Date (or as soon as reasonably practicable after such fees become due) from Liquidating Trust 1 Property or the proceeds of the Liquidating Trust Loan, as determined by a majority vote of the Liquidating Trust 1 Committee and as set forth in Section 9.1 of this Plan.

2.6 **DIP Obligations**.  The Agent and the Post-Petition Lenders shall receive on the Effective Date, Pro Rata with their recovery on account of the Lender Secured Claims, the Pro Rata share of all Series A Liquidating Trust Interests as set forth in their treatment in Class 3 in exchange for the DIP Obligations.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

20

## Article III

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

**3.1**     **Introduction**.  In accordance with Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests (except for Administrative Claims and Allowed Priority Tax Claims) are placed in the Classes described below for all purposes, including voting on, Confirmation of, and Distributions under this Plan.  Administrative Claims and Allowed Priority Tax Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes only to the extent the other portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**3.2**     **Claims Against and Equity Interests in the Debtor**.  The Claims against and Equity Interests in the Debtor are classified as follows:

| Class | Class Description | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Ad Valorem Tax Claims | Impaired | Entitled To Vote |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled To Vote |
| Class 3 | Lender Secured Claims | Impaired | Entitled To Vote |
| Class 4 | Other Secured Claims | Unimpaired | Not Entitled To Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled To Vote |
| Class 6 | Intercompany Claims | Impaired | Not Entitled to Vote |
| Class 7 | Equity Interests | Impaired | Not Entitled To Vote |

## Article IV

## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

**4.1**     **Introduction**.  The Claims and Equity Interests as classified in Article II of this Plan shall be treated and satisfied in the manner set forth in this <u>Article IV</u>.  The payments or Distributions may be made as more particularly set forth in this Plan.

**4.2**     **Treatment of Classified Claims and Equity Interests**.

(a)     **Class 1 (Ad Valorem Tax Claims)**.  Each Holder of an Allowed Ad Valorem Tax Claim shall receive on account of such Allowed Ad Valorem Tax Claim regular installment payments of Cash of a total value, as of the Effective Date, equal to the Allowed Amount of the Allowed Ad Valorem Tax Claim over a period ending not later than five years after the Petition Date, unless such Holder of an Allowed Ad Valorem Tax Claim elects in

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

21

writing to receive the treatment of a Class 5 General Unsecured Creditor. The Liquidating Trust Assets shall remain subject to the Liens of the Holders of Allowed Ad Valorem Tax Claims.

(b) **Class 2 (Other Priority Claims)**. Each Holder of an Allowed Other Priority Claim shall either (i) receive Cash on the Effective Date, or as soon as reasonably practicable thereafter, equal to the Allowed Amount of such Holder's Allowed Other Priority Claim, or (ii) receive such other treatment that may be agreed upon in writing by the Debtors or the Liquidating Trustee 1 and such Holder. Each Holder of an Allowed Other Priority Claim shall be paid by the Liquidating Trustee 1 from the Liquidating Trust 1 Property or the proceeds of the Liquidating Trust Loan, as set forth in Section 9.1 of this Plan. The Cash payment shall be in exchange for and in full satisfaction and discharge of such Holder's Allowed Other Priority Claim.

(c) **Class 3 (Lender Secured Claims)**. On the Effective Date, Lender Secured Claims shall be Allowed. On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Lender Secured Claim shall receive Pro Rata with its recovery on account of the DIP Obligations its Pro Rata share of all Series A Liquidating Trust Interests.

(d) **Class 4 (Other Secured Claims)**. On the Effective Date, or as soon as reasonably practicable thereafter, Holders of Allowed Other Secured Claims shall receive, at the Liquidating Trustee 2's option, (i) Cash in the Allowed Amount of the Other Secured Claim from Net Proceeds of the applicable Collateral in accordance with the Liquidating Trust Agreement and Section 7.3 of this Plan, (ii) the Collateral securing such Other Secured Claim, or (iii) such other treatment that may be agreed upon in writing by the Liquidating Trustee 2 and such Holder of an Allowed Other Secured Claim.

(e) **Class 5 (General Unsecured Claims)**. On the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of an amount of any Net Payor Proceeds equal to the amount that the Court finds at the Confirmation Hearing that the Holders of General Unsecured Claim would be entitled to as their estimated recovery if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date; *provided, however*, that (i) if the Committee supports the Plan and recommends that Holders of General Unsecured Claims accept the Plan in a writing to be included in Plan solicitation materials, and (ii) Class 5 votes to accept the Plan, then the Holders of General Unsecured Claims shall instead receive a Series B Liquidating Trust 1 Interest to receive their Pro Rata shares only of the Net Payor Proceeds and Net Avoidance Actions Proceeds in accordance with the Liquidating Trust 1 Waterfall.

(f) **Class 6 (Intercompany Claims)**. Holders of Intercompany Claims shall not be entitled to receive any Distributions or retain any property under this Plan or from the Liquidating Trusts on account of such Intercompany Claims. On the Effective Date, all Intercompany Claims shall be cancelled, terminated, and extinguished.

(g) **Class 7 (Equity Interests)**. Holders of Equity Interests in the Debtors shall not be entitled to receive any Distributions or retain any property under this Plan or from

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

the Liquidating Trusts on account of such Equity Interests. On the Effective Date, all Equity Interests of the Debtors shall be cancelled, terminated, and extinguished.

**4.3** **Designation of Impaired and Unimpaired Classes**.

(a) **Impaired Classes of Claims**. Classes 1, 3, 5, and 6 are Impaired, and therefore, Holders of Claims in such Classes, with the exception of Class 6, are entitled to cast Ballots with respect to this Plan. Classes 2 and 4 are Unimpaired under the Plan, and therefore, Holders of Claims in such Classes are not entitled to cast Ballots with respect to this Plan. Class 6 is Impaired; however, the Holders of Intercompany Claims in Class 6 are not entitled to cast Ballots with respect to this Plan because such Holders are not entitled to receive or retain any property under this Plan and are deemed to have rejected this Plan in accordance with Bankruptcy Code § 1126(g).

(b) **Impaired Classes of Equity Interests**. Class 7 is Impaired; however, the Holders of Equity Interests in the Debtors in Class 7 are not entitled to cast Ballots with respect to this Plan because such Holders are not entitled to receive or retain any property under this Plan and are deemed to have rejected this Plan in accordance with Bankruptcy Code § 1126(g).

## Article V

## ACCEPTANCE OR REJECTION OF THIS PLAN

**5.1** **Classes Entitled to Vote**. Each Impaired Class of Claims that will or could receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

**5.2** **Acceptance by Impaired Classes of Claims**. An Impaired Class of Claims shall have accepted this Plan if (a) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan, and (b) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

**5.3** **Cramdown**. If any Impaired Class of Claims does not accept this Plan, the Debtors, with consent of the Agent, request Confirmation of this Plan under Bankruptcy Code § 1129(b). The Debtors, with consent of the Agent, reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or for any other reason in their discretion.

**5.4** **Elimination of Vacant Classes**. Any Class of Claims that does not have a Holder of an Allowed Claim, or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

23

**5.5** **Presumed Acceptance of Non-Voting Classes**.  If a Class contains Claims eligible to vote on the Plan and no Holder of Claims in such Class eligible to vote on the Plan votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

**Article VI**

**MEANS FOR IMPLEMENTATION OF THIS PLAN**

**6.1** **Conditions Precedent to the Effective Date**.  Each of the following events shall occur on or before the Effective Date; *provided, however*, the Debtors with the consent of the Agent may waive in writing any or all of the following events, whereupon the Effective Date shall occur without further action by any Person:

(a)  the Confirmation Order, in a form and substance reasonably acceptable to each of the Debtors with the consent of the Agent shall have been entered by the Bankruptcy Court and shall not be subject to a stay and shall have become a Non-Appealable Order;

(b)  all documents, instruments, and agreements provided under, or necessary to implement, this Plan, including, without limitation, documents and agreements regarding funding of the Liquidating Trust Loan, shall be in form and substance acceptable to the Debtors with the consent of the Agent and have been executed and delivered by the applicable parties; and

(c)  the Liquidating Trust Agreements shall be acceptable to the Agent and shall have been executed and the Liquidating Trusts shall be established and become effective.

**6.2** **Asset Purchase Transaction**.  The Debtors may, subject to the consent of the Agent, elect to effectuate one or multiple Asset Purchase Transactions pursuant to this Plan. Upon such election and the Agent's consent, the Plan, the Confirmation Order, and any other supplemental Order of the Court related to the Asset Purchase Transactions shall authorize and effectuate any such Asset Purchase Transactions pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code under the terms and conditions set forth in the applicable Purchase Agreements, which will be Filed as part of the Plan Supplement.  Any objections to an Asset Purchase Transaction must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

(a)  All proceeds from an Asset Purchase Transaction shall be transferred to the Agent or to Liquidating Trust 2, as determined by the Agent.

(b)  Subject to and in connection with the occurrence of the Effective Date, the Debtors and any Seller shall take all such actions as may be necessary or appropriate to effect an Asset Purchase Transaction on the terms and subject to the conditions set forth in the applicable Purchase Agreement.  Upon the satisfaction or waiver of each of the applicable conditions of the Purchase Agreement, on the Effective Date the Debtors and any Seller shall take or cause to be

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

24

taken all actions, including making appropriate filings or recordings, that may be required by applicable law in connection with any such Asset Purchase Transaction.

(c)     In the event of any conflict whatsoever between the terms of the Plan and any Purchase Agreement with respect to an Asset Purchase Transaction, the terms of the Purchase Agreement shall control, and the Plan shall be deemed to incorporate in its entirety the terms, provisions, and conditions of any Purchase Agreement.

**6.3     Creation of the Liquidating Trusts**.   On or prior to the Effective Date, the Liquidating Trusts shall each be formed pursuant to this Plan, the Liquidating Trust Agreements shall be executed, and the Liquidating Trusts shall be established and become effective.   In accordance with this Plan and the Liquidating Trust Agreements, the Liquidating Trusts shall be established for the purpose of collecting, receiving, holding, maintaining, administering and liquidating the applicable Liquidating Trust Assets.   The Liquidating Trusts shall not engage in a trade or business and shall conduct their activities consistent with the Liquidating Trust Agreements.   On and after the Effective Date, the Liquidating Trusts shall perform and pay when due liabilities related to ownership or operation of the Liquidating Trust Assets**.**

**6.4     Transfer of Liquidating Trust 1 Assets**.   Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, other than with respect to all Non-Vesting Assets, the Liquidating Trust 1 Property shall be transferred and assigned to Liquidating Trust 1 Free and Clear, but subject to Liquidating Trust 1's obligations under the Plan and the Liquidating Trust  Permitted Liens.   The Debtors shall convey, transfer, assign and deliver to Liquidating Trust 1 all or any portion of Liquidating Trust 1 Property, subject to all Liens that are Permitted Liens.

**6.5     Transfer of Liquidating Trust 2 Assets**.   Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, other than with respect to all Non-Vesting Assets, Liquidating Trust 2 Property shall be transferred and assigned to Liquidating Trust 2 Free and Clear, but subject to Liquidating Trust 2's obligations under the Plan and Permitted Liens. The Debtors shall convey, transfer, assign and deliver to Liquidating Trust 2 all or any portion of Liquidating Trust 2 Property, subject to all Liens that are Permitted Liens.

**6.6     Conflicts Between Liquidating Trust Agreements and Plan**.   In the event of any inconsistencies or conflict between either of the Liquidating Trust Agreements and this Plan, the terms and provisions of this Plan shall control.

**6.7     Plan is Motion to Transfer Liquidating Trust 1 Assets**.   This Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105 and 363 to transfer and assign to Liquidating Trust 1 Free and Clear, but subject to the Liquidating Trust 1's obligations under the Plan and Permitted Liens, any and all Liquidating Trust 1 Property as of the Effective Date and with all benefits to the Estate under such sections of the Bankruptcy Code.   Any objections to such transfer and assignment must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

After the Effective Date, Liquidating Trustee 1 may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust 1 Property are or were located, which provide that such property is conveyed to Liquidating Trust 1 Free and Clear. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned Free and Clear. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest, other than the Permitted Liens, against any Liquidating Trust Assets shall be conclusively deemed to have consented to the transfer and assignment of such Liquidating Trust 1 Property Free and Clear to Liquidating Trust 1 by failing to object to Confirmation of this Plan, except as otherwise provided in this Plan.

**6.8** **Plan is Motion to Transfer Liquidating Trust 2 Assets**. This Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105 and 363 to transfer and assign to Liquidating Trust 2 Free and Clear, but subject to the Liquidating Trust 2's obligations under the Plan and Permitted Liens, any and all Liquidating Trust 2 Property as of the Effective Date and with all benefits to the Estate under such sections of the Bankruptcy Code. Any objections to such transfer and assignment must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

After the Effective Date, Liquidating Trustee 2 may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust 2 Property are or were located, which provide that such property is conveyed to Liquidating Trust 2 Free and Clear. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned Free and Clear. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest, other than the Permitted Liens, against any Liquidating Trust 2 Property shall be conclusively deemed to have consented to the transfer and assignment of such Liquidating Trust 2 Property Free and Clear to Liquidating Trust 2 by failing to object to Confirmation of this Plan, except as otherwise provided in this Plan.

**6.9** **Issuance of Liquidating Trusts' Interests**. It is an integral and essential element of this Plan that the offer and issuance of Liquidating Trusts' Interests pursuant to this Plan, to the extent such Liquidating Trusts' Interests constitute securities under the 1933 Act, shall be exempt from registration under the 1933 Act and any state or local law, pursuant to Bankruptcy Code § 1145 or other applicable exemptions, without limitation. The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Case, the Debtors, the Liquidating Trustees, the U.S. Securities and Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that the Liquidating Trustees are successors to the Debtors under this Plan pursuant to Bankruptcy Code § 1145, that the offer of

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

26

the Liquidating Trusts' Interests is occurring pursuant to this Plan, that the offer of the Liquidating Trusts' Interests is in exchange for a Claim against, an interest in, or an Administrative Claim in the case concerning, the Debtors, or principally in such exchange and partly for Cash or property, and that such offer and issuance, to the extent such Liquidating Trusts' Interests constitute securities under the 1933 Act, fall within the exemption from registration under the 1933 Act and any state or local law pursuant to Bankruptcy Code § 1145. In lieu of certificates evidencing the Liquidating Trusts' Interests, the Liquidating Trustees shall maintain a register of the names, addresses, and interest percentages of the Holders of the Liquidating Trusts' Interests based upon the provisions of this Plan which designate the Persons who are entitled to receive the beneficial interests in the Liquidating Trusts.  The Liquidating Trusts' Interests may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except for transfers by operation of law.

**6.10    Termination of Directors, Officers, and/or Managers of the Debtors**. Effective as of the Effective Date, all of the directors, officers, and/or managers of the Debtors shall be deemed terminated.

**6.11    Amendment of Debtors' Certificates and Agreements**.  On the Effective Date, the Debtors' applicable organizational documents shall be amended and filed (both only as required) with the appropriate secretary of state's office on the Effective Date or as soon thereafter as is reasonably practicable.  All necessary action will be taken to prohibit the issuance of non-voting equity securities of the Debtors to the extent required by Bankruptcy Code § 1123.

**6.12    Abandonment of Non-Vesting Assets**.  The Plan shall constitute a motion to abandon the Non-Vesting Assets.  The Confirmation Order shall constitute (i) an authorization of the Bankruptcy Court to abandon the Non-Vesting Assets under section 554 of the Bankruptcy Code and (ii) an Order of abandonment of the Non-Vesting Assets as of the Effective Date.  The Non-Vesting Assets shall not vest in the Liquidating Trusts, and the Liquidating Trusts shall have no ownership interest in the Non-Vesting Assets.

**6.13    Cancellation of Equity Interests**.  On the Effective Date, all Equity Interests in the Debtors (including those Equity Interests held in treasury by the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those Equity Interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in the Debtors.

**6.14    Authority**.  All actions and transactions contemplated under this Plan, including, but not limited to, any certificates, agreements or other documents to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trusts are and shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtors' partners, limited partners, directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (i) all known Holders of Claims and (ii) all current Holders of Equity Interests of the Debtors.  All other corporate action on behalf of the Debtors as may be necessary to put into effect or carry out the terms and intent of this Plan may be effected, exercised, and taken without further action by the Debtors' partners,

034414-81107/4817-6732-1466.7

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

directors, officers, managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the partners, directors, officers, managers, and/or members of the Debtors. The Confirmation Order shall include provisions dispensing with the need of further approvals, notices or meetings of the Debtors or Holders of Equity Interests and authorizing and directing any partners, limited partners, director, officer, manager, or member of each respective Debtor to execute any document, certificate or agreement necessary to effectuate this Plan on behalf of the Debtors, which documents, certificates and agreements shall be binding on the Debtors, the Creditors, and all Holders of Equity Interests.

**6.15** **Preservation of Rights of Action**.

(a) All Causes of Action, rights of setoff and other legal and equitable defenses of the Debtors or its Estate, including, but not limited to, all Causes of Action set forth on **Exhibit A** to this Plan, are preserved for the benefit of the applicable Liquidating Trusts unless expressly released, waived, or relinquished under the Plan or Confirmation Order. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Liquidating Trustees will not pursue a Cause of Action against them.**

(b) The Liquidating Trustees shall be appointed representatives of the Estates pursuant to Bankruptcy Code § 1123(b)(3)(B) with respect to the Causes of Action that belong or are transferred into the applicable Liquidating Trust and, except as otherwise ordered by the Bankruptcy Court and subject to any releases in this Plan, on the Effective Date, all Causes of Action shall be transferred into the applicable Liquidating Trust, and the applicable Liquidating Trustee may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein), settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action in the applicable Liquidating Trust Assets. Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustees shall be vested with authority and standing to prosecute any Causes of Action in the applicable Liquidating Trust. The Liquidating Trustees and his or her attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Causes of Action.

## Article VII

## THE LIQUIDATING TRUSTS AND THE LIQUIDATING TRUSTEES

**7.1** **The Liquidating Trusts**. The Liquidating Trusts, duly organized under the laws of the State of Texas, are created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Distributions to certain Holders of Allowed Claims and Holders of Liquidating Trust Interests, and the Liquidating Trusts are not otherwise authorized to engage in any trade or business. The beneficiaries of the Liquidating Trusts, who will be treated as the grantors and deemed owners for federal income tax purposes, are the Holders of Allowed Lender Secured Claims in Class 4 and, subject to Section 4.2(e)(ii) of this Plan, the Holders of Allowed General Unsecured Claims in Class 5 solely with respect to Liquidating Trust 1. The Liquidating Trustees shall file federal income tax returns for the Liquidating Trusts as a grantor trust pursuant to § 671 of the Internal

034414-81107/4817-6732-1466.7

Revenue Code of 1986, as amended, and the Treasury Tax Regulations promulgated thereunder. The parties shall not take any position on their respective tax returns or with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trusts as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the Internal Revenue Service.

**7.2**    **Funding of Res of Trust**.

(a)    To fund the Liquidating Trusts, all of the Liquidating Trust Assets shall be transferred and assigned to the applicable Liquidating Trusts as set forth in Sections 6.4 and 6.5 of this Plan. The applicable Liquidating Trusts shall be in possession of, and have title to, the applicable Liquidating Trust Assets as of the Effective Date. The Liquidating Trustees, as trustees of the Liquidating Trusts, shall be substituted as the applicable plaintiff, defendant, or other party in all lawsuits regarding Causes of Action pending in which the Debtors are the plaintiff as of the Effective Date, to the extent that the Causes of Action are part of the applicable Liquidating Trust Assets. The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan and the Confirmation Order and shall be effective upon the Effective Date. The Debtors shall convey, transfer, assign and deliver the applicable Liquidating Trust Property Free and Clear of all Liens that are not Permitted Liens. Upon the Effective Date, the Liquidating Trusts shall also be deemed to have taken (a) an assignment of all applicable Causes of Action against third parties for obligations or claims existing on or created by virtue of the Effective Date, unless expressly released in this Plan, and (b) an assignment, bill of sale, deed and/or release covering all other applicable Liquidating Trust Assets. The Liquidating Trustees may present such Orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the applicable Liquidating Trusts. Such Orders may be presented without further notice other than as has been given in this Plan.

(b)    The Liquidating Trustees shall sell or otherwise dispose of the applicable Liquidating Trust Assets in accordance with the applicable Liquidating Trust Agreements and without necessity of filing any pleading or obtaining any Order of the Bankruptcy Court. The proceeds of such sales shall be Net Proceeds and used to make Distributions in accordance with Article IX of this Plan.

(c)    For all federal income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustees and the Liquidating Trust Beneficiaries) will treat the transfer and assignment of the applicable Liquidating Trust Assets to the applicable Liquidating Trusts for the benefit of the applicable Liquidating Trust Beneficiaries as (a) a transfer of the applicable Liquidating Trust Assets directly to the applicable Liquidating Trust Beneficiaries followed by (b) the transfer by the applicable Liquidating Trust Beneficiaries to the applicable Liquidating Trust of the applicable Liquidating Trust Assets. The Liquidating Trusts will be treated as grantor trusts for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The applicable Liquidating Trust Beneficiaries will be treated as the grantors and owners of their Pro Rata portion of the applicable Liquidating Trust Assets for federal income tax purposes.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

29

**7.3** **Liquidating Trust Distributions**. Liquidating Trust Distributions shall be made when determined by the applicable Liquidating Trust Committees. All Liquidating Trust 1 Distributions shall be made in accordance with the Liquidating Trust 1 Waterfall. All Liquidating Trust 2 Distributions shall be made to the Series A Liquidating Trust 2 Beneficiary.

**7.4** **The Liquidating Trustees**.

(a) The Liquidating Trustees shall retain and have all the applicable rights, powers and duties necessary to carry out his or her responsibilities under this Plan, the Liquidating Trust Agreements, and as otherwise provided in the Confirmation Order. The Liquidating Trustees shall be the exclusive trustees of their respective Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Matters relating to the appointment, removal and resignation of the Liquidating Trustees and the appointment of any successor Liquidating Trustee shall be set forth in the respective Liquidating Trust Agreements, provided that the Liquidating Trust Agreements shall authorize the applicable Liquidating Trust Committee, in its sole discretion, to remove a Liquidating Trustee with or without cause at any time. The Liquidating Trustees shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

(b) The Liquidating Trustees shall, in addition to those duties set forth in the Liquidating Trust Agreements, provide quarterly written reporting to the Agent, as set forth in the Liquidating Trust Agreement.

(c) From and after the Effective Date, the Liquidating Trustees shall be irrevocably appointed as the Debtors' respective attorneys-in-fact (which appointment as attorneys-in-fact shall be coupled with an interest), with full authority in the place and stead of the Debtors and in the name of the Debtors to take any action and to execute any instrument that the Liquidating Trustees, in the Liquidating Trustees' respective discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title to the applicable Liquidating Trust Assets, including without limitation to issue, execute, deliver, file, and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any Claims, to take any action, and to institute any proceedings that the Liquidating Trustees may deem necessary or desirable in furtherance thereof. From and after the Effective Date, the Liquidating Trustees are authorized, but are not required, to execute and perform, for and on behalf of any Debtor, any and all documents and other instruments and to certify or attest to any actions taken by the Debtor. The execution of any such document or instrument or the taking of any such action the Debtor or, from and after the Effective Date, the Liquidating Trustee, shall be deemed conclusive evidence of the authority of such action.

(d) Subject to the consent of a majority of the Liquidating Trust 1 Committee, Liquidating Trustee 1 may seek authority from the Bankruptcy Court to close any of the Debtors' Cases with the Claims against such Debtors surviving against the applicable Liquidating Trust. In such event, and subject to Section 7.9, Liquidating Trustee 1 may designate one of the

Debtors' Cases to remain open in order to administer any objections to Claims against such Debtor and any objections to Claims against the Debtors whose Cases are closed.

**7.5** **Retention of Professionals**. Subject to oversight by the applicable Liquidating Trust Committee, the Liquidating Trustees shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustees, are necessary to assist the Liquidating Trustees in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trusts from the proceeds of the Liquidating Trust Loan upon the monthly submission of statements to the Liquidating Trustees. The payment of the reasonable fees and expenses of the Liquidating Trustees' retained professionals shall be made in the ordinary course of business from the proceeds of the Liquidating Trust Loan, and shall not be subject to the approval of the Bankruptcy Court but shall be subject to oversight by the applicable Liquidating Trust Committee.

**7.6** **Compensation of the Liquidating Trustees**. The Liquidating Trustees' respective compensation, on a post-Effective Date basis, shall be as provided in the applicable Liquidating Trust Agreements. The payment of the fees of the Liquidating Trustees and any professionals retained by the Liquidating Trustees shall be made by the applicable Liquidating Trust, upon approval of the applicable Liquidating Trust Committee, from the Liquidating Trust Assets or Liquidating Trust Loans, as determined by a majority vote of the applicable Liquidating Trust Committee.

**7.7** **Liquidating Trust Expenses**. Subject to the provisions of the Liquidating Trust Agreements, all costs, expenses, and obligations incurred by a Liquidating Trustee in administering this Plan, the Liquidating Trusts, or in any manner connected, incidental or related thereto, in effecting Distributions from the Liquidating Trusts thereunder (including the reimbursement of reasonable expenses) shall be paid as they are incurred without the need for Bankruptcy Court approval from the proceeds of the Liquidating Trust Loan or from the assets of Liquidating Trust 1 if so determined by a majority vote of the Liquidating Trust 1 Committee.

**7.8** **Liability; Indemnification**. The Liquidating Trustees shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from the Liquidating Trustees' willful misconduct, gross negligence or fraud. The Liquidating Trustees may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustees shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustees unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trusts shall indemnify and hold harmless the Liquidating Trustees and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, Claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

31

their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trusts or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to the Liquidating Trustees for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

       **7.9**    **Termination**.  The duties, responsibilities and powers of the Liquidating Trustees shall terminate after all Liquidating Trust Assets, including Causes of Action, transferred and assigned to the Liquidating Trusts, or involving the Liquidating Trustees on behalf of the Liquidating Trusts, are fully resolved, abandoned or liquidated and the Net Proceeds have been distributed in accordance with this Plan and the Liquidating Trust Agreement.  Except in the circumstances set forth below, the Liquidating Trusts shall terminate no later than three years after the Effective Date.  However, if warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trusts, the term of a Liquidating Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue.  Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to the Liquidating Trust Beneficiaries.   Upon the occurrence of the termination of a Liquidating Trust, the Liquidating Trustee shall (i) File with the Bankruptcy Court a report thereof, seeking an Order discharging the Liquidating Trustee, and (ii) File with the Bankruptcy Court a motion seeking to close any Cases that remain open at such time.

## Article VIII

## LIQUIDATING TRUST COMMITTEES

       **8.1**    **Creation of Liquidating Trust Committees**.

       (a)    On the Effective Date, the Liquidating Trust 1 Committee shall be formed and constituted of (i) two members to be appointed by the Series A Liquidating Trust 1 Beneficiaries, and (ii) one member to be appointed by the Series B Liquidating Trust 1 Beneficiaries, if any, which member shall be acceptable to the Agent and shall not in any case be an insurance payor.  The member of the Liquidating Trust 1 Committee that is appointed by the Series B Liquidating Trust 1 Beneficiaries, if any, shall not have voting or governance rights with respect to any assets of Liquidating Trust 1 other than the Payor Claims and the Avoidance Actions.  The other terms and conditions of the governance documents of Liquidating Trust 1 must be acceptable to the Agent and the Lenders.

       (b)    On the Effective Date, the Liquidating Trust 2 Committee shall be formed and constituted of members as determined by the Agent and Lenders.  The terms and conditions of the governance documents of Liquidating Trust 2 must be acceptable to the Agent and the Lenders.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

32

**8.2** **Procedures**. The Liquidating Trust Committees may adopt bylaws to provide procedures for the governance of the Liquidating Trust Committee; however, such bylaws must be acceptable to the Agent and the Lenders.

**8.3** **Function, Duties, and Responsibilities**. The function, duties, and responsibilities of the Liquidating Trust Committee shall be set forth in the Liquidating Trust Agreement.

**8.4** **Duration**. The Liquidating Trust Committee shall remain in existence until the Liquidating Trust is terminated in accordance with Section 7.9 of this Plan.

**8.5** **Reimbursement of Costs and Expenses**. The members of the Liquidating Trust Committees may be paid or reimbursed for their fees, costs, and expenses as set forth in the applicable Liquidating Trust Agreement. Such payment or reimbursement of costs, fees, and expenses shall be paid from the proceeds of the Liquidating Trust Loan unless determined by a majority vote of the applicable Liquidating Trust 1 Committee to be paid with the proceeds of Liquidating Trust 1 Property, in either case without further Order.

**8.6** **Liability; Indemnification**. Neither the Liquidating Trust Committee, nor any of its members, or designees, nor any duly designated agent or representative of the Liquidating Trust Committee, or their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of the Liquidating Trust Committee, nor shall any member of the Liquidating Trust Committee be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Committee, other than acts or omissions resulting from such member's willful misconduct, gross negligence or fraud. The Liquidating Trust Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trust Committee shall be under no obligation to consult with attorneys, accountants or its agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Committee, or its members and/or designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, designees, and Professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, Claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

33

# Article IX

## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

**9.1** **Means of Cash Payment**. Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Liquidating Trustees as appropriate.

**9.2** **Delivery of Distribution**. Distributions to Holders of Allowed Claims shall be made (a) at the address(es)set forth on the Proof of Claim Filed by such Holder (or at the last known address(es) of such Holder if no Proof of Claim is Filed or if the Debtors have been notified of a change of address), (b) at the address(es) set forth in any written notices of address changes delivered to the Debtors and the Liquidating Trustees (as applicable) after the date of any related Proof of Claim, or (c) if no Proof of Claim has been Filed and the Debtors and the Liquidating Trustees (as applicable) have not received a written notice of a change of address, at the address(es) reflected in the Bankruptcy Schedules, if any.

**9.3** **Fractional Dollars; De Minimis Distributions**. Notwithstanding any other provision of this Plan, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, actual payment made shall reflect a rounding of such fraction down to the nearest whole dollar. The Liquidating Trustees shall not make any payment of less than fifty dollars with respect to any Claim unless a request therefor is made in writing to the Liquidating Trustees. Notwithstanding the foregoing, the Liquidating Trustees may, in his or her discretion, make payments of fractions of dollars and/or of less than fifty dollars.

**9.4** **Withholding and Reporting Requirements**. In connection with this Plan and all Distributions hereunder, the Liquidating Trustees shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustees shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

**9.5** **Setoffs**. The Liquidating Trustees may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Liquidating Trustees may have against the Holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustees of any such Claim that the Liquidating Trustees may have against such Holder, unless otherwise agreed to in writing by such Holder and the Liquidating Trustees.

**9.6** **Claims Paid by Third Parties**. A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not

034414-81107/4817-6732-1466.7

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

a Debtor or a Liquidating Trustee. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Liquidating Trustee on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Liquidating Trustee 2 to the extent such Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**9.7**     **Claims Payable by Insurance Carriers**.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim, then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## Article X

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUSTS

**10.1**     **Undeliverable Distribution Reserve**.

(a)     **Establishment**.     The Liquidating Trustees shall each establish an Undeliverable Distribution Reserve (which, notwithstanding anything to the contrary contained in this Plan, may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of each Liquidating Trustee).

(b)     **Deposits**.  If a Distribution to any Holder of an Allowed Claim is returned to a Liquidating Trustee as undeliverable or is otherwise unclaimed, such Distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such Distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Section 10.1(c) of this Plan.

(c)     **Forfeiture**.  Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an Undeliverable or Unclaimed Distribution within one year after the Undeliverable or Unclaimed Distribution is made to such Holder, such Holder shall be deemed to have forfeited its claim for such Undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for the Undeliverable or Unclaimed Distribution against the applicable Liquidating Trustee, the applicable Liquidating Trust, or their respective properties or assets.  In such cases, any Cash or other property held by the applicable Liquidating Trust in the Undeliverable Distribution Reserve for Distribution on account of such claims for Undeliverable or Unclaimed Distributions, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve, shall become the property of the applicable Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and shall be available for immediate Distribution by the

applicable Liquidating Trust according to the terms of this Plan and the Liquidating Trust Agreement.

(d) **Disclaimer**. The Liquidating Trustees and their respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Holder of a Claim, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim.

**10.2** **Distribution from Reserve**. Within fifteen Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the Distribution(s) attributable to its Claim is no longer an Undeliverable or Unclaimed Distribution (provided that satisfaction occurs within the time limits set forth in Section 10.1(c) of this Plan), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the Undeliverable or Unclaimed Distribution attributable to such Claim, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve, to the General Account.

**Article XI**

**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**

**11.1** **Objection Deadline; Prosecution of Objections**. Liquidating Trustee 1 shall be responsible for making all Distributions to Holders of Allowed Claims (other than the Distribution of interests in Liquidating Trust 2) in accordance with the terms of the Plan, closing the chapter 11 Cases, and otherwise implementing the Plan and finally administering the Estates. Only Liquidating Trustee 1 shall File objections to Claims. Liquidating Trustee 1 shall File objections to Claims no later than the Claim Objection Deadline, and shall serve such objections upon the Holders of each of the Claims to which objections are made. If Liquidating Trustee 1 does not File an objection to a Claim on or before the Claim Objection Deadline, such Claim shall be deemed to be an Allowed Claim. Nothing contained herein shall limit Liquidating Trustee 1's right to object to, or deem to Allow, Claims, if any, Filed or amended after the Claim Objection Deadline. Subject to the limitations set forth in this Plan, Liquidating Trustee 1 shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, and/or amount thereof. If Liquidating Trustee 1 and the Holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim, then the Liquidating Trustee 1 may compromise, settle, and/or resolve such Disputed Claim with the consent of a majority of the Liquidating Trust 1 Committee without further Bankruptcy Court approval; *provided, however*, that Liquidating Trustee 1 shall File a notice with the Bankruptcy Court advising that the Allowed Claim has been compromised, settled, and/or resolved.

Any Proofs of Claim that are Filed after the applicable Bar Date, including amendments to existing Proofs of Claim, or applications for the allowance of an Administrative Claim that are Filed after the Initial Administrative Claims Bar Date or the Subsequent Administrative Claims

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

36

Bar Date, as applicable, shall be deemed invalid and disallowed unless consented to by a Liquidating Trustee or authorized by Order of the Bankruptcy Court.

Subject to the consent of a majority of the Liquidating Trust 1 Committee, Liquidating Trustee 1 may elect not to prosecute an objection to a Claim, even where the Liquidating Trustee 1 likely may be successful in prosecuting such Claim, to the extent Liquidating Trustee 1 determines that (i) the cost of prosecuting such objection may exceed the potential recovery to the applicable Liquidating Trust, or (ii) prosecuting such objection is not otherwise in the best interests of the applicable Creditor constituency.

**11.2    No Distributions Pending Allowance**.  Notwithstanding any other provision of this Plan, no payments or Distribution by the Liquidating Trustees shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Non-Appealable Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## Article XII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except to the extent (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order assuming an executory contract or unexpired lease, (c) at the Confirmation Hearing, the Bankruptcy Court approves the assumption of any executory contracts or unexpired leases that are scheduled in the Plan Supplement, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123.

## Article XIII

## EFFECTS OF CONFIRMATION

**13.1    Discharge**.  Pursuant to Bankruptcy Code § 1141, the Confirmation of the Plan will not discharge the Debtors of any debts.

**13.2    Legal Binding Effect**.  The provisions of this Plan shall bind all Holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept this Plan.  On and after the Effective Date, except as expressly provided in this Plan, all Holders of Claims, Liens and Equity Interests shall be precluded from asserting any Claim, Cause of Action or Liens against the Debtors, the Estate, the Liquidating Trusts, or the Liquidating Trustees or their respective property and assets based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

37

**13.3**     **Release and Covenant Not to Sue**.

NOTWITHSTANDING ANYTHING SET FORTH HEREIN, ON THE EFFECTIVE DATE, THE RELEASING PARTIES SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED, ACQUITTED, AND FOREVER DISCHARGED THE RELEASED PARTIES OF AND FROM ANY CLAIM OR CAUSE OF ACTION, DEMAND, CONTROVERSY, COST, DEBT, SUM OF MONEY, ACCOUNT, RECKONING, BOND, BILL, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE RELEASING PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ABSOLUTE OR CONTINGENT, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, FIXED OR CONTINGENT, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS INCLUDING THOSE IN CONNECTION WITH, BASED ON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES, THE RESTRUCTURING OR LIQUIDATION OF THE DEBTORS, THE CASE, THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE CASE, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY RELATING TO THE RESTRUCTURING OR LIQUIDATION OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASE, THE DISCUSSION, NEGOTIATION, FORMULATION, PREPARATION OR DISTRIBUTION OF THIS PLAN AND THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, WHICH CAUSES OF ACTION ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, AND THE RELEASING PARTIES COVENANT NOT TO SUE ANY OF THE RELEASED PARTIES WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE FOREGOING BEING HEREIN CALLED THE "__RELEASED CLAIMS__"); AND, PROVIDED FURTHER, THAT NO RELEASED PARTY SHALL BE RELEASED AND DISCHARGED FROM (AND THE RELEASED CLAIMS SHALL NOT INCLUDE) OBLIGATIONS UNDER THIS PLAN.  WITHOUT LIMITING THE FOREGOING, THE CONFIRMATION ORDER SHALL INCLUDE A FINDING PROVIDING THAT ANY CAUSES OF ACTIONS ARISING UNDER, OR IN ANY WAY RELATED TO, THE CREDIT

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

AGREEMENT, OR THE DIP FACILITY DOCUMENTS, ARE PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATES, AND BY THE TERMS OF THE RELEASE CONTAINED WITHIN THIS SECTION SUCH CAUSES OF ACTION, IF ANY, ARE BARRED FROM BEING ASSERTED IN ANY MANNER BY THE DEBTORS, THE LIQUIDATING TRUSTEES, THE HOLDERS OF CLAIMS AGAINST THE DEBTORS, OR THE CURRENT OR FORMER HOLDERS OF EQUITY INTERESTS IN THE DEBTORS.  FOR THE AVOIDANCE OF DOUBT, (i) CAUSES OF ACTION AGAINST THE RELEASED PARTIES ARE BEING RELEASED BY THE RELEASING PARTIES PURSUANT TO THIS PARAGRAPH AND SUCH CAUSES OF ACTION ARE NOT RETAINED BY, OR CONVEYED TO, ANY PARTY PURSUANT TO THIS PLAN OR ANY PLAN DOCUMENT, AND (ii) THIS RELEASE IS IN ADDITION TO, AND SHALL NOT IN ANY WAY LIMIT, REVOKE, OR OTHERWISE RESCIND ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.

      13.4    <u>Exculpation</u>.

      (a)    THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR ARISING OUT OF, THE CASES OF THE DEBTORS BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE, INCLUDING THE DISCUSSION, NEGOTIATION, FORMULATION, DISSEMINATION, CONFIRMATION, CONSUMMATION, OR ADMINISTRATION OF THE PLAN OR THE PLAN DOCUMENTS, PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, OR ANY OTHER ACT OR OMISSION IN CONNECTION WITH THE CASES OF THE DEBTORS, THE PLAN, THE DISCLOSURE STATEMENT, THE OTHER PLAN DOCUMENTS OR ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT RELATED THERETO OR DELIVERED THEREUNDER, OR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE RESTRUCTURING OF THE DEBTORS (IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW), WHETHER THE BASIS OF SUCH LIABILITY IS IN CONNECTION WITH AN ALLEGED ACTION IN AN OFFICIAL CAPACITY AS AN EXCULPATED PARTY OR IN ANY OTHER CAPACITY WHILE SERVING AS AN EXCULPATED PARTY; NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION 13.4 SHALL (i) EXTEND TO SUCH EXCULPATED PARTIES' RIGHTS AND OBLIGATIONS UNDER THE PLAN, THE PLAN DOCUMENTS, AND THE CONFIRMATION ORDER, OR (ii) AFFECT THE LIABILITY OF ANY ENTITY FOR ANY ACT OR OMISSION TO THE EXTENT THAT SUCH ACT OR OMISSION IS FOUND BY A COURT OF COMPETENT JURISDICTION IN A FINAL ORDER TO HAVE CONSTITUTED FRAUD OR WILLFUL MISCONDUCT.

      (b)    THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

       13.5    **Permanent Injunction.**

       (a)    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR THE PLAN DOCUMENTS, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (i) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (ii) HAVE BEEN RELEASED OR EXCULPATED PURSUANT TO THE PLAN OR (iii) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES, SOLELY TO THE EXTENT THAT SUCH ACTIONS HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY DISCHARGED, RELEASED, EXCULPATED, SETTLED, COMPROMISED, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES, INCLUDING (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO OR RELATING TO ANY SUCH CLAIM OR EQUITY INTEREST, (ii) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY RELEASED PARTY ON ACCOUNT OF OR RELATING TO ANY SUCH CLAIM OR EQUITY INTEREST, (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST ANY RELEASED PARTY, EXCULPATED PARTY, OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF SUCH RELEASED PARTY OR EXCULPATED PARTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST, AND (iv) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY RELEASED PARTY, EXCULPATED PARTY, OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF ANY RELEASED PARTY OR EXCULPATED PARTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST.

       (b)    THE FOREGOING INJUNCTION WILL EXTEND TO SUCCESSORS OF ANY RELEASED PARTY AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN THE PROPERTY.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

40

13.6    <u>**Releases by Holders of Claims**</u>.

(a)    **EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN CONSIDERATION OF THE DISTRIBUTIONS UNDER THE PLAN AND OTHER RELEASES, AGREEMENTS, OR DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION WITH THE PLAN, HOLDERS OF CLAIMS (OTHER THAN OTHER DEBTORS) (i) WHO VOTE TO ACCEPT THE PLAN, (ii) WHO VOTE TO REJECT THE PLAN, BUT DO NOT INDICATE THAT THEY OPT OUT OF THIS RELEASE ON THEIR BALLOT, AND (iii) WHO WERE SOLICITED TO VOTE ON THE PLAN BUT DO NOT TIMELY SUBMIT A BALLOT TO VOTE TO ACCEPT OR REJECT THE PLAN, FOR THEMSELVES AND ON BEHALF OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, SHALL BE DEEMED TO HAVE CONSENTED TO THE PLAN FOR ALL PURPOSES AND THE LIQUIDATION EMBODIED HEREIN AND SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, ACQUITTED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, LOSSES, COSTS AND EXPENSES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES OF ANY KIND OR CHARACTER WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, FIXED OR CONTINGENT, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THAT SUCH ENTITY OR PERSON EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, OR OTHERWISE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY OR DIRECTLY OR DERIVATIVELY), AGAINST ANY RELEASED PARTY, INCLUDING THOSE ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, IN WHOLE OR IN PART, THE DEBTORS, THE OPERATION OF OR ADMINISTRATION OF THE DEBTORS' BUSINESS AND ASSETS, THE CASES, THE PURCHASE, SALE OR RESCISSION OF ANY ASSETS OF THE DEBTORS, THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG ANY TWO OR MORE OF ANY DEBTOR, OR ANY OTHER RELEASED PARTY (AND THE ACTS OR OMISSIONS OF ANY OTHER RELEASED PARTY IN CONNECTION THEREWITH), THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE OTHER PLAN DOCUMENTS OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER**

**<u>JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES</u>**

OCCURRENCE, INCLUDING THE MANAGEMENT AND OPERATION OF THE DEBTORS, TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION 13.6 SHALL RELEASE ANY RELEASED PARTY OR OTHER ENTITY OR PERSON FROM ITS RESPECTIVE RIGHTS AND OBLIGATIONS UNDER THE PLAN, OR THE CONFIRMATION ORDER. THIS SECTION 13.6 IS IN ADDITION TO, AND SHALL NOT IN ANY WAY LIMIT, REVOKE, OR OTHERWISE RESCIND ANY PRIOR RELEASE BY SUCH HOLDERS OF CLAIMS IN FAVOR OF THE RELEASED PARTIES.

THE FOREGOING RELEASES SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY ENTITY OR PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THESE RELEASES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE FOREGOING RELEASES, WHICH INCLUDES BY REFERENCES EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH SUCH RELEASE IS: (i) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (ii) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY SUCH RELEASE; (iii) IN THE BEST INTEREST OF THE DEBTORS AND THEIR ESTATES; (iv) FAIR, EQUITABLE AND REASONABLE; AND (v) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

13.7    **Insurance**.  Notwithstanding anything to the contrary in this Plan, neither the releases nor Confirmation and consummation of this Plan shall affect insurance policies of the Debtors or its current or former directors and officers (including, but not limited to, director and officer liability policies to the extent that the Debtors or its current or former directors and officers have any rights under such policies) in which the Debtors or its current or former directors and officers are or were an insured party or any Claim as settled thereunder.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage for the Debtors (or its current or former directors and officers) on any basis regarding or related to the Debtors' Case, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured Claims.

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

## Article XIV

## RETENTION OF JURISDICTION

**14.1    Retention**.  Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Case, this Plan, and the Liquidating Trusts to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(b)    hear and determine all Fee Applications;

(c)    determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim against, or Causes of Action on behalf of, the Liquidating Trusts;

(d)    enter such Orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of this Plan, the Liquidating Trust Agreement, and all property, contracts, instruments, releases, and other agreements or documents transferred, vested, or created in connection therewith;

(e)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, the Liquidating Trust Agreement, the Confirmation Order, any transactions or payment contemplated hereby, or any disputes arising under agreements, documents or instruments executed in connection therewith;

(f)    consider any modifications of this Plan, the Disclosure Statement, the Liquidating Trust Agreement, in each case to the extent requiring the approval of the Bankruptcy Court, cure any defect or omission, or reconcile any inconsistency in any Order, including the Confirmation Order;

(g)    issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of this Plan, the Confirmation Order or any other Order;

(h)    hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, and the Liquidating Trust Agreement;

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

43

(i)     enforce all Orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

(j)     hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146 (including the expedited determination of taxes under Bankruptcy Code § 505(b));

(k)     hear and determine all matters related to the property of the Estate, the Debtors, the Liquidating Trusts, or the Liquidating Trustees from and after the Effective Date;

(l)     hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code;

(m)     hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts;

(n)     enter, implement or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(o)     hear and determine any other matters related to this Plan and not inconsistent with the Bankruptcy Code;

(p)     determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan, or the Disclosure Statement;

(q)     hear any other matter not inconsistent with the Bankruptcy Code; and

(r)     enter final decrees closing the Case.

**14.2**     **Rights of the Liquidating Trustees**.  Nothing contained in this <u>Article XIV</u> shall be construed so as to limit the rights of the Liquidating Trustees to commence or to prosecute any Cause of Action, in any court of competent jurisdiction.

<u>Article XV</u>

<u>MISCELLANEOUS PROVISIONS</u>

**15.1**     **Revocation, Withdrawal or Non-Consummation**.  The Debtors reserve the right, subject in all respects to the consent of the Agent, to revoke or withdraw this Plan prior to the Confirmation Date and to file any amended or subsequent plans.  Unless otherwise determined by the Debtor, with the consent of the Agent, if Confirmation does not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) this Plan shall be null and void in all respects, (b) settlements or compromises embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims),

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

44

assumptions or rejections of executory contracts or unexpired leases affected by this Plan, and any documents or agreements executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

**15.2** **Severability of Plan Provisions**. If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors but, subject to the consent of the Agent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**15.3** **Exemption from Transfer Taxes and Recording Fees**. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan (including, without limitation, the Liquidating Trustees' sale, transfer, liquidation, or disposal or Liquidating Trust Assets), shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**15.4** **Expedited Tax Determination**. The Liquidating Trustees (as applicable) may request an expedited determination of taxes under Bankruptcy Code § 505(b) for all returns filed for or on behalf of the Debtors for all taxable periods through the Effective Date.

**15.5** **Interest Accrual**. Except with respect to and only to the extent permitted by bankruptcy law and applicable law as to Secured Claims, no post-petition interest shall accrue on any Claim or Scheduled liability (including, but not limited to, Allowed Administrative Claims).

**15.6** **Allocation of Plan Distributions between Principal and Interest**. To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**15.7    Rules of Interpretation; Computation of Time**.   For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import, (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (g) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.   In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply. All references to immediately available funds, dollar amounts, or Cash Distributions contained in this Plan shall mean United States dollars.

**15.8    The Liquidating Trusts Are Not Successors**.   Save and except as needed to comply with Bankruptcy Code § 1145 as specified in Section 6.9 of this Plan, the Liquidating Trusts, and their successors, or assigns shall not be deemed, as a result of actions taken in connection with this Plan, to be successors to the Debtors or a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.   The Liquidating Trusts shall be deemed to be successors to the Debtors only to the limited extent needed to comply with Bankruptcy Code § 1145 as specified in Section 6.9 of this Plan and for no other reason under any state or federal law.

**15.9    Dissolution of the Committee**.   On the Effective Date, the Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties from or related to the Cases on the Effective Date.   The Debtors and the Liquidating Trustees shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date.

**15.10    Plan Documents**.   The Plan Documents are incorporated herein and are a part of this Plan as if set forth in full herein.

**15.11    Reservation of Rights**.   This Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.   Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

46

rights of the Debtors of any kind, including with respect to the Holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

**15.12  Further Assurances**.  The Debtors and all Holders of Claims receiving Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**15.13  Successors and Assigns**.  This Plan and all rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**15.14  Governing Law**.  Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and (b) governance matters shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

**15.15  Notice of Effective Date**.  On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all Holders of Claims that are not Disallowed Claims a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustees deem appropriate or as may be ordered by the Bankruptcy Court.

**15.16  Entire Agreement**.  This Plan and the Plan Documents set forth the entire agreement and understanding among the parties in interest relating to the subject matter hereof and supersede all prior discussions and documents.

**15.17  Waiver of Stay; Substantial Consummation**.  Notwithstanding Bankruptcy Rules 3002(e), 6004(h), and 6006(d), the Debtors shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.  "Substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## Article XVI

## MODIFICATION OF THIS PLAN

The Debtors, subject to the consent of the Agent, may alter, amend, or modify this Plan or any Plan Documents under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Effective Date, the Debtors, subject to the consent of the Agent may, under Bankruptcy Code § 1127(b), (i) amend this Plan so long as such amendment shall not materially and adversely affect the treatment of any Holder of a Claim, and in the case of the Agent does not, in the sole discretion of the Agent, alter their treatment or benefits under this Plan, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

47

Confirmation Order, and (iii) amend this Plan as may be necessary to carry out the purposes and effects of this Plan so long as such amendment does not materially or adversely affect the treatment of Holders of Claims or Equity Interests under this Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

[The Remainder of the Page Intentionally Left Blank]

034414-81107/4817-6732-1466.7
**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

48

**DATED**:  November 28, 2018

Respectfully submitted,

**Compass Pointe Holdings, LLC**
**Little River Healthcare Holdings, LLC**
**Rockdale Blackhawk, LLC**
**Little River Healthcare – Physicians of King's Daughters, LLC**
**Timberlands Healthcare, LLC**
**King's Daughters Pharmacy, LLC**
**Cantera Way Ventures, LLC**
**Little River Healthcare Management, LLC**

_____*/s/ Ronald Winters*_____
By:     Ronald Winters
Their:  Chief Restructuring Officer

034414-81107/4817-6732-1466.7

**Signature Page For Joint Chapter 11 Plan Of Liquidation Of Little River Healthcare Holdings, Llc And Its Debtor Affiliates**
**S-1**

## **Exhibit A**

**Retained Causes of Action**

**Retained Causes of Action**

Pursuant to the terms of the Plan and Section 1123(b)(3)(B) of the Bankruptcy Code, except as released pursuant to the terms of the Plan, on the Effective Date, all of the Debtors' Causes of Action and counterclaims will be retained under the Plan and transferred to and vest in the applicable Liquidating Trust to be prosecuted exclusively by the applicable Liquidating Trustee for the benefit of Creditors, including, without limitation, the following Causes of Action:

1. All claims, counterclaims, Causes of Action and potential claims and Causes of Action held by any of the Debtors and/or any of their Estates, whether or not previously asserted, against the Excluded Parties, including, but not limited to, avoidance actions, commercial torts, tortious interference with contractual and/or business relations, unfair competition, breach of contract, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported claims, liens and/or security interests, injury to property and/or title to property, negligence, recklessness, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions, improper use of information to gain improper advantage, and actions seeking affirmative recoveries, and other, similarly grounded claims and Causes of Action.

2. All claims, counterclaims, Causes of Action and potential claims and Causes of Action held by any of the Debtors and/or any of their Estates, whether or not previously asserted, against the Debtors' insurance payors, including, without limitation, commercial torts, tortious interference with contractual and/or business relations, unfair competition, breach of contract, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported claims, liens and/or security interests, injury to property and/or title to property, negligence, recklessness, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions, improper use of

034414-81107/4817-6732-1466.7
**EXHIBIT A TO JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

1

information to gain improper advantage and other, similarly grounded claims and Causes of Action.

3. All Avoidance Actions.

4. All Causes of Action against any Person or entity listed in the Debtors' schedules of assets and liabilities or statement of financial affairs, as well as related entities, principals, officers, and employees of any of the foregoing and any mediate or immediate transferees.

5. All claims and Causes of Action against any person or entity for fraudulent or preferential transfers under any applicable law.

6. All Causes of Action against any person or entity for recovery of accounts receivable or enforcement of contractual obligations.

7. All Causes of Action against any federal, state, local or foreign taxing authority.

8. All Causes of Action arising under or related to any policy of insurance against any insurer, such insurer's agents, affiliates, related entities, principals, officers and employees, or any other person or entity.

9. All other counterclaims and defenses, including without limitation the rights of setoff and recoupment, and all defenses of the Estates under Section 558 of the Bankruptcy Code.

10. All privileges, including the attorney-client, work-product and other privileges.

11. All claims, counterclaims, Causes of Action and potential claims and Causes of Action held by any of the Debtors and/or any of their Estates as of the Effective Date, whether or not previously asserted.

The Liquidating Trusts and Liquidating Trustees shall continue to analyze all potential Causes of Action and take appropriate action, including, but not limited to, filing lawsuits in appropriate venues. The Debtors do not waive any Causes of Action, counterclaims, or defenses that may exist, nor shall approval of the Disclosure Statement or Confirmation of the Plan prejudice the applicable Liquidating Trust's right to assert any claims and Causes of Action not identified herein, and all such claims and Causes of Action are expressly reserved and preserved.

034414-81107/4817-6732-1466.7
**EXHIBIT A TO JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
LITTLE RIVER HEALTHCARE HOLDINGS, LLC AND ITS DEBTOR AFFILIATES**

2