## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| In Re: | § | **Chapter 7** |
| | § | |
| **LITTLE RIVER HEALTHCARE** | § | **Case No. 18-60526-rbk** |
| **HOLDINGS, LLC,** *et al.*, | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

### CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORITY (I) TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND 363(f); (II) TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) TO AUTHORIZE APPORTIONMENT OF ALL PROCEEDS AND DISTRIBUTION OF PORTION OF THE PROCEEDS

COMES NOW James Studensky, Trustee ("Trustee"), the duly appointed and acting trustee in the above-captioned bankruptcy case, and hereby files his Motion for Authority (I) to Sell Property of the Estate Free and Clear of All Interests Pursuant to 11 U.S.C. §§ 363(b) and 363(f); (II) to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (III) to Authorize Apportionment of All Proceeds and Distribution of Portion of the Proceeds (the "Motion"), and would show the Court as follows:

### I. SUMMARY

1.      The Debtors are the fee simple owners of certain property (the "Property") against which Monroe Capital Management Advisors, LLC, as administrative agent, on behalf of itself and certain other lenders (collectively, the "Secured Party") claim first-position lien rights and are party to certain executory contracts and unexpired leases.  Prior to the Conversion Date, the

---

1 The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Compass Pointe Holdings, LLC (1142), Little River Healthcare Holdings, LLC (7956), Timberlands Healthcare, LLC (1890), King's Daughters Pharmacy, LLC (7097), Rockdale Blackhawk, LLC (0791), Little River Healthcare - Physicians of King's Daughters, LLC (5264), Cantera Way Ventures, LLC (7815), and Little River Healthcare Management, LLC (6688).

Property was marketed by the Debtors. The Trustee has received a cash-offer from a purchaser (the "Purchaser") who wishes to purchase the Property for a total price of $350,000.00 (the "Purchase Price") and in conjunction therewith wishes to be assigned certain contacts (as defined more particularly in the APA, the "Assumed Contracts"); the Secured Party has approved this Purchase Price and the relief requested herein. By this Motion, the Trustee requests that the sale contract, attached hereto as **Exhibit A**, with the Purchaser at the Purchase Price be approved.

2.      Pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Trustee hereby moves this Court for entry of the proposed order attached hereto authorizing the Trustee to enter into the proposed sale, assume the Assumed Contracts, and apportioning the proceeds of the sale and distribution of portion of the proceeds of the sale. Pursuant to §§ 363(b) and 363(f), the sale will be free and clear of any remaining liens, with any such liens attaching to the proceeds with the same priority and value as to the Property itself.

3.      The Trustee further requests authority to distribute all proceeds from the sale to the Secured Party, less carve-outs for free and clear of the Secured Party's security interest of 25% of the $350,000 Purchase Price, with allowance of the Trustee's compensation deducted from the Secured Party's portion of the proceeds.

## II.      JURISDICTION

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are 11 U.S.C. §§ 105, 326, 330,

3421858

363, and 365, and Bankruptcy Rules 2002, 6004, 6006, and 9014.

### III.     BACKGROUND FACTS

7.      On July 24, 2018 (the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

8.      After notice and a hearing, on December 7, 2018 (the "Conversion Date"), the Court entered an order [Dkt. No. 547] converting the Debtors' jointly administered bankruptcy cases to chapter 7.

9.      The Trustee is the duly appointed and acting Chapter 7 trustee in the above-captioned bankruptcy cases, which continue to be jointly administered.

10.     As of the Petition Date, the Secured Party claimed a security interest in substantially all of the assets of the Debtors.  During the pendency of the Chapter 11 cases, the Secured Party entered into Cash Collateral Orders whereby the Debtors were authorized to use some of the Secured Party's collateral in order to fund the Chapter 11 cases.

11.     Debtors own the Property in fee simple.  The Secured Party claimed, and continues to claim, a properly perfected security interest in the Property.

12.     By the time of the Conversion Date, the Debtors had begun winding down their business operations in anticipation of liquidation.  The Property had been extensively marketed and the Purchaser was identified as the only interested purchaser of the Property.

13.     Subsequent to the Conversion Date, the Trustee and the Secured Party continued the negotiations with the Purchaser regarding the proposed purchase of the Property.

### IV.     THE PROPOSED SALE

14.     After substantial arms-length negotiations, the Trustee, the Secured Party, and the Purchaser have approved the asset purchase agreement (the "APA") attached hereto as **Exhibit**

3421858

A.  The Purchase Price offered by the Purchaser in the APA reflects what the Trustee considers to be the best price available for the Property.  Moreover, the Purchase of the Property by the Purchaser will eliminate substantial ongoing liabilities for the bankruptcy estates, including lease payments, costs of storing and dealing with voluminous medical records, and wages and benefits for certain employees.  Accordingly, consummation of the proposed sale will not only bring money into the bankruptcy estates but will also reduce the bankruptcy estates' exposure to administrative and other claims.  The Trustee has concluded that the sale of the Property to the Purchaser at the Purchase Price is in the best interest of the creditors, the Debtors' estates, and all other parties in interest.  *See* Declaration of James Studensky, Chapter 7 Trustee, attached hereto as **Exhibit B**.

15.    The sale of the Property to the Purchaser is to be made "as is" with no representations or warranties of any kind, except as set forth in the APA.  Further, the sale shall be free and clear of all liens, claims, encumbrances, and interests of any kind, pursuant to 11 U.S.C. § 363(f).

16.    The Purchaser is a good faith purchaser as that term is used in 11 U.S.C. § 363(m) and as such is entitled to the protections of 11 U.S.C. § 363(m).  The consideration provided by the Purchaser under the APA is fair and reasonable, and the sale should not be subject to being avoided under 11 U.S.C. § 363(n).  *See* Declaration of James Studensky.

17.    In conjunction with the sale, attached hereto as Exhibit C is a Notice of Cure Amounts (the "Cure Notice"), which the Trustee proposes to send in a form substantially similar to all parties in interest, including all contract counterparties to those agreements listed therein, contemporaneously with the filing of this Motion.  As set forth in the Cure Notice, any counterparty who objects to the amount of the cure listed therein must file a Cure Objection by

4

the Cure Deadline. In addition, the Purchaser reserves the right to amend the Cure Notice at any time for any reason in its sole direction, including to decide not to assume any Assumed Contract, and in such case, shall not be responsible or liable for any cure amount to that particular contract counterparty.

18. Bankruptcy Code §§ 365(a) and (b) authorize a trustee to assume, subject to the court's approval, executory contracts or unexpired leases of the debtor. *In re Jamesway Corp.,* 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996). Under § 365(a), the trustee may assume or reject any executory contract or unexpired lease of the debtor. Bankruptcy Code § 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> > (A) cures or provides adequate assurance that the trustee will promptly cure, such default;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provide adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). The standard applied by a court in determining whether the assumption or rejection of an executory contract or unexpired lease pursuant to § 365(a) should be approved is the "business judgment" test. *See, e.g., In re Group of Institutional Investors, Inc. v. Chicago, Milwaukee St. Paul and Pac. R.R. Co.,* 318 U.S. 523, 550 (1943) ("the question of [assumption] is one of business judgment"); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1098-99 (2d Cir. 1993) (to decide a motion to assume, the court

3421858

must put itself in the position of the trustee and determine whether such assumption would be a good decision or a bad one).

19. As discussed above, the Trustee will file a Cure Notice, related to the potential Assumed Contracts owing such counterparty to be paid by the Purchaser upon the closing of the sale under the APA. Because the Trustee cannot obtain the benefits of the APA without the assumption of the Assumed Contracts, the assumption of the Assumed Contracts is undoubtedly a sound exercise of the Trustee's business judgment.

20. Furthermore, a trustee may assign an executory contract or an unexpired lease of the debtor if the trustee assumes the agreement in accordance with § 365(a) and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. Here, the Purchaser must agree to pay all Cure Amounts in connection with the Assumed Contracts. The Trustee hereby proposes that any objections to the Cure Amounts be filed and served (each, a "Cure Objection") such that they are received by counsel for the Trustee and counsel for the Purchaser no later than **December 26, 2018 by 5:00 p.m. (prevailing Central standard time)** (the "Cure Objection Deadline").

21. Each Cure Objection must state with specificity the amounts that the non-debtor party believes are necessary to cure the defaults with appropriate documentation in support thereof. If not objection is timely received, the Cure Amounts set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any designated contract or other document and the non-debtor party to the designated contract shall be forever barred from asserting any other claim arising prior to the assignment against the debtor or the proposed purchaser as to such designated contract and such non-debtor party shall be deemed to have consented to the assumption and assignment of such designated contract to the Purchaser.

6

22.     To assist in the assumption, assignment, and sale of the Assumed Contracts, the Trustee requests that the Bankruptcy Court enter an order providing that any anti-assignment provisions in any Assumed Contract shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Assumed Contracts, and are deemed and found to be unenforceable anti-assignment provisions within the meaning of § 365(f) of the Bankruptcy Code.

23.     Section 365(f)(1) of the Bankruptcy Code permits assignment of unexpired leases and contracts free from such anti-assignment restrictions, providing in in pertinent part, that: "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection. . . ." 11 U.S.C. § 365(f)(1).  Section 365(f)(1), by operation of law, invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease. *See, e.g.*, *Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.),* 127 F. 3d 904, 910-11 (9th Cir. 1997) ("no principle of bankruptcy or contract law precludes us from permitting the [d]ebtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365"). Section 365(f)(3) goes beyond the scope of § 365(f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof. *See, e.g., In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y 1996) (section 365(f)(3) prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled anti-assignment clauses, are subject to court's scrutiny regarding anti-assignment effect).  The APA also provides for the Purchaser to de-designate any Assumed Contract if it cannot reach a satisfactory resolution of a

3421858

timely asserted cure objection on or before 15 days after the closing of the APA.

### VI.  PROPOSED APPORTIONMENT OF THE PROCEEDS AND DISTRIBUTION OF PORTION OF THE PROCEEDS

24.    The Secured Party claims a security interest in the Property.  However, the Secured Party has agreed that the bankruptcy estates of the Debtors shall receive as a carve-out from the Purchase Price 25% of the $350,000.00 ($87,500.00) with such carve-out to be apportioned to the bankruptcy estate free and clear of the secured claims of Secured Party.  The remainder of the Purchaser Price, $262,500.00, will be apportioned to the Secured Party.

25.    In addition, the Secured Party has agreed that the Trustee shall receive from the Secured Party's share of the Purchase Price compensation at his statutory commission rates (see 11 U.S.C. § 326(a)).  Out of the total $262,500.00 to be apportioned to the Secured Party, the Trustee requests approval to receive as his commission the amount of $16,375.00.[2]  Thus, the Secured Party will be entitled to receive a distribution of $246,125.00 (the "Secured Party's Share") from the Purchase Price.

### VII.  WAIVER OF RULES 6004(H) AND 6006(D) IS APPROPRIATE

26.    In addition, the Trustee requests that the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006 be waived.  Under the circumstances, cause exists for waiver of the stay imposed by each of Rule 6004(h) and 6006 so that the Trustee and the Purchaser may proceed to close on the transaction as expeditiously as possible and within the time frames contemplated by the Trustee and the Purchaser.  The best interest of the estate requires the Trustee to close the transactions contemplated under the APA as soon as possible.  Accordingly, the Trustee hereby requests that the fourteen (14)-day stay period under Bankruptcy Rules 6004(h) and 6006(d) be waived.

---

[2] 25% on the first $5,000.00 = $1,250.00.  10% on the following $45,000.00 = $4,500.00.  5% on the following $212,500.00= $10,625.00.

3421858

WHEREFORE, PREMISES CONSIDERED, the Trustee prays that the Court enter an Order allowing and approving the sale as set forth above, authorizing the Trustee to execute the documents necessary to effectuate the sale of the Property to the Purchaser at the Purchase Price, approve and authorize the assumption and assignment of the Assumed Contracts; authorize the Trustee to receive as his commission in the amount of $16,375.00 from the Secured Party's portion of the Purchase Price, authority to distribute the Secured Party's Share, and granting such other and further relief as to which the Trustee may be entitled at law or in equity.

Respectfully submitted,

By:/s/  James Studensky
  James Studensky, Chapter 7 Trustee
  State Bar No. 19440000

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, TX 78701
Telephone: 512.480.5626
Facsimile: 512.536.9926
bcumings@gdhm.com


By:/s/ Brian T. Cumings
  Brian T. Cumings
  State Bar No. 24082882

**PROPOSED COUNSEL FOR JAMES STUDENSKY, CHAPTER 7 TRUSTEE**

3421858

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the Secured Party has confirmed that the Secured Party is not opposed to the relief requested in this Motion.

By:/s/ Brian T. Cumings
Brian T. Cumings

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of December, 2018, I electronically filed this Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to those receiving electronic service and service was made by email as indicated below and as further indicated in the appended Service List.

Little River Healthcare Holdings, LLC
Attn: Ronald Winters, Former Chief
Restructuring Officer
1700 Brazos Ave
Rockdale, TX 76567
rwinters@hcmpllc.com

Office of the United States Trustee
Attn: Shane P. Tobin
903 San Jacinto, Room 230
Austin, TX 78701
Shane.P.Tobin@usdoj.gov

Vinson & Elkins, LLP
Attn: Bill Wallander; Matt Pyeatt;
Bradley Foxman
Trammell Crow Center
2001 Ross Avenue, Suite 3700,
Dallas, TX 75201-2975
bwallander@velaw.com;
mpyeatt@velaw.com;
bfoxman@velaw.com
*Attorneys for Monroe Capital*
*Management Advisors, LLC*

Morris D. Weiss
Waller Lansden Dortch & Davis, LLP
100 Congress Ave.
18th Floor
Austin, TX 78701
Morris.Weiss@wallerlaw.com
*Debtors' Counsel*

By:/s/ Brian T. Cumings
Brian T. Cumings

3421858

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**") is made and entered into as of December 21, 2018, by and between Seton Family of Hospitals, a Texas nonprofit corporation ("**Buyer**"), and James Studensky, Chapter 7 Trustee (the "**Seller**") for the bankruptcy estates of Little River Healthcare Holdings, LLC, Rockdale Blackhawk, LLC, Little River Healthcare – Physicians of King's Daughters, LLC, Compass Pointe Holdings, LLC, Timberlands Healthcare, LLC, King's Daughters Pharmacy, LLC, Cantera Way Ventures, LLC, Little River Healthcare Management, LLC and Little River Medical Group, a Texas non-profit corporation ("**LRMG**").  Seller, Buyer and LRMG may be referred to herein individually as a "**Party**" and collectively as the "**Parties**".

### WITNESSETH

WHEREAS, Buyer is a multispecialty health care provider that employs and contracts with clinical and non-clinical providers and, with its affiliates, provides a wide range of health care services in and around central Texas (the "**Community**");

WHEREAS, Buyer's affiliate, Providence Health Alliance, is a Texas nonprofit corporation certified by the Texas Medical Board as a nonprofit health organization ("**PHA**") that is legally authorized to employ, and does employ, physicians and other clinical and non-clinical providers;

WHEREAS, Seller is the duly appointed and serving Chapter 7 trustee in the jointly administered bankruptcy cases initiated by voluntary petitions for reorganization under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "**Bankruptcy Court**") on July 24, 2018 (the "**Petition Date**"), styled *In re Little River Healthcare Holdings, LLC, et al.*, Case No. 18-60526-rbk, which such reorganization was converted into a liquidation under chapter 7 of the Bankruptcy Code on December 7, 2018 (the "**Bankruptcy Cases**"); and

WHEREAS, in connection with, and subject to the terms and conditions set forth in this Agreement, Buyer desires to purchase for fair market value from Seller, and Seller desires to sell, transfer and assign to Buyer, certain assets belonging to one or more of the bankruptcy estates (the "**Bankruptcy Estates**") of the debtors (the "**Debtors**") in the Bankruptcy Cases.

NOW THEREFORE, in consideration of the mutual covenants and agreements herein contained, and other good and valuable consideration, the Parties hereto agree as follows:

### ARTICLE 1

### DEFINITIONS AND CONSTRUCTION

Section 1.1     Definitions. For purposes of this Agreement, the following capitalized terms will have the meanings set forth below:

"**Assumed Contracts**" means all contracts to which a Debtor is a party and which are set forth on **Exhibit A** to this Agreement. The Assumed Contracts will not include any other contracts or agreements of Debtors that are not set forth on **Exhibit A**.  Notwithstanding the above, to the extent a particular Assumed Contract is in default or has been breached and the counterparty has not waived such breach or default or waived all obligations to pay amounts necessary to cure such breach or default, Buyer may elect not to assume such Assumed Contract, in which case Buyer shall provide written notice of such non-

**EXHIBIT A**

assumption within 15 days following the Closing Date and such contract shall not be an Assumed Contract hereunder.  Under no event shall Seller be liable to pay any cure amounts.

"**Assumed Liabilities**" means the following liabilities and obligations of Debtors, and no others, that shall be assumed by Buyer as of the Closing Date:

(a)  obligations under the Assumed Contracts to the extent that such obligations are required to be performed on or after the Closing Date (and are not the result of any breach or violation of an Assumed Contract by any Debtor).

"**Books and Records**" means all books, records, brochures, manuals, training materials and similar items, and all marketing, sales and advertising materials relating to the operation of the Purchased Assets.

"**Business Day**" means any day other than Saturday, Sunday or any day on which banks in Texas are required or authorized to be closed.

"**Clinic**" means the facility located at 1905 SW H K Dodgen Loop, Temple, Texas 76502 (known as King's Daughters Clinic).

"**Closing**" means the consummation of the purchase and sale transactions described in this Agreement.

"**Closing Date**" means January 1, 2019, or such other date on which the Closing occurs as mutually agreed upon by the Parties.

"**Custodian Agreement**" will have the meaning set forth in Section 2.5(a)(iii).

"**Encumbrances**" means, with respect to the Purchased Assets, all liabilities, claims, liens, charges, mortgages, security interests or other encumbrances of any kind.

"**Escrow Agent**" means Waller Lansden Dortch & Davis, LLP.

"**Escrow Agreement**" means that certain Deposit Escrow Agreement, dated November 27, 2018, by and among Seton, Little River Healthcare Holdings, LLC and the Escrow Agent, as agreed to and confirmed by the other Debtors and LRMG.

"**Facilities**" means the Clinic, the Pharmacy, the Imaging Center and the Spine Center.

"**Final Order**" means an order of the Bankruptcy Court, the operation of which has not been reversed, stayed, modified or amended, and with respect to which the time for filing an appeal or petition for certiorari, rehearing or review has expired, and as to which no appeal, petition for certiorari, rehearing or review is then pending.

"**Governmental Body**" means any local, state or federal governmental or quasi-governmental authority (including any governmental agency, branch, department, official, or entity and any court or other tribunal).

"**Imaging Center**" means the facility located at 1528 Leander Road, Georgetown, Texas 78628 (known as Georgetown Imaging).

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

"**Initial Deposit**" means $100,000 previously deposited with the Escrow Agent by Seton on November 28, 2018 in accordance with the terms of the Escrow Agreement.

"**Personal Property**" means all of the clinical supplies, equipment, inventory, fixed assets and other tangible personal property owned by Debtors set forth or described on **Exhibit C**.

"**Pharmacy**" means the pharmacy located within the Clinic (known as King's Daughters Pharmacy).

"**Practice Permits**" means all material permits, licenses, franchises, consents, approvals or similar permissions required under any federal, state, county or local laws or regulations for conducting the medical practice of Debtors that are to be purchased and sold to Buyer pursuant hereto, which are described on Schedule 3.5.

"**Purchase Price**" means the aggregate amount to be paid by Buyer for the Purchased Assets, as set forth in Section 2.2.

"**Purchased Assets**" means the following:

(a)    all Personal Property;

(b)    all of the Bankruptcy Estates' rights and interests under the Assumed Contracts;

(c)    to the extent assignable, the Practice Permits set forth on Schedule 3.5 and all rights related thereto;

(d)    all claims, causes of action, and judgments in favor of the Debtors related to the condition of the Purchased Assets, and to the extent assignable by Seller, all warranties and rights and claims that may be asserted by Seller related to the Purchased Assets;

(e)    all Books and Records that are not Excluded Assets;

(f)    the phone numbers, facsimile numbers, and e-mail addresses described in Section 5.1 hereof; and

(g)    the interest of the Debtors in all property of the foregoing types, arising or acquired in the ordinary course of the business of Debtors between the Effective Date and the Closing.

"**Sale Order**" has the meaning set forth in Section 5.5(c).

"**Seton**" means Ascension Texas d/b/a Seton Healthcare Family, a Texas corporation and an affiliate of Buyer.

"**Spine Center**" means the facility located at 1520 Leander Road, Suite 101, Georgetown, Texas 78628 (known as the Bergeson Spine Center).

"**Term Sheet**" has the meaning set forth in Section 5.7.

All other terms defined elsewhere in this Agreement will have the meanings assigned to them in this Agreement.

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

Section 1.2    Construction. The words "include", "includes" and "including" will be deemed to be followed by "without limitation". The words "this Agreement", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

## ARTICLE 2

### SALE OF ASSETS

Section 2.1    Sale of Assets. Upon the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Seller shall convey all of Debtors' interests in the Purchased Assets and all parts thereof to Buyer, free and clear of all Encumbrances, other than the Assumed Liabilities.

Section 2.2    Purchase Price, Payments and Allocation.

(a)    Purchase Price. Buyer will pay to Seller, as the total consideration for the Purchased Assets, a cash purchase price equal to $350,000 ("**Purchase Price**"). The Parties agree that the Purchase Price shall be paid by Buyer to Seller by wire transfer of immediately available funds on the Closing Date (after giving credit for the Initial Deposit as provided in Section 2.7(a)(i)) to the account designated by Seller.

Section 2.3    Buyer's Assumption of Liabilities. Upon the terms and subject to the conditions set forth in this Agreement, and in further consideration of the transfer of the Purchased Assets, at the Closing, Buyer will assume only those duties, liabilities or obligations of Debtors included in the Assumed Liabilities.

Section 2.4    Closing. The Closing will take place at 12:00 a.m., Central time, on the Closing Date by the electronic exchange of documents or at such location as agreed upon by the Parties.

Section 2.5    At Closing.

(a)    Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller will deliver to Buyer, and delivery of such items is a condition to Buyer's obligation to close hereunder:

(i)    A Bill of Sale and Assignment in the form attached as **Exhibit 2.5(a)(i)** (the "**Bill of Sale**") executed by Seller in favor of Buyer;

(ii)    A Custodian of Medical Records Agreement in the form attached as **Exhibit 2.5(a)(iii)(B)** (the "**Custodian Agreement**") executed by LRMG and Seller;

(iii)    A copy of the Sale Order, in form and substance satisfactory to Buyer;

(iv)    Such other instruments and documents the Parties mutually deem reasonably necessary to effect the transactions contemplated hereby and to place Buyer in legal and operational possession of the Purchased Assets.

(b)    Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer will deliver to Seller (and any other applicable parties):

(i)    The cash portion of Purchase Price in accordance with Section 2.2(a);

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

      (ii)      The Bill of Sale executed by Buyer;

      (iii)      The Custodian Agreement executed by Buyer; and

      (iv)      Such other instruments and documents the Parties mutually deem reasonably necessary to effect the transactions contemplated hereby.

      Section 2.6      Further Assurances.  Subject to the requirements of the Bankruptcy Code and the Bankruptcy Court, at and after the Closing, and without further consideration therefor, (a) Seller shall execute and deliver to Buyer such further instruments and certificates of conveyance and transfer as Buyer may reasonably request to convey and transfer the Purchased Assets from Seller to Buyer, and (b) Buyer shall execute, or shall arrange the execution of, and deliver to Seller such further instruments and certificates of assumption, novation and release as Seller may reasonably request in order to make Buyer responsible for all Assumed Contracts and Assumed Liabilities and release Seller therefrom to the fullest extent permitted under applicable law and consistent with the terms of this Agreement.

      Section 2.7      Release of Initial Deposit.  The Initial Deposit was distributed to the Debtors by the Escrow Agent in accordance with the terms of the Escrow Agreement.  Upon the Closing, the Initial Deposit shall be credited against the Purchase Price to be paid by Buyer.  Notwithstanding any provision of this Agreement to the contrary, Seller hereby agrees that the Initial Deposit shall be Seller's sole remedy for any breach of this Agreement by Buyer as liquidated and stipulated damages. Except for so receiving the Initial Deposit as provided above, Seller shall not have any other claim or remedy relating to the transactions contemplated hereby (or the failure thereof) (whether resulting from breach or otherwise). As acknowledged by the Parties, the full extent of Seller's damages in the event of such a breach by Buyer cannot be accurately anticipated or determined, and the amount of liquidated damages does not constitute a penalty.

## ARTICLE 3

### REPRESENTATIONS AND WARRANTIES OF SELLER

      Seller, by his execution of this Agreement, hereby represents and warrant to Buyer, as follows:

      Section 3.1

      (a)      Seller will transfer, pursuant to the Sale Order, all of the Debtors' right, title and interest in and to all of the Purchased Assets on the Closing Date, free and clear of all Encumbrances; and

      (b)      all of the Debtors' interests in the Assumed Contracts and assignable Practice Permits included in the Purchased Assets will be assigned to Buyer.

      Section 3.2      Authority.

      (a)      Except for the approval of the Bankruptcy Court, Seller has the legal right, power, authority and capacity to enter into, execute, deliver and perform this Agreement on behalf of the Bankruptcy Estates, and LRMG has the legal right, power, authority and capacity to enter into, execute, deliver and perform this Agreement.

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

## ARTICLE 4

### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows:

Section 4.1    Organization. Buyer is a nonprofit corporation duly organized and validly existing under the laws of the State of Texas.

Section 4.2    Authority.

(a)    Buyer has the legal right, power and authority to enter into, execute, deliver and perform this Agreement. All authorizations, approvals and consents necessary for the execution and delivery by Buyer of this Agreement, and the consummation of the transactions contemplated by this Agreement, have been obtained. This Agreement has been duly executed and delivered by Buyer and constitutes the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.

(b)    The execution and delivery of this Agreement by Buyer, subject to the entry of the Sale Order, the performance and the consummation of the transactions contemplated by this Agreement by Buyer, will not, except as otherwise set forth on Schedule 4.2(b), require  Buyer to obtain any consent, approval, authorization or permit of, or to make any filing with or notification to, any Governmental Body or any third party.

## ARTICLE 5

### OTHER AGREEMENTS OF THE PARTIES

Section 5.1    Transfer of Phone Numbers, etc. As of the Closing Date, Seller hereby assigns to Buyer all of Seller's rights in and to the phone numbers, including facsimile numbers and e-mail addresses, associated with the Purchased Assets at the applicable Facilities; and Seller will thereafter have no rights to, and will refrain from using, such numbers and addresses. Seller agree to execute such instruments and consents reasonably requested by Buyer to affect such transfers.

Section 5.2    Damage. If, at any time after the Effective Date, but before Closing, a material portion of the Purchased Assets are damaged or destroyed, then Buyer, at its sole option, may terminate this Agreement by written notice to Seller.

Section 5.3    Bankruptcy Court Approval.

(a)    Notwithstanding anything in this Agreement to the contrary, this Agreement and the sale of the Purchased Assets are subject to the entry by the Bankruptcy Court of the Sale Order.

(b)    Seller shall seek entry by the Bankruptcy Court of an order, the terms of which shall be reasonably satisfactory to Buyer and which shall be effective immediately upon entry pursuant to Rule 7062 and 9014 of the Federal Rules of Bankruptcy Procedure, and no automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Rule 6004(h) or 6006(d) of the Federal Rules of Bankruptcy Procedure shall apply with respect to such order (the "**Sale Order**") as soon as practicable, but in no event later than December 31, 2018. The Sale Order shall, among other things, provide that: (A) Buyer is a good faith purchaser pursuant to

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

section 363(m) of the Bankruptcy Code and shall not be deemed a successor entity of Seller; (B) the sale of the Purchased Assets is free and clear of all Encumbrances, claims, and interests (other than the Assumed Liabilities); (C) Seller's execution, delivery and performance of this Agreement and the transactions and agreements contemplated hereby is approved; (D) Seller is authorized to assume and assign the Assumed Contracts pursuant to section 365(a) and (b) of the Bankruptcy Code, notwithstanding any provisions that restrict the assignability of the Assumed Contracts; and (E) the sole remedy for a breach of this Agreement by Buyer is limited to Seller's receipt of the Initial Deposit.

> Section 5.4    Pro-Ration of Taxes and Rent.  All amounts for lease costs and taxes (including personal property tax) related to the Assumed Contracts and the Personal Property shall be prorated between Bankruptcy Estates, on the one hand, and Buyer, on the other hand, on a pro rata per diem basis.   Rent and utilities for December 2018 for the Facilities shall be pro rated between the Bankruptcy Estates, on the one hand, and Buyer, on the other hand, on a pro rata per diem basis, based on the date Buyer initially occupies the Facilities, which shall be December 7, 2018 for the Spine Center and the Closing Date for the other Facilities. Under no event shall Seller be liable to pay any cure amounts.

> Section 5.5    Cerner Platform Access, Medical Records.  Buyer shall serve as custodian of certain medical records pursuant to the Custodian Agreement.  Buyer shall provide access to certain medical records to LMRG and Seller as provided in the Custodian Agreement.

> Section 5.6    Assumed Contracts.  For the avoidance of doubt, if Buyer elects not to assume an Assumed Contract within the 15-day period set forth in the definition of "Assumed Contracts", Buyer shall not be responsible for any cure amounts or cure obligations under or with respect to such Assumed Contract.

## ARTICLE 6

### TERMINATION

> Section 6.1    Termination. This Agreement may be terminated and the transactions contemplated by this Agreement abandoned at any time prior to the Closing:

> (a)    by mutual written consent of Seller and Buyer;

> (b)    by Buyer, as provided for in Section 5.2;

> (c)    by Buyer if the Sale Order approving the transactions contemplated hereby and thereby with Buyer, in form and substance satisfactory to Buyer, is not entered by the Bankruptcy Court on or prior to 5:00 pm Austin, Texas time on December 31, 2018;

> (d)    by Buyer if any of the items described in Section 2.5(a) have not been delivered to Buyer on or before the Closing.

> Section 6.2    Fees and Expenses; Initial Deposit.

> (a)    Payment of Fees and Expenses. Subject to clause (b) below, each of the Parties hereto will be responsible for and pay its own legal, accounting, engineering, environmental, survey and title charges and other fees and expenses, including, without limitation, reasonable attorneys' and accountants' fees and expenses and the fees and expenses of financial consultants, investment bankers, lenders and environmental consultants, incurred in connection with the

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

transactions contemplated hereby, including, without limitation, the due diligence review, and the negotiation, preparation and execution of this Agreement and any other agreements and any other instrument or document contemplated hereby (collectively, all such fees and expenses being the "**Fees and Expenses**").

(b)     Initial Deposit.  Buyer shall be entitled to the return of the Initial Deposit upon Buyer or Seller terminating this Agreement pursuant to Section 6.1.

## ARTICLE 7

### MISCELLANEOUS

Section 7.1     Assignment. This Agreement will be binding upon, and inure to the benefit of, and be enforceable by, the respective legal representatives, successors and assigns of each of the Parties to this Agreement. Subject to the foregoing, this Agreement will not be assignable by any Party without the prior written consent of the other Party, provided that Buyer may assign this Agreement to any entity controlled by Buyer. Nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies under or by reason of this Agreement.

Section 7.2     Modification or Amendment. No modification, amendment, extension or alleged waiver of this Agreement or any provision of this Agreement will be binding unless in writing and signed by each of the Parties to this Agreement.

Section 7.3     Entire Agreement. This Agreement (including the Exhibits and Schedules to this Agreement), together with the Escrow Agreement and Term Sheet Section, constitutes the entire agreement among the Parties and supersedes and replaces any and all prior agreements and understandings, written or oral, relative to the transactions contemplated under this Agreement.

Section 7.4     Headings. The headings in this Agreement are for convenience and reference only, and do not constitute a part of this Agreement, and will not be deemed to limit or affect any of the provisions of this Agreement.

Section 7.5     Governing Law. This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Texas and the bankruptcy laws of the United States, without regard to conflicts of laws principles.

Section 7.6     Waivers. The failure by any Party at any time to require performance of any provision of this Agreement will not affect such Party's right later to require such performance. No waiver in any one or more instance will (except as otherwise stated therein) be deemed to be a further or continuing waiver of any such condition or breach in any other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty. All rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

Section 7.7     Attorneys' Fees. In addition to any other relief to which it will be entitled, Buyer and Seller will be entitled to recover from each other the costs and reasonable attorneys' fees incurred by it in the successful enforcement of this Agreement.

Section 7.8     Counterparts. This Agreement may be executed in multiple counterparts, each of which will be deemed to constitute an original and all of which together will constitute one and the same instrument. A signed copy of this Agreement delivered by facsimile, email or other means of

8

**EXHIBIT A**

electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    Severability. If any term or other provision of this Agreement, or any portion of this Agreement, is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms and provisions of this Agreement, or remaining portion of this Agreement, will nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated by this Agreement is not affected in any manner materially adverse to any Party. Upon such determination that any such term or other provision, or any portion of this Agreement, is invalid, illegal or incapable of being enforced, the Parties to this Agreement will negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated by this Agreement are consummated to the fullest extent possible.

Section 7.10    Press Releases and Announcements.  No Party shall, and shall cause its affiliates not to, issue any press release or public announcement relating to the subject matter of this Agreement without the prior written approval of the other Parties.

Section 7.11    Survival. Except as otherwise noted herein, all provisions of this Agreement that either by their nature or as expressly provided in this Agreement survive termination of this Agreement will so survive.

*[Signature page follows]*

4814-7777-2417.3
21939216v.16
4832-1406-5793, v. 12

**EXHIBIT A**

IN WITNESS WHEREOF, Sellers, LRMG and Buyer have executed this Agreement as of the date first written above.

**BUYER:**

SETON FAMILY OF HOSPITALS

By: _____

Name: _W. Andrew Davis_

Title: _President and CEO_

**EXHIBIT A**

**SELLER:**

JAMES STUDENSKY, CHAPTER 7 TRUSTEE

**EXHIBIT A**

**LRMG:**

James Studensky, as Chapter 7 Trustee of Rockdale Blackhawk, LLC, the sole shareholder of LRMG.

**EXHIBIT A**

Exhibits and Schedules

Exhibits:

| | |
|---|---|
| Exhibit A | Assumed Contracts |
| Exhibit B | Other Excluded Assets |
| Exhibit C | Personal Property |
| Exhibit D | Contested Permitted Encumbrances |
| Exhibit 2.5(a)(i) | Bill of Sale |
| Exhibit 2.5(a)(ii) | Assignment and Assumption |
| Exhibit 2.5(a)(iii)(A) | BAA |
| Exhibit 2.5(a)(iii)(B) | Custodian Agreement |

Schedules:

| | |
|---|---|
| Schedule 3.3(b) | Sellers' Consents |
| Schedule 3.5 | Practice Permits |
| Schedule 4.2 | Buyer Consents |

**EXHIBIT A**

## Exhibit A

### Assumed Contracts

1.  Primesuite on Demand Software and Services Subscription Agreement by and between Rockdale Blackhawk, LLC d/b/a Little River Healthcare System and Greenway Medical Technologies, Inc., dated as of June 28, 2013.

    - Addendum by and between Rockdale Blackhawk, LLC d/b/a Little River Healthcare System and Greenway Medical Technologies, Inc., dated as of July 31, 2013.

    - Addendum II by and between Rockdale Blackhawk, LLC d/b/a Little River Healthcare System and Greenway Medical Technologies, Inc., dated as of July 1, 2013.

    - Order Form by and between Physicians of King's Daughters, P.A. and Greenway Health Inc., dated as of June 10, 2014.  [*ORDER FORM*]

2.  Amended and Restated Lease dated May 1, 2004 by and between Tri-Bell Properties, Ltd. as Landlord and Little River Healthcare - Physicians of King's Daughters, LLC (formerly known as Physicians of King's Daughter P.A.) as Tenant, for certain premises located at 1905 SW H.K. Dodgen Loop, Temple, TX consisting of 41,000 square feet.

3.  Lease Agreement dated as of April 21, 2016, by and between Wesley Allen Family Limited Partnership, as Lessor, and Rockdale Blackhawk, L.L.C., as Lessee, as amended by a First Amendment to Lease Agreement dated as of April 17, 2017, as amended by a Second Amendment to Lease Agreement dated as of February 1, 2018, for lease of space located at 1520 Leander Road, Suite 101, Georgetown, TX.

4.  Lease Agreement dated April 2, 2006, by and between Todd Lane, LLC, as successor Lessor in interest to Alazan Partners Ltd., and Rockdale Blackhawk, LLC d/b/a/ Little River Healthcare, as successor Lessee in interest to Kevin J. Owens, as amended by a Commercial Lease Extension dated as of January 18, 2016, as amended by a Second Commercial Lease Extension dated as of August 22, 2016, as amended by a Third Commercial Lease Extension dated as of February 12, 2018, for approximately 3,400 square feet of space located at 1528 Leander, Georgetown, TX.

5.  All lease and maintenance agreements related to servers and related equipment that the Greenway Platform (as defined in the Asset Purchase Agreement) relies on to save, store and process information; as well as all lease and maintenance agreements related to servers and related equipment that the Mitel phone system relies on to save, store and process information.

**EXHIBIT A**

## **Exhibit B**

### **Other Excluded Assets**

None.

**EXHIBIT A**

## Exhibit C

### Personal Property

1.      All of the equipment, furniture, fixed assets, inventory, supplies and other tangible personal property located at any of the Facilities (as defined in the attached Asset Purchase Agreement) (but excluding all pharmaceutical inventory, supplies, medical records and/or equipment of the pharmacy located at King's Daughters Clinic Temple), including but not limited to those assets set forth on the spreadsheets attached to this Exhibit C.

2.      All equipment and servers that the Greenway Platform (as defined in the Asset Purchase Agreement) relies on to save, store and process information.

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| BAYER | ANALYZER, URINE |
| BAYER | ANALYZER, URINE |
| SIEMENS MEDICAL | ANALYZER, URINE |
| SIEMENS MEDICAL | ANALYZER, URINE |
| INTOXIMETERS | ANALYZER |
| VAS CORP. | ANALYZER |
| CANON USA INCORPORATED | CAMERA, RETINAL |
| STRYKER CORPORATION | CAST CUTTER & VACUUM |
| STRYKER CORPORATION | CAST CUTTER & VACUUM |
| COOPER SURGICAL | CAUTERY UNIT |
| BECKMAN COULTER | CENTRIFUGE |
| BECKMAN COULTER | CENTRIFUGE |
| HETTICH | CENTRIFUGE |
| CLAY ADAMS | CENTRIFUGE |
| MIDMARK CORPORATION | CHAIR, EXAM |
| STORZ INSTRUMENT COMPANY | CHAIR, EXAM |
| RELIANCE CORPORATION | CHAIR, EXAM |
| RELIANCE CORPORATION | CHAIR, EXAM |
| RELIANCE CORPORATION | CHAIR, EXAM |
| BURTON MEDICAL PRODUCTS | CHAIR, EXAM |
| MIDMARK CORPORATION | CHAIR, EXAM |
| MIDMARK CORPORATION | CHAIR, PODIATRY |
| MIDMARK CORPORATION | CHAIR, PODIATRY |
| MIDMARK CORPORATION | CHAIR, PODIATRY |
| MIDMARK CORPORATION | CHAIR, PODIATRY |
| UNICO | COLPOSCOPE |
| LEISEGANG MEDICAL INC. | COLPOSCOPE |
| UNICO | COLPOSCOPE |
| ZOLL MEDICAL | DEFIB, AED |
| ZOLL MEDICAL | DEFIB/MON/PACER/REC |
| X-RITE INC. | DENSITOMETER |
| WELCH ALLYN | EKG MACHINE |
| WELCH ALLYN | EKG MACHINE |
| STORZ ENDOSCOPY | ENT UNIT |
| RELIANCE CORPORATION | ENT UNIT |
| RELIANCE CORPORATION | ENT UNIT |
| SMR | ENT UNIT |
| COOPER SURGICAL | CAUTERY UNIT |
| STACKHOUSE ASSOCIATES INC | EVACUATOR, SMOKE |
| KENMORE | FREEZER, LAB |
| CONMED CORP. | HYFRECATOR |
| BIRTCHER CORPORATION | HYFRECATOR |
| BIRTCHER CORPORATION | HYFRECATOR |
| CONMED CORP. | HYFRECATOR |
| CONMED CORP. | HYFRECATOR |
| CONMED CORP. | HYFRECATOR |
| 3M | INCUBATOR, LAB |
| B&L | KERATOMETER |
| MARCO | KERATOMETER |
| WELCH ALLYN | LAMP, EXAM |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
|---|---|
| WELCH ALLYN | LAMP, EXAM |
| BURTON MEDICAL PRODUCTS | LAMP, EXAM |
| MCKESSON | LAMP, EXAM |
| GOODWIN MFG., INC. | LAMP, EXAM |
| ADJUSCO | LAMP, EXAM |
| AJUSCO | LAMP, EXAM |
| MCKESSON | LAMP, EXAM |
| MCKESSON | LAMP, EXAM |
| MCKESSON | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| ADJUSCO | LAMP, EXAM |
| GRAHAM FIELD | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| ADJUSCO | LAMP, EXAM |
| GRAHAM FIELD | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| RITTER COMPANY | LAMP, EXAM |
| RITTER COMPANY | LAMP, EXAM |
| ADJUSCO | LAMP, EXAM |
| ADJUSCO | LAMP, EXAM |
| GRAHAM FIELD | LAMP, EXAM |
| S&S X-RAY | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| GRAHAM FIELD | LAMP, EXAM |
| GE (LIGHTING) | LAMP, EXAM |
| GENERAL MEDICAL | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| GRAHAM FIELD | LAMP, EXAM |
| BURTON MEDICAL PRODUCTS | LAMP, EXAM |
| ADJUSCO | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| CARL ZEISS INCORPORATED | LAMP, SLIT |
| CARL ZEISS INCORPORATED | LAMP, SLIT |
| CARL ZEISS INCORPORATED | LAMP, SLIT |
| CARL ZEISS INCORPORATED | LAMP, SLIT |
| CARL ZEISS INCORPORATED | LAMP, SLIT |
| CARL ZEISS INCORPORATED | LAMP, SLIT |
| SAM WAGNER | LIGHT SOURCE, SURG. / COLD SUPPLY |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
|---|---|
| WELCH ALLYN | LIGHT SOURCE, SURG. / COLD SUPPLY |
| OLYMPUS | LIGHT SOURCE, SURG. / COLD SUPPLY |
| ACMI | LIGHT SOURCE, SURG. / COLD SUPPLY |
| BURTON MEDICAL PRODUCTS | LIGHT, SURGICAL, O.H. |
| STORZ ENDOSCOPY | MICROSCOPE, LAB |
| URBAN ENGINEERING | MICROSCOPE, LAB |
| MARCO | MICROSCOPE, LAB |
| AMERICAN OPTICAL | MICROSCOPE, LAB |
| FISHER SCIENTIFIC | MICROSCOPE, LAB |
| LW SCIENTIFIC | MICROSCOPE, LAB |
| NIKON INC. | MICROSCOPE, LAB |
| NIKON INC. | MICROSCOPE, LAB |
| SEILER INSTRUMENT CO. | MICROSCOPE, LAB |
| HOMEDICS | MICROSCOPE, LAB |
| CARL ZEISS INCORPORATED | MICROSCOPE, SURGICAL |
| STRECK LABS | MIXER |
| COROMETRICS MEDICAL | MONITOR, FETAL |
| COROMETRICS MEDICAL | MONITOR, FETAL |
| COROMETRICS MEDICAL | MONITOR, FETAL |
| SONY MEDICAL ELECTRONICS | MONITOR, VIDEO |
| DEVILBISS HEALTHCARE | NEBULIZER, AIR |
| SUNRISE MEDICAL | NEBULIZER, AIR |
| DEVILBISS HEALTHCARE | NEBULIZER, AIR |
| RESPIRONICS | NEBULIZER, AIR |
| DEVILBISS HEALTHCARE | NEBULIZER, AIR |
| ADC HOSPITAL EQUIPMENT | NIBP |
| WELCH ALLYN | NIBP |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| ELLEX INC. | OPTHALMOSCOPE/LASER |
| RELIANCE CORPORATION | OPTHAMOLOGY CHAIR |
| RELIANCE CORPORATION | OPTHAMOLOGY CHAIR |
| RELIANCE CORPORATION | OPTHAMOLOGY CHAIR |
| RELIANCE CORPORATION | OPTHAMOLOGY CHAIR |
| RELIANCE CORPORATION | OPTHAMOLOGY CHAIR |
| RELIANCE CORPORATION | OPTHAMOLOGY CHAIR |
| RELIANCE CORPORATION | OPTICAL UNIT |
| RELIANCE CORPORATION | OPTICAL UNIT |
| RELIANCE CORPORATION | OPTICAL UNIT |
| RELIANCE CORPORATION | OPTICAL UNIT |
| RELIANCE CORPORATION | OPTICAL UNIT |
| MENTOR O&O INCORPORATED | OPTICAL UNIT |
| BURTON MEDICAL PRODUCTS | OPTICAL UNIT |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| MENTOR O&O INCORPORATED | OTO/OPHTHALMOSCOPE |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| MENTOR O&O INCORPORATED | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| MENTOR O&O INCORPORATED | OTO/OPHTHALMOSCOPE |
| JONES INSTRUMENT CORP. | PULMONARY FUNCTION TESTING SYSTEM |
| FUJIFILM | PRINTER |
| FUJIFILM | PRINTER |
| FUJIFILM | PRINTER |
| AMERICAN OPTICAL | PROJECTOR |
| AMERICAN OPTICAL | PROJECTOR |
| AMERICAN OPTICAL | PROJECTOR |
| AMERICAN OPTICAL | PROJECTOR |
| AMERICAN OPTICAL | PROJECTOR |
| REICHERT | PROJECTOR |
| CRITICARE SYSTEMS INC. | PULSE OXIMETER |
| CRITICARE SYSTEMS INC. | PULSE OXIMETER |
| BRAUN | PUMP, INFUSION |
| SHUCO | PUMP, SUCTION |
| GEN-MED | PUMP, SUCTION |
| TRUE MFG CO | REFRIGERATOR, NONPAT |
| GE (CONSUMER PRODUCTS) | REFRIGERATOR, NONPAT |
| MAGIC CHEF | REFRIGERATOR, NONPAT |
| KELVINATOR | REFRIGERATOR, NONPAT |
| KENMORE | REFRIGERATOR, NONPAT |
| LAB-LINE INSTRUMENTS | REFRIGERATOR, NONPAT |
| KENMORE | REFRIGERATOR, NONPAT |
| FISHER ELECTRONICS | REFRIGERATOR, NONPAT |
| SECA | SCALE |
| TANITA | SCALE |
| TANITA | SCALE |
| TANITA | SCALE |
| TANITA | SCALE |
| SECA | SCALE |
| SECA | SCALE |
| SECA | SCALE |
| OLYMPIC MEDICAL | SCALE |
| TANITA | SCALE, INFANT |
| TANITA | SCALE, INFANT |
| PURITAN-BENNETT CORP. | SPIROMETER |
| PELTON & CRANE | STERILIZER |
| PELTON & CRANE | STERILIZER |
| RITTER COMPANY | STERILIZER |
| MIDMARK CORPORATION | STERILIZER |
| MIDMARK CORPORATION | STERILIZER |
| BIODEX MEDICAL | TABLE, TREATMENT |
| BIODEX MEDICAL | TABLE, TREATMENT |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| CARL ZEISS INCORPORATED | TOPOGRAPHIC MODELER |
| M.D. INDUSTRIES | TYMPANOMETER |
| GESSWEIN | ULTRASONIC CLEANER |
| L&R MANUFACTURING CO. | ULTRASONIC CLEANER |
| METTLER ELECTRONICS CORPORATION | ULTRASONIC CLEANER |
| ACUSON | ULTRASOUND, DIAGNOSTIC |
| BIO PHYSIC MEDICINE | ECHOGRAPH MONITOR |
| SONOSITE | ULTRASOUND, DIAGNOSTIC |
| ALCON SURGICAL | ULTRASONIC PACHOMETE |
| ALCON SURGICAL | ULTRASONIC PACHOMETE |
| CARL ZEISS INCORPORATED | VISION TESTER |
| SONOMED | VISION TESTER |
| ACCTONE | VISION TESTER |
| MENTOR O&O INCORPORATED | VISION TESTER |
| PARKER LAB | WARMER, GEL |
| PARKER LAB | WARMER, GEL |
| PARKER LAB | WARMER, GEL |
| PARKER LAB | WARMER, GEL |
| PARKER LAB | WARMER, GEL |
| FRANNEL OPTICAL | WARMER, LAB |
| CONTINENTAL X-RAY CORPORATION | X-RAY |
| RAYTHEON MEDICAL | X-RAY |
| LORAD | X-RAY |
| DELL MEDICAL | X-RAY |
| LUNAR RADIATION | X-RAY |
| WOLF X-RAY | X-RAY FILM VIEWER |
| WOLF X-RAY | X-RAY FILM VIEWER |
| WOLF X-RAY | X-RAY FILM VIEWER |
| AMS | X-RAY FILM VIEWER |
| AMERICAN MEDICAL SALES | X-RAY FILM VIEWER |
| GRAHAM FIELD | X-RAY FILM VIEWER |
| GRAHAM FIELD | X-RAY FILM VIEWER |
| GRAHAM FIELD | X-RAY FILM VIEWER |
| GRAHAM FIELD | X-RAY FILM VIEWER |
| PICKER INT. | X-RAY FILM VIEWER |
| WOLF X-RAY | X-RAY FILM VIEWER |
| GRAHAM FIELD | X-RAY FILM VIEWER |
| S&S X-RAY | X-RAY FILM VIEWER |
| SOURCE ONE | X-RAY FILM VIEWER |
| GRAHAM FIELD | X-RAY FILM VIEWER |
| AMS | X-RAY FILM VIEWER |
| RADX CORP. | X-RAY FILM VIEWER |
| SOURCE ONE | X-RAY FILM VIEWER |
| AMERICAN MEDICAL SYSTEMS | X-RAY FILM VIEWER |
| WOLF X-RAY | X-RAY FILM VIEWER |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
|---|---|
| WELCH ALLYN | NIBP, SPO2, TEMP |
| MIDMARK CORPORATION | TABLE, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| PCI MEDICAL | DISINFECTION SOAK STATION |
| GE HEALTHCARE | MONITOR, FETAL |
| GRAHAM FIELD | LAMP, EXAM |
| GRAHAM FIELD | LAMP, EXAM |
| DETECTO SCALE COMPANY | SCALE |
| PCI MEDICAL | DISINFECTION SOAK STATION |
| ASPEN LABORATORIES | ESU |
| DETECTO SCALE COMPANY | SCALE |
| CLINTON | TABLE, TREATMENT |
| HK SURGICAL | PUMP, ARTHROSCOPIC |
| VNUS MEDICAL TECHNOLOGIES | GENERATOR, RF |
| LANTHEW MEDICAL IMAGING INC. | MIXER |
| WELCH ALLYN | THERMOMETER |
| ROPER | REFRIGERATOR, NONPAT |
| WELCH ALLYN | THERMOMETER |
| MARCO | MICROSCOPE, LAB |
| MARCO | KERATOMETER |
| DETECTO SCALE COMPANY | SCALE |
| CONMED CORP. | HYFRECATOR |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | NIBP |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| HAIER | REFRIGERATOR, NONPAT |
| TANITA | SCALE, INFANT |
| FRIGIDAIRE | REFRIGERATOR, NONPAT |
| KENMORE | REFRIGERATOR, NONPAT |
| WELCH ALLYN | TYMPANOMETER |
| HOLIDAY | FREEZER, NONPAT |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| DETECTO SCALE COMPANY | SCALE |
| WELCH ALLYN | THERMOMETER |
| NELLCOR PURITAN BENNETT | PULSE OX (BATTERY) |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| WELCH ALLYN | LAMP, EXAM |
| WELCH ALLYN | THERMOMETER |
| KELVINATOR | REFRIGERATOR, NONPAT |
| MIDMARK CORPORATION | TABLE, EXAM |
| GE HEALTHCARE | INJECTOR, DYE |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| GE HEALTHCARE | X-RAY |
| SPECTRIS SOLARIS | INJECTOR, DYE |
| PCI MEDICAL | DISINFECTION SOAK STATION |
| PCI MEDICAL | DISINFECTION SOAK STATION |
| GE HEALTHCARE | NIBP, TEMP, REC |
| DETECTO SCALE COMPANY | SCALE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
|---|---|
| BIRTCHER CORPORATION | HYFRECATOR |
| SUNRISE MEDICAL | NEBULIZER, AIR |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| TAYLOR | SCALE |
| FRIGIDAIRE | REFRIGERATOR, NONPAT |
| NELLCOR PURITAN BENNETT | PULSE OX (BATTERY) |
| MAGIC CHEF | REFRIGERATOR, NONPAT |
| NIDEX | LAMP, SLIT |
| MASTECH | POWER SUPPLY |
| MASTECH | POWER SUPPLY |
| ZOLL MEDICAL | DEFIB, AED |
| KEELER | TONOMETER |
| RITTER COMPANY | LAMP, EXAM |
| ZOLL MEDICAL | DEFIB, AED |
| FRIGIDAIRE | REFRIGERATOR, NONPAT |
| SONOSITE | ULTRASOUND, DIAGNOSTIC |
| GE HEALTHCARE | ULTRASOUND, DIAGNOSTIC |
| JEDMED | LIGHT SOURCE, SURG. / COLD SUPPLY |
| MASSIMO | PULSE OXIMETER |
| WELCH ALLYN | THERMOMETER |
| WELCH ALLYN | THERMOMETER |
| SUNRISE MEDICAL | NEBULIZER, AIR |
| WELCH ALLYN | THERMOMETER |
| NELLCOR PURITAN BENNETT | PULSE OX (BATTERY) |
| WELCH ALLYN | THERMOMETER |
| BECKMAN COULTER | ANALYZER, HEMATOLOGY |
| ABAXIS | ANALYZER, CHEMISTRY |
| REICHERT | BILIRUBINOMETER |
| IDEAL | WARMER, GEL |
| WELCH ALLYN | THERMOMETER |
| WELCH ALLYN | THERMOMETER |
| WELCH ALLYN | THERMOMETER |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| HEALTH-O-METER | SCALE |
| MIDMARK CORPORATION | STERILIZER |
| RIGHT MEDICAL | OPTICAL UNIT |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| MIDMARK CORPORATION | CHAIR, EXAM |
| CHATTANOOGA CORP. | ULTRASOUND, THERAPEUTIC |
| HUDSON | UPPERCYCLE |
| SPIRIT FITNESS | TREADMILL |
| SPIRIT FITNESS | BICYCLE |
| SPIRIT FITNESS | BICYCLE |
| ELECTRO MEDICAL | TABLE, EXAM |
| ELECTRO MEDICAL | TABLE, EXAM |
| GE HEALTHCARE | ULTRASOUND, DIAGNOSTIC |
| SONY MEDICAL ELECTRONICS | MONITOR, VIDEO |
| FRIGIDAIRE | REFRIGERATOR, NONPAT |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
|---|---|
| ACCUCOLD | REFRIGERATOR, NONPAT |
| FRIGIDAIRE | REFRIGERATOR, NONPAT |
| MIDMARK CORPORATION | TABLE, EXAM |
| WELCH ALLYN | NIBP, SPO2, TEMP |
| GE HEALTHCARE | REFRIGERATOR, NONPAT |
| GE HEALTHCARE | TREADMILL |
| GE HEALTHCARE | STRESS TEST SYSTEM |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| ORTHONIX | OPTICAL UNIT |
| CIRRUS | OPTICAL UNIT |
| TOPCON INSTRUMENT CORP. | LENSOMETER |
| WELCH ALLYN | THERMOMETER |
| NELLCOR PURITAN BENNETT | PULSE OX (BATTERY) |
| NELLCOR PURITAN BENNETT | PULSE OX (BATTERY) |
| HAAG-STREIT | VISION TESTER |
| GE HEALTHCARE | ULTRASOUND, DIAGNOSTIC |
| GENERAL MEDICAL | PUMP, SUCTION |
| WELCH ALLYN | NIBP |
| HEALTH-O-METER | SCALE |
| ZOLL MEDICAL | DEFIB, AED |
| MERRY X-RAY PRODUCTS | X-RAY |
| DIGIRAD | NUCLEAR MED SYSTEM |
| DIGIRAD | NUCLEAR MED SYSTEM |
| ACCUCOLD | FREEZER, NONPAT |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| GRAHAM FIELD | LAMP, EXAM |
| QUIDEL | ANALYZER |
| AMERICAN OPTICAL | PROJECTOR |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| MIDMARK CORPORATION | TABLE, EXAM |
| WELCH ALLYN | OTO/OPHTHALMOSCOPE |
| REICHERT | PROJECTOR |
| REICHERT | PROJECTOR |
| REICHERT | PROJECTOR |
| THERMO FISHER SCIENTIFIC INC. | CENTRIFUGE |
| QUIDEL | ANALYZER |
| Fujifilm Medical Systems | KDRadiology |
| Merry Xray Tube | KDRadiology |
| Fujifilm Medical Systems-Mammo System | KDRadiology |
| Henry Schein-Piccolo Express Chem System | KDC Lab |
| Henry Schein-Hematology System and Bilirubinometer | KDC Lab |
| GE Healthcare-Radiology Probe and Printer LS8 r2 with SA-80% | KDC Imaging |
| GE Healthcare-Radiology Probe and Printer LS8 r2 with SA-20% | KDC Imaging |
| GE Healthcare-Radiology Probe and Printer LS8 r2 with SA-PARTS | KDC IMAGING |
| Microsoft Windows Server Licenses (qty 7) (CDW Government) | KDC-Temple |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
|---|---|
| Citrix Licenses (qty 210) (CDW Government) | KDC-Temple |
| Greenway Health (Greenway to Cerner interface) | KDC-Temple |
| Greenway Medical Techologies (Greenway to PACS Interface) | KDC-Temple |
| Orchard Software Corporation(KDC Lab Report Software) | KDC Lab |
| Orchard Software Corporation(KDC Lab Report Software) Sales Tax Added Later Same asset as above | KDC Lab |
| Orchard Software Corporation(KDC Lab Report Software) Sales Tax Added Later Same asset as above | KDC Lab |
| EYE CTR PURCHASE - RECLINER - LE | TEMPLE EYE CTR |
| EYE CTR PURCHASE - STOOLS | TEMPLE EYE CTR |
| LIQUID NITROGEN TANK | TEMPLE (MAIN) |
| EYE CTR PURCHASE-POWER EXAM CHAI | TEMPLE EYE CTR |
| EYE CTR PURCHASE - POWER EXAM CH | TEMPLE EYE CTR |
| REFRIGERATOR FOR MICRO-BIOLOGY A | TEMPLE (MAIN) |
| EYE CTR PURCHASE - TABLES | TEMPLE EYE CTR |
| REFRIGERATOR - LAB | TEMPLE (MAIN) |
| FURNITURE - TEMPLE MAIN | TEMPLE (MAIN) |
| EYE CTR PURCHASE - BOOKCASES | TEMPLE EYE CTR |
| B-BRAUN IV PUMP - MOLDOVAN | TEMPLE (MAIN) |
| EYE CTR PURCHASE - FILING CABINE | TEMPLE EYE CTR |
| CHAIRS - TASK - 11 | TEMPLE (MAIN) |
| EYE CTR PURCHASE - CHAIRS - TASK | TEMPLE EYE CTR |
| AUTOCLAVE - MITTELBRONN | TMC I-SUITE 109 |
| EXAM TABLE - DR. BLACK | TEMPLE (MAIN) |
| AUTOCLAVE - RAMIREZ | TMC I-SUITE 106 |
| DESK & CREDENZA - KLIEWER | TEMPLE (MAIN) |
| EYE CTR PURCHASE - SHELVES - MED | TEMPLE EYE CTR |
| CLINIC ARTWORK | TEMPLE (MAIN) |
| VISUAL FIELD ANALYZER | TEMPLE EYE CTR |
| EYE CTR PURCHASE - DESKS | TEMPLE EYE CTR |
| EYE CTR PURCHASE - DISPLAY CABIN | TEMPLE EYE CTR |
| SALES TAX ON ENVIRONMENTAL SIGNA | TEMPLE (MAIN) |
| CHAIRS | TEMPLE (MAIN) |
| CHAIRS | TEMPLE (MAIN) |
| EYE CTR PURCHASE - TABLE & POWER | TEMPLE EYE CTR |
| REFRIGERATOR FOR ALLERGY SERUM | TMC I-SUITE 119 |
| EXAM TABLE - DERMOTOLOGY | TMC I-SUITE 109 |
| RHINOLARYNGOSCOPE | TMC I-SUITE 106 |
| DESK & BOOKCASES FOR RADIOLOGY | TEMPLE (MAIN) |
| CHAIRS | TEMPLE (MAIN) |
| EYE CTR PURCHASE - POWER EXAM CH | TEMPLE EYE CTR |
| CHAIRS - 10 - CONFERENCE ROOM | TEMPLE (MAIN) |
| EYE CTR PURCHASE - CHAIRS - PATI | TEMPLE EYE CTR |
| MICROSCOPE NIKKON FOR PATHOLOGIS | TEMPLE (MAIN) |
| EXAM TABLE - WOMEN CENTER | TMCII-SUITE 122 |
| PODIATRY CHAIR - MCCAFFREY | TMC I-SUITE 106 |
| OPTIC NERVE IMAGER FOR GLAUCOMA | TEMPLE EYE CTR |
| OFFICE FURNITURE - ADMIN | TEMPLE (MAIN) |
| HYSTEROSCOPE | TMCII-SUITE 122 |
| CHAIRS -  WOMEN CENTER | TMCII-SUITE 122 |
| STRESS SYTEM WITH TREADMILL | TEMPLE (MAIN) |
| EXAM TABLES | TEMPLE (MAIN) |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| FURNITURE - SUITE 103 | TMC I-SUITE 103 |
| ULTRASOUND TABLES - 2 | TEMPLE (MAIN) |
| TABLE - POWER EXAM - 623 Q404 | TMCII-SUITE 122 |
| TABLE - POWER EXAM - 623 Q404 | TMCII-SUITE 122 |
| TABLE - POWER EXAM - 623 Q404 | TMCII-SUITE 122 |
| RADIOFREQUENZY GENERATOR | TEMPLE (MAIN) |
| PODIATRY CHAIRS -2 W/CATHEDRAL U | TMC I-SUITE 106 |
| URIN ANALYZER | TEMPLE (MAIN) |
| TABLE - POWER EXAM - 623QQ404 | TMCII-SUITE 122 |
| FILING SYSTEM, MOBILE XRAY FILIN | TEMPLE (MAIN) |
| CORNEAL TOPOGRAPHER | TEMPLE EYE CTR |
| FURNITURE - LOBBY & WAITING ROOM | TEMPLE (MAIN) |
| MITEL PHONE SYSTEM | TEMPLE (MAIN) |
| SRV-DC-KDC (physical 2012 domain controller for Kings Daughters Clinic) Dell 3020 | TEMPLE (MAIN) |
| iCAD (FUJI PowerLook CAD Server - KDC Imaging) | KDC Imaging |
| Fusion Dictation (physical phone lines for dictation server) Super Micro (Custom Build by Dolby) | TEMPLE (MAIN) |
| Harvest Mapper (HL7 Interface Server) Dell 3020 | TEMPLE (MAIN) |
| KDC Security Server (KDC Door Tap Badge Server) Dell Demension 3100) | TEMPLE (MAIN) |
| Mitel MBG (External Teleworker IP Phones Server) Dell R430 | TEMPLE (MAIN) |
| Solar Winds (Switch, UPS, Firewall, etc monitor Server) Prolient ML350P Gen 8 | TEMPLE (MAIN) |
| AC PC (10 ton AC Unit Controller at KDC Server) Dell 745 | TEMPLE (MAIN) |
| Tempa1-Stor (PC Rollout Images Server) Dell Poweredge 2950 Lease/Purchase | TEMPLE (MAIN) |
| Nutanix Servers | TEMPLE (MAIN) |
| Greenway EMR Servers | TEMPLE (MAIN) |
| Information Technology | Dell OptiPlex 3040 –  2 PC's |
| Information Technology | Dell OptiPlex 3020 –  90 PC's |
| Information Technology | Dell OptiPlex 3010 –  9 PC's |
| Information Technology | Dell OptiPlex 920 – 2 PC's |
| Information Technology | Dell OptiPlex 745 – 4 PC's |
| Information Technology | Dell OptiPlex 755  –  1 PC |
| Information Technology | Dell OptiPlex 760  –  1 PC |
| Information Technology | Dell OptiPlex 780  –  5 PC's |
| Information Technology | Dell Latitude 5570 –  17 Laptops |
| Information Technology | Dell Latitude 5550 –  2 Laptops |
| Information Technology | Dell Latitude 5540 –  11 Laptops |
| Information Technology | Dell Latitude 5530 –  1 Laptop |
| Information Technology | Dell Latitude 5520 –  1 Laptop |
| Information Technology | Dell Latitude 630 – 1 Laptop |
| Information Technology | 1 Mitel 3300 Controller and Voicemail |
| Information Technology | 131 Mitel 5330E Phones in use |
| Information Technology | Fujitsu 7160 Scanners – 14 Units |
| Information Technology | Fujitsu 6130 Scanners – 1 Unit |
| Information Technology | Lexmark MS810M – 2 Units |
| Information Technology | Lexmark 310d – 1 Unit |
| Information Technology | Brother HL5450DN – 10 Units |
| Information Technology | Brother HLL5100DN – 14 Units |
| Information Technology | Brother HL5370DW – 3 Units |
| Information Technology | Brother HL5250DN – 1 Unit |
| Information Technology | HP LaserJet 600 M601 – 2 Units |
| Information Technology | HP LaserJet 600 M602 – 1 Unit |

**EXHIBIT A**

**KDC Temple**

| Manufacturer Description | Class Description |
| --- | --- |
| Information Technology | HP LaserJet 600 M604 – 2 Units |
| Information Technology | HP LaserJet 4650N Color – 1 Unit |
| Information Technology | HP LaserJet 4200N – 1 Unit |
| Information Technology | HP LaserJet P4015 – 2 Units |
| Information Technology | HP LaserJet M605 – 3 Units |
| Information Technology | HP LaserJet 4200N – 1 Unit |
| Information Technology | HP Color LaserJet CP4025 – 1 Unit |
| Information Technology | HP LaserJet 1160 – 1 Unit |
| Information Technology | 21 Copiers (See Jonnies Copier Contract) |
| Information Technology | 1 HP\Aruba 5406 Switch |
| Information Technology | 1 HP\Aruba 3810 Switch |
| Information Technology | 1 HP\Aruba 2530 Switch (24 port) |
| Information Technology | 8 HP\Aruba 2530 Switch (48 port) |
| Information Technology | 2 HP\Aruba 2620 Switch (24 port) |
| Information Technology | 2 HP\Aruba 2620 Switch (48 port) |
| Information Technology | 16 HP\Aruba IAP-205 Access Points |
| Information Technology | 1 Meraki MX100 Firewall |
| Information Technology | Nutanix Virtual server NX-1065-G5 |
| Information Technology | 4 APC 5000 UPS |
| Information Technology | Dell OptiPlex 3040 – 40 PC's |
| Information Technology | Dell OptiPlex 3020 – 36 PC's |
| Information Technology | Dell OptiPlex 3010 – 6 PC's |
| Information Technology | Dell Latitude 5570 – 18 Laptops |
| Information Technology | Dell Latitude 5550 – 5 Laptops |
| Information Technology | Dell Latitude 5540 – 17 Laptops |
| Information Technology | Fujitsu 7160 Scanners – 12 Units |
| Information Technology | Acer 22"-24" – 111 Units |
| Information Technology | 101 Mitel 5330E Phones |

**EXHIBIT A**

**Georgetown Imaging Center**

| Manufacturer Description | Class Description |
|---|---|
| ARKRAY | ANALYZER |
| NIHON KOHDEN | MONITOR, PATIENT |
| GE HEALTHCARE | REFRIGERATOR, NONPAT |
| MIDMARK CORPORATION | TABLE, EXAM |
| DRIVE MEDICAL | PUMP, SUCTION |
| MEDRAD INC. | INJECTOR, DYE |
| SIEMENS MEDICAL | MRI |
| TOSHIBA AQUILION | CT |
| MALLINCKRODT | INJECTOR, DYE |
| FUTURE HEALTH CONCEPTS | WARMER, BLANKET |
| TOSHIBA MEDICAL | X-RAY |
| OMRON | NIBP |
| ZOLL MEDICAL | DEFIB, AED |
| LOT OF FFE | FURNITURE - LOBBY & WAITING ROOM |
| Information Technology | 10 Desktops (Dell OptiPlex 3040 and 3020) |
| Information Technology | 2 Laptops (Dell Latitude 5550) |
| Information Technology | 3 Printers |
| Information Technology | 6 Mitel 5330E Phones |
| Information Technology | 1 Copier (Leased) |
| Information Technology | 1 HP\Aruba 2530-48G-PoEP Switch |
| Information Technology | 2 Aruba 205 Access Point |
| Information Technology | 1 Meraki MX64 Firewall |

**EXHIBIT A**

**King's Daughters Pharmacy**

| Description | Category |
| --- | --- |
| Unguator ES | Minor Equipment |
| RX P-4 (Serial 441445-01) | Minor Equipment |
| DRX - FC 2 (Serial 55723) | Minor Equipment |
| Cabinet/Shelving | Minor Equipment |
| Altex Computer | Minor Equipment |
| Sign for front of the Building | Minor Equipment |
| 05/05/2015 - Mdisca Inv# 932200 - Ointment Mill & Accessories | Minor Equipment |
| Cannon DR Series High Speed Document Scanner | Minor Equipment |
| Kirby Lester Pill Counter | Minor Equipment |
| FLAVORx Inc. | Minor Equipment |
| Narcotics Cabinet | Minor Equipment |
| Marble Mat - 1" Thick 3' x 15' Walnut | Minor Equipment |
| Metal Racks for OTC Room | Minor Equipment |

**EXHIBIT A**

**Georgetown Spine Center**

| Manufacturer Description | Class Description |
|---|---|
| RITTER COMPANY | TABLE, EXAM |
| RITTER COMPANY | TABLE, EXAM |
| MIDMARK CORPORATION | TABLE, EXAM |
| ZOLL MEDICAL | DEFIB, AED |
| THERMO FISHER SCIENTIFIC INC. | CENTRIFUGE |
| HEALTH-O-METER | SCALE |
| MIDMARK CORPORATION | TABLE, EXAM |
| LOT OF FFE | FURNITURE - LOBBY & WAITING ROOM |
| Information Technology | 9 Desktops (Dell OptiPlex 3040 and 3020) |
| Information Technology | 5 Laptops (Dell Latitude 5550) |
| Information Technology | 2 printers |
| Information Technology | 5 Mitel 5330E Phones |
| Information Technology | 1 copier (Leased) |
| Information Technology | 1 HP\Aruba 2530-48G-PoEP Switch |
| Information Technology | 1 Aruba 205 Access Point |
| Information Technology | 1 Meraki MX64 Firewall |

**EXHIBIT A**

## **Exhibit D**

### **Contested Permitted Encumbrances**

None.

**EXHIBIT A**

## **Schedule 3.3(b)**

### **Sellers' Consents**

None.

**EXHIBIT A**

## Schedule 3.5

### Practice Permits

1.    Registrations for any laboratory or imaging equipment at any of the Facilities (as defined in the attached Asset Purchase Agreement).

2.    Accreditation or certification for laboratory or imaging equipment, like MRI, if applicable, at any of the Facilities.

**EXHIBIT A**

## **Schedule 4.2**

**Buyer Consents**

None.

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| LITTLE RIVER HEALTHCARE | § | Case No. 18-60526-rbk |
| HOLDINGS, LLC, *et al.* | § | |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DECLARATION OF JAMES STUDENSKY, CHAPTER 7 TRUSTEE,**
**IN SUPPORT OF MOTION FOR AUTHORITY TO SELL PROPERTY OF THE**
**ESTATE FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. §§ 363(B)**
**AND 363(F) AND TO AUTHORIZE APPORTIONMENT OF ALL PROCEEDS AND**
**DISTRIBUTION OF PORTION OF THE PROCEEDS**

Pursuant to 28 U.S.C. § 1746, I, James Studensky, hereby declare and state as follows:

1.      I am the duly appointed and serving Chapter 7 Trustee for the debtors (the "Debtors") in the above captioned jointly administered bankruptcy cases (the "Bankruptcy Cases"). I am an attorney licensed to practice law in the State of Texas and have served as a Chapter 7 panel trustee for approximately twenty years. I submit this Declaration in connection with the Motion for Authority to Sell Property of the Estate Free and Clear of All Interests Pursuant to 11 U.S.C. §§ 363(b) and 363(f) and to Authorize Apportionment of All Proceeds and Distribution of Portion of the Proceeds (the "*Motion*").

2.      The Bankruptcy Cases were converted to Chapter 7 on December 7, 2018 (the "Conversion Date"), at which point I was appointed Chapter 7 Trustee.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Compass Pointe Holdings, LLC (1142), Little River Healthcare Holdings, LLC (7956), Timberlands Healthcare, LLC (1890), King's Daughters Pharmacy, LLC (7097), Rockdale Blackhawk, LLC (0791), Little River Healthcare - Physicians of King's Daughters, LLC (5264), Cantera Way Ventures, LLC (7815), and Little River Healthcare Management, LLC (6688). The Debtors' mailing address is 1700 Brazos Ave, Rockdale, TX 76567.

4834-8345-0206.5

**EXHIBIT B**

3.     The property that is the subject of the Motion (the "Property") is claimed in fee simple by one or more of the Debtors. It is apparent that, prior to the Conversion Date, the Debtors and the proposed purchaser identified in the Motion (the "Purchaser") had engaged in extensive arms-length negotiations regarding the potential purchase of the Property by the Purchaser.

4.     Subsequent to the Conversion Date, I have engaged in further arms-length negotiations with the Purchaser regarding the Property. Those negotiations have resulted in the asset purchase agreement (the "APA") upon which the Motion is based. It is my independent opinion that the purchase price offered by the Purchaser in the APA (the "Purchase Price") reflects the best price available for the Property. Moreover, consummating the proposed sale of the Property to the Purchaser will eliminate substantial ongoing liabilities for the bankruptcy estates, including but not limited to lease payments, costs of storing and dealing with voluminous medical records, wages and benefits for employees, expenses related to  the removal and disposition of on-site equipment and other assets and so on. Accordingly, consummation of the proposed sale will not only bring money into the bankruptcy estates but will also reduce the bankruptcy estates' exposure to administrative and other claims.

5.     It is my independent opinion that the sale of the Property to the Purchaser at the Purchase Price is in the best interest of the creditors, the Debtors' estates, and all other parties in interest.

6.     It is my independent opinion that the consideration provided by the Purchaser is fair and reasonable and the sale should not be subject to being avoided under 11 U.S.C. § 363(n)

2

**EXHIBIT B**

7.    It is my independent opinion that the Purchaser is a good faith purchaser as that term is used in 11 U.S.C. § 363(m) and as such is entitled to the protections of 11 U.S.C. § 363(m).

8.    In order to maximize the benefit to the bankruptcy estates, it is necessary that the 14-day stay requirements of Bankruptcy Rule 6004(h) be waived so that the sale can be closed on or before December 31, 2018.


Executed on December 21,  2018.


/s/ James Studensky
James Studensky, Chapter 7 Trustee

**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| In Re: | § | Chapter 7 |
| | § | |
| **LITTLE RIVER HEALTHCARE** | § | **Case No. 18-60526-rbk** |
| **HOLDINGS, LLC,** *et al.*, | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

### NOTICE OF CURE AMOUNTS

**PLEASE TAKE NOTICE** that pursuant to § 365 of the Bankruptcy Code, the duly appointed chapter 7 trustee for the estate of the above-captioned debtor hereby provides notice that the unexpired lease or executory contracts (collectively, the "Assumed Contracts") attached hereto may be assumed and assigned to the Purchaser.

**PLEASE TAKE NOTICE** that opposite the name of each non-debtor party to such Assumed Contract listed therein is the dollar amount that the Trustee believes is necessary to cure any defaults under the Assumed Contracts to which such non-Debtor is a party ("Cure Amount"). If you have received this notice, it is possible that your unexpired lease or executory contract may be a contract or lease to be assumed and assigned to the Purchaser. The Purchaser may elect to have any Assumed Contract listed herein assigned to it in its sole discretion at any time.

**PLEASE TAKE FURTHER NOTICE** that all objections to the assumption and assignment of the Assumed Contracts or to the amounts listed as Cure Amounts hereto, shall be filed on or before **5:00 p.m. prevailing Central Time on December 26, 2018**, with the

---

1 The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Compass Pointe Holdings, LLC (1142), Little River Healthcare Holdings, LLC (7956), Timberlands Healthcare, LLC (1890), King's Daughters Pharmacy, LLC (7097), Rockdale Blackhawk, LLC (0791), Little River Healthcare - Physicians of King's Daughters, LLC (5264), Cantera Way Ventures, LLC (7815), and Little River Healthcare Management, LLC (6688).

**EXHIBIT C**

Bankruptcy Court and served so as to be actually received by counsel for the Trustee and the Purchaser at or before that time (each, a "Cure Objection"). The Cure Objection must state with specificity the amounts that the non-Debtor party believes are necessary to cure the defaults with appropriate documentation in support thereof. If no objection is timely received, the Cure Amounts set forth  attached to this Cure Notice shall be controlling notwithstanding anything to the contrary in any designated contract or other document and the non-debtor party to the designated contract shall be forever barred from asserting any other claim arising prior to the assignment against the debtor or the proposed purchaser as to such designated contract and such non-debtor party shall be deemed to have consented to the assumption and assignment of such designated contract to the proposed purchaser.

2

**EXHIBIT C**

**Exhibit C-1**

**Assumed Contracts**

| Contract | Cure Amount |
|---|---|
| Primesuite on Demand Software and Services Subscription Agreement by and between Rockdale Blackhawk, LLC d/b/a Little River Healthcare System and Greenway Medical Technologies, Inc., dated as of June 28, 2013.<br><br>• Addendum by and between Rockdale Blackhawk, LLC d/b/a Little River Healthcare System and Greenway Medical Technologies, Inc., dated as of July 31, 2013.<br><br>• Addendum II by and between Rockdale Blackhawk, LLC d/b/a Little River Healthcare System and Greenway Medical Technologies, Inc., dated as of July 1, 2013.<br><br>• Order Form by and between Physicians of King's Daughters, P.A. and Greenway Health Inc., dated as of June 10, 2014. [*ORDER FORM*] | $23,977.93 |
| Amended and Restated Lease dated May 1, 2004 by and between Tri-Bell Properties, Ltd. as Landlord and Little River Healthcare - Physicians of King's Daughters, LLC (formerly known as Physicians of King's Daughter P.A.) as Tenant, for certain premises located at 1905 SW H.K. Dodgen Loop, Temple, TX consisting of 41,000 square feet. | $284,800.58 |
| Lease Agreement dated as of April 21, 2016, by and between Wesley Allen Family Limited Partnership, as Lessor, and Rockdale Blackhawk, L.L.C., as Lessee, as amended by a First Amendment to Lease Agreement dated as of April 17, 2017, as amended by a Second Amendment to Lease Agreement dated as of February 1, 2018, for lease of space located at 1520 Leander Road, Suite 101, Georgetown, TX. | $0 |
| Lease Agreement dated April 2, 2006, by and between Todd Lane, LLC, as successor Lessor in interest to Alazan Partners Ltd., and Rockdale Blackhawk, LLC d/b/a/ Little River Healthcare, as successor Lessee in interest to Kevin J. Owens, as amended by a Commercial Lease Extension dated as of January 18, 2016, as amended by a Second Commercial Lease Extension dated as of August 22, 2016, as amended by a Third Commercial Lease Extension dated as of February 12, 2018, for approximately 3,400 square feet of space located at 1528 Leander, Georgetown, TX. | $0 |
| All lease and maintenance agreements related to servers and related equipment that the Greenway Platform (as defined in the Asset Purchase Agreement) relies on to save, store and process information; as well as all lease and maintenance agreements related to servers and related equipment that the Mitel phone system relies on to save, store and process information. | $0 |