

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| LITTLE RIVER HEALTHCARE | § | Case No. 18-60526-rbk |
| HOLDINGS, LLC, *et al.* | § | (Jointly Administered) |
| Debtors[1] | § | |
| | § | |
| _____ | § | Adv. Proc. No. |
| | § | |
| James Studensky, Chapter 7 Trustee for Little | § | _____ |
| River Healthcare Holdings, LLC, et al. | § | |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | |
| Blue Cross and Blue Shield of Texas | § | |
| | § | |
| Defendant | | |

## ADVERSARY COMPLAINT

James Studensky, the duly appointed Chapter 7 Trustee (the "Trustee") for Little River Healthcare Holdings, LLC, et al. (the "Debtors" or "Little River"),[2] by and through his undersigned counsel, files this adversary complaint (the "Complaint") against defendant Blue Cross and Blue Shield of Texas ("BCBSTX" or "Defendant"), seeking monetary damages for business disparagement (Count I), civil conspiracy (Count II), abuse of process (Count III), tortious interference with existing contracts (Count IV), tortious interference of prospective contracts (Count V), claim for unfair competition (Count VI), and to disallow any claims held by Defendant.

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Compass Pointe Holdings, LLC (1142), Little River Healthcare Holdings, LLC (7956), Timberlands Healthcare, LLC (1890), King's Daughters Pharmacy, LLC (7097), Rockdale Blackhawk, LLC (0791), Little River Healthcare - Physicians of King's Daughters, LLC (5264), Cantera Way Ventures, LLC (7815), and Little River Healthcare Management, LLC (6688).

2 Where appropriate, references in this Adversary Complaint to "Little River" include the Trustee.

In support of this Complaint, the Trustee, on behalf of all of Little River bankruptcy estates jointly administered under Case No. 18-60526-rbk, their subsidiaries and affiliates (all collectively referred to herein as "Little River"), seeks monetary damages and avers as follows in support:

## I.     <u>NATURE OF CASE</u>

1.      This action arises out of the Defendant's improper smear campaign which harmed Little River's economic interests and irreparably damage its business.  Little River was a rural healthcare provider located in Rockdale, Texas that – like all rural healthcare providers – depended on timely payments from insurance companies for its survival.

2.      BCBSTX and Little River have previously engaged in a dispute regarding BCBSTX's lack of timely payment for Little River's provision of laboratory services provided to BCBSTX members under the contracts between BCBSTX and Little River.  This contract dispute, including BCBSTX's allegations of fraud, has since been resolved via arbitration and confirmed via a final, non-appealed judgment.

3.      In the arbitration, Little River was victorious on its contract and prompt pay claims, with BCBSTX losing on all of its counterclaims, including its allegations that Little River had engaged in fraud.

4.      Little River's contract issues, resolved via the Parties' arbitration, are not the subject of this Complaint.  This action concerns the tortious conduct of BCBSTX falling outside of the Parties' contractual relationship.

5.       Unknown to Little River at the time, BCBSTX unleashed a widespread, bad faith smear campaign against Little River that severely harmed Little River's economic interests, irreparably damaged the business of Little River, and caused its ultimate demise.  It is this smear campaign that is the subject of this Complaint.

6.      BCBSTX submitted a series of false accusations of fraudulent billing against Little River to government regulators in hopes of leveraging governmental regulators to commence a formal investigation against Little River.

7.      Although ostensibly BCBSTX may have been justified in making an initial report of suspected fraud to governmental regulators, immediately upon commencement of its sham "investigation" of Little River, BCBSTX knew, and in the exercise of reasonable diligence certainly should have known, that Little River did not commit fraud.  Despite this knowledge, BCBSTX persisted in its bad faith campaign to continue maliciously asserting false accusations about Little River to regulators as part of an internal BCBSTX policy to use government regulators as a point of leverage against vulnerable rural healthcare hospitals, like Little River.  Moreover, after initiating its sham investigation into Little River, BCBSTX failed to update governmental regulators with material exculpatory information that would have further revealed that BCBSTX's initial accusations of fraud were inaccurate.

8.      Defendant's knowing publication of these false allegations of fraud about Little River to regulators pursuant to its improper scheme amounts to business disparagement and abuse of process.

9.      Defendant's scheme was not limited to incomplete and false reports to regulators; BCBSTX sought to vilify Little River throughout the larger healthcare community.  At a major industry conference, under the auspice of purported "fraud prevention" BCBSTX representatives brazenly announced verbally and in writing to major players in the healthcare community— including the nation's largest insurance payors, regulators, and healthcare associations—that Little River was engaged in "fraudulent" billing even though BCBSTX knew, or in the exercise of reasonable diligence should have known, such claims were false.

10.     Going further, BCBSTX also provided instructions to other national insurance payors on ways to cease payment and amend or terminate contracts with rural hospitals, including Little River.  Indeed, one of the recipients of such false statements and payment instructions included UnitedHealthcare, one of the nation's largest healthcare insurance companies. Unsurprisingly, once BCBSTX further maligned Little River directly to UnitedHealthcare, that insurance company also changed its payment behavior toward Little River and renegotiated its contract (as suggested by BCBSTX) to a less favorable payment rate.  BCBSTX's publication of these false claims of fraud to the healthcare community amounts to business disparagement.

11.     Defendant's conduct severely damaged Little River's economic interests and harmed its business by crippling Little River's relationships with other healthcare insurance companies and its ability to receive timely reimbursement.  BCBSTX's tortious actions resulted in Little River's bankruptcy.  The Trustee seeks recovery of the amounts of all damages to Little River due to Defendant's actions.

12.     In addition, the Trustee seeks to disallow, pursuant to § 502(d) and (j) of the Bankruptcy Code, any claim that any of the Defendant has filed or asserted against the Debtors or that has been scheduled for the Defendant. The Trustee does not waive but hereby reserves all of his rights to object to any such claim for any reason, including, but not limited to, any reason set forth in § 502(a) through (j) of the Bankruptcy Code.

## II.     THE PARTIES

13.     James Studensky is the duly appointed and serving Chapter 7 trustee for the bankruptcy estate Rockdale Blackhawk, LLC d/b/a/ as Little River Healthcare, which was a Texas limited liability company, which had its principal place of business at 1700 Brazos Ave., Rockdale, Texas 76567, and for various affiliated entities jointly administered under the above styled and named main case. On July 24, 2018, Little River filed for Chapter 11 bankruptcy protection in the

United States Bankruptcy Court for the Western District of Texas.[3] The jointly administered Chapter 11 proceeding was converted to a Chapter 7 proceeding on December 7, 2018, and James Studensky was appointed Chapter 7 Trustee (collectively, the Chapter 11 and Chapter bankruptcies are referred herein as the "Bankruptcy Proceeding.").   Notices related to this proceeding may be provided to Trustee through undersigned counsel.

14.     Upon information and belief, BCBSTX is an unincorporated division of Health Care Service Corporation, a Mutual Legal Reserve Company and an independent Licensee for the Blue Cross Blue Shield Association ("BCBS Association").   BCBSTX maintains its principal place of business at 1001 E. Lookout Drive, Richardson, Texas 75082.

15.     The Trustee (on behalf of the estate of Little River) and BCBSTX are collectively referred to as the Parties.

### III.     JURISDICTION AND VENUE

16.     On November 1, 2018, BCBSTX filed a Proof of Claim in the Bankruptcy Proceeding, seeking approximately $26,063,725.44.   BCBSTX's Proof of Claim constitutes a Core Proceeding under the Bankruptcy Code.   Further, throughout the Bankruptcy Proceeding, BCBSTX has repeatedly invoked this Court's jurisdiction and sought relief from the court in numerous ways.   BCBSTX has availed itself of the jurisdiction of this court, and as such, the Trustee's Complaint is appropriately before this court.

---

3 See *In re: Little River Healthcare Holdings, LL, et. al*., Case No. 18-60526-rbk (Bank. W.D. Tex. 2018). All relevant Debtors are listed in Footnote 1, supra.

## IV.    **FACTUAL BACKGROUND**

A.    <u>Relationship Between Little River and BCBSTX and Prior Arbitration</u>

17.    Prior to its cessation of operations in bankruptcy, Little River was a rural healthcare provider in Milam County, Texas, operating the only Critical Access Hospital in Milam County, Texas—the Rockdale Hospital.[4] Little River provided services to patients and then billed each patient's insurance company for the services rendered.

18.    Beginning in 2012, Little River started to acquire outpatient clinics and grow its provider network in order to offset the costs of running a rural hospital. This also allowed Little River to provide expanded services and its physician network to patients that historically would not have been available in its rural hospital, such as cardiology and orthopedics, with a proprietary business model that brought doctors from neighboring urban areas to treat members of the rural community. However, even with an increasing physician network and these future expansion plans, Little River remained a struggling rural hospital system in search of new sources of revenue and areas of revenue growth. Little River identified laboratory services as an area with growth potential.

19.    One way hospitals generally (and Little River specifically) have historically made available laboratory services that they are unable to provide directly within their physical "four walls" is to utilize "reference laboratories" to perform laboratory work. This practice has been utilized for decades, is still in place today, and is consistent with the Centers for Medicare & Medicaid Services ("CMS") guidelines in place today.

---

4 Little River was a Central Texas-based healthcare medical network provider. In addition to the Rockdale Critical Access Hospital, Rockdale Blackhawk, LLC owned and operated another rural hospital in Cameron, Texas. Little River also had an expansive physician network along with other medical clinics and imaging centers.

20.     As a small rural hospital without economies of scale, there are some services that Little River (like all rural hospitals) would be unable to perform without utilization of third-party reference laboratories.  For such services, a hospital utilizes a third-party laboratory to provide the service to hospital patients and then bills the patient (or the patient's insurance company) for all services rendered.  Little River had used third-party reference laboratories as far back as at least 2004.

21.     In addition, starting in 2014, Little River also greatly expanded its on-site laboratory testing capabilities by building an entire laboratory wing onto its Rockdale Hospital, with the ability to perform a wide array of laboratory testing.  This constituted an over 4,000 square foot expansion to the Rockdale Hospital, and over time, it was filled with various advanced laboratory testing equipment.  In early 2016, Little River hired a laboratory company to assist it with further building out and running a laboratory on campus at the Rockdale Hospital, which further expanded Little River's on-site laboratory capabilities.

22.     Despite being allowed to bill for these laboratory services – whether conducted at the expanded on-site laboratory or via reference labs – BCBSTX began to stop paying for many of these services in ways that were often hidden or otherwise obscured this lack of payment.  After months of outreach and other efforts to seek payment pursuant to the contracts between the Parties, ultimately Little River was forced to initiate an arbitration proceeding ("Arbitration Proceeding")[5] against BCBSTX in March 2018 regarding the Parties' contractual dispute over BCBSTX's lack of payment.  The arbitration hearing was conducted for two weeks in August 2019, with a final award issued on May 6, 2020.

---

5 *In the  Matter of the Arbitraiton between Rockdale Blackhawk, LLC d/b/a Little River Healthcare v. Blue Cross and Blue Shield of Texas*, Case No. 01-18-0001-0136, American Arbitration Association.

23.     Little River won its contract claims against BCBSTX, as well as its claims regarding BCBSTX's violation of Texas Prompt Pay statutory laws, with the Tribunal finding conclusively that Little River was entitled to bill and be reimbursed for the laboratory services it provided to patients. The Tribunal found against BCBSTX on all of its counterclaims, including the Tribunal's finding that Little River did not commit any fraud—despite BCBSTX's campaign to convince the healthcare community otherwise.

B.     Scheme to Damage Little River's Economic Interests and Hurt Little River's Business

24.     BCBSTX engaged in an elaborate, malicious scheme that destroyed Little River's economic interests. BCBSTX sought to manipulate government regulators in an effort to exert pressure on Little River to accept lower reimbursement rates for laboratory services, and/or change its expanding business plan in such a way as to meet the financial goals of BCBSTX.

25.     Only after the filing of the bankruptcy did Little River discover, first, the existence of the Defendant's illicit scheme, and second, that Little River was specifically one of the unwitting victims of BCBSTX's scheme.

26.     Specifically, Little River discovered that: (i) BCBSTX acted in bad faith and submitted a false report of fraud allegedly committed by Little River to the Office of Personnel Management Office of the Inspector General ("OIG"); and (ii) BCBSTX published, and repeated, verbal and written false statements to the healthcare community at large, including that Little River was engaged in fraudulent billing for its laboratory services.

27.     These false statements were published to all of the other major insurance payors that Little River had existing contractual relationships with (e.g. Aetna, Cigna, Humana, UnitedHealthcare), and BCBSTX went even further by seeking to get other insurance payors, as well as government regulators, to target Little River.  BCBSTX knew, or in the exercise of

8

reasonable diligence should have known, that its accusations of fraud were false as now has been conclusively proven in the Arbitration Proceeding between the Parties.[6]

28.     Ultimately, BCBSTX's false claims were disseminated to government regulators, other insurance payors, healthcare associations, various others in the healthcare community, and on information and belief, others beyond the healthcare community. At all relevant times, BCBSTX knew that the claims at issue are false, and/or acted in reckless disregard for their veracity.

29.     Defendant's flagrant spreading of these false claims caused Little River substantial damages, including, but not limited to, interference with and damage to Little River's business relationships and contracts with other insurance payors upon whom Little River depended for survival as a rural community hospital system.

30.     BCBSTX's vilifying statements and bad faith intent are reflected in its own internal documents. Indeed, internal BCBSTX documents revealed the plot to use illegal means to bully small healthcare providers, like Little River. These internal documents show the details of BCBSTX's process to reduce financial exposure to rural healthcare providers, including Little River, and to target other rural hospitals.[7]

---

6 *See* Arbitration Proceeding, Final Award, May 6, 2020, ¶¶ 46 and 136:

> BCBSTX alleges that Little River's laboratory billing scheme was fraudulent. Specifically, BCBSTX claims Little River made specific representations and omissions in its claims submissions by coding claims to hide that the testing was not performed by Little River, and by obscuring who was actually performing the services in the medical records it submitted during pre-payment review. According to BCBSTX, Little River's nondisclosure that it was engaging in improper pass-through billing and developing its massive laboratory outreach program constituted a misrepresentation of material fact on which BCBSTX relied by paying tens of millions of dollars in improper laboratory billing.
>
> …..
>
> The grounds for BCBSTX's fraud counterclaims are the same as those it asserted in defense of Little River's claims. For the reasons explained above, these counterclaims fail.

7 The documents referenced herein are not attached, as the Parties have engaged in a protracted dispute and disagreement regarding whether, or not, the referenced documents are "Confidential" as asserted by BCBSTX. Little

31.     BCBSTX further describes rural hospital's reimbursement rates as favorable arrangements that rural hospitals would not want to lose, noting that contractual negotiations with them could be contentious.  BCBSTX further details various mechanisms that BCBSTX could employ use to apply pressure to providers like Little River, including the use of governmental regulators.  In other words, BCBSTX specifically identified its ability to harm providers' economic interests, reputations, and manipulate governmental regulators as unknowing vehicles to injure providers BCBSTX wanted to target.

i.     *A Sham Investigation and Bad Faith Efforts to Submit False Reports*

32.     Unbeknownst to Little River at the time, on or about April 25, 2016, BCBSTX launched a sham investigation of Little River (the "Investigation") with the purported purpose of investigating complaints from BCBSTX members.  Despite having an internal process, which included at least 18 investigative steps, BCBSTX skipped many of these steps, proceeding to impose an illegal Pre-Payment Review process to immediately suspend payments to Little River. This "investigation" was a sham with a predetermined outcome: BCBSTX simply wanted a pretext to stop paying Little River, and what better way to justify its actions than to falsely accuse Little River of fraud to the government.

33.     In furtherance of its pretextual scheme, on May 31, 2016, BCBSTX sent Little River its "Pre-Payment Review Notice," requesting that Little River contact a BCBSTX Senior Fraud Investigator.  On or about June 8, 2016, Little River contacted the Senior Fraud Investigator, and she informed Little River that the pre-payment review was due to Little River's alleged violation of BCBSTX's *internal policy* related to "Pass Through Billing" of laboratory services.

---

River disputes that these documents are "Confidential" pursuant to the Protective Order entered into by the Parties (Doc. No. 1027), and reserves its right to contest BCBSTX's confidentiality designations.

BCBSTX's Senior Fraud Investigator did not identify allegations of fraud or any other basis for the pre-payment review. Little River promptly explained to the Senior Fraud Investigator on June 8, 2016 that its actions in billing for laboratory services patients were compliant with Centers for Medicare & Medicaid Services ("CMS") guidelines and also permitted under its agreements with BCBSTX. At this point in time, BCBSTX knew that its dispute with Little River was one regarding, at best, a dispute regarding contractual interpretation—certainly not one related to "fraud."

34. Despite being armed with Little River's explanation, on June 9, 2016 (the day *after* Little River's above-referenced communication), BCBSTX (in partnership with the BCBS Association) submitted a Case Notification regarding Little River (the "Case Notification") to Drew Grimm, a Special Agent with the U.S. Health and Human Services ("HHS") Office of Inspector General ("OIG"), falsely accusing Little River of fraudulent billing.

35. The Case Notification falsely accused Little River of committing fraud. The Case Notification indicated that the allegations were based on "[c]omplaints," and specifically that "complainants received explanation of benefit forms for excessive and expensive lab testing from Rockdale Blackhawk/LRH but had never been to the facility." In the section entitled "Actions," the Case Notification indicated only that "[d]ata analysis was performed . . . provider was placed on review . . . [and] FEP SIU submitted a Case Notification to OPM OIG on June 9, 2016." However, rather than any purported violation of applicable law or regulation, *BCBSTX's OIG Notification was based on a purported violation of an internal BCBSTX policy in its provider manual*.

36. In addition to making a premature and unjustified OIG Notification, BCBSTX, intentionally and in bad-faith chose to completely omit Little River's explanation of why its actions

were fully compliant with contracts, applicable law, and CMS regulations (which, again, Little River had provided to BCBSTX the day before the Case Notification was made). Exacerbating its pretextual report to the OIG, BCBSTX further elected not to update the OIG as it learned more information regarding Little River's on-site expanded laboratory operation capabilities. While BCBSTX did know (or should have known) these issues were never about fraud, BCBSTX intentionally chose to forgo making any updates to the OIG when additional evidence was provided further demonstrating that no fraud was committed by Little River.

37. Although completely unbeknownst to Little River at the time, it is also now clear that BCBSTX's actions were intentional, and part of BCBSTX's written objective to use government regulators as leverage against vulnerable rural healthcare hospitals, like Little River. BCBSTX was using and manipulating government regulators in bad faith as unknowing vehicles to injure and coerce what BCBSTX would unilaterally predetermine were allegedly noncompliant providers.

       *ii.*      *Defendant Harms Little River's Economic Interests in the Healthcare Community and Instructs Insurance Payors to Change Payment Practices*

38. Separate and in addition to its bad-faith efforts to manipulate government regulators, BCBSTX also used its other "levers" to disparage and harm Little River. These "levers" included the further spreading of false allegations that Little River was engaged in fraud throughout the larger healthcare community, and an instruction to insurance payor members of the healthcare community to change their business relationships with Little River, causing direct harm to Little River's economic interests.

39. BCBSTX representatives brazenly announced verbally and in writing to other major players in the healthcare community—including the nation's largest insurance companies, regulators, and healthcare associations—that Little River was associated with "fraudulent" billing

even though BCBSTX knew, or should have known, that claim was false.  At a minimum, BCBSTX could have (but strategically chose not to) provide these third parties with the same explanation that Little River had provided (i.e., that its outreach laboratory program was fully compliant with both its contracts with BCBSTX and applicable law).  Again, these allegations of fraud have been conclusively ruled to be untrue in the Arbitration Proceeding.

40.     By way of limited example, on or about July 26, 2017, BCBSTX took part in the Healthcare Fraud Prevention Partnership ("HFPP") Regional Information Sharing Session in Irving, Texas (the "Workshop").  The HFPP Information Sharing Session was widely attended, with the program identifying forty-two insurance companies, twenty-seven regulators, and eleven associations, including, but not limited to: Aetna; Amerigroup; Anthem; CareSource; Cigna; Highmark; Humana; Travelers; UnitedHealthcare; Department of Health and Human Services, Centers for Medicare & Medicaid Services; Department of Health and Human Services, Office of Inspector General; Department of Justice, Criminal Division; Department of Justice, Federal Bureau of Investigation; Department of Veterans Affairs; Texas Health and Human Services Commission Office of Inspector General; National Association of Insurance Commissioners; National Association of Medicaid Directors; National Association of Medicaid Fraud Control Units; and National Insurance Crime Bureau.

41.     A Senior Manager of the Special Investigations Department of BCBSTX and BCBSTX's Director of the Special Investigations Department made a presentation, with the stated title of the presentation written as: "Focused discussion on recent hospital fraud."

42.     The written portion of the presentation delivered by BCBSTX bears the title "Rural & Specialty Hospital Fraud Trends" and purported detailed investigations, "Interventions," "Lessons Learned," and "Carry Forward" that served as a guide for these other entities to go after

Little River through the same inappropriate and unfounded processes as BCBSTX. This included placing such subject hospitals – including Little River explicitly – on prepayment review; amending contracts, re-contracting, or terminating the contracts of those who decline; and referring the case to federal law enforcement, among other advice.

43. One slide in the presentation contains the heading "Rural & Specialty Hospital Fraud Trends – Results," and directly below that title, BCBSTX prominently names "Little River Healthcare" as first on the list.

44. Other graphs provided attendees, including other insurance payors with which Little River had existing contracts, with detailed information regarding Little River's financial transactions with BCBSTX.

45. On information and belief, BCBSTX representatives made verbal misrepresentations during the presentation that were substantively similar to and expanded on the false statements contained in the written presentation, the Pre-Payment Review Notice, and the Case Notification. Specifically, using the graphs, BCBSTX stated or implied that Little River submitted fewer laboratory claims to BCBSTX after it began its investigation because BCBSTX had "caught" Little River doing something inappropriate; when BCBSTX knew that Little River was actually submitting fewer claims because BCBSTX had inappropriately stopped paying Little River for the services, and Little River could no longer continue to provide those services to BCBSTX Members for free.

46. Five days after the presentation, and outside the confines of the HFPP Workshop, BCBSTX further published the false statements about Little River by sending the written presentation by e-mail to an employee of UnitedHealthcare, and indicated in the transmittal

correspondence that the BCBSTX representative had previously "promised" to share the presentation with UnitedHealthcare.

47.     Unsurprisingly, around the time of BCBSTX's transmission of the false presentation to UnitedHealthcare, Little River found itself in the midst of demands from UnitedHeathcare that its existing contract with United be renegotiated to lower reimbursement rates.

48.     BCBSTX's actions at and after the presentation interfered with, and severely damaged, Little River's relationship with UnitedHealthcare and its ability to achieve favorable contractual terms with UnitedHealthcare.  In addition to UnitedHealthcare, Little River also had existing business and contractual relationships with other payors, and those relationships were also severely damaged as a result of BCBSTX's actions, before, at and after, the HFPP Workshop presentation.

49.     Upon information and belief, BCBSTX's efforts to damage Little River's economic interests by falsely accusing it of fraud were more widespread than the examples set forth herein and both predated and postdated the aforementioned HFPP Workshop.

50.     Upon information and belief, BCBSTX also worked and conspired with other insurance payors to further propagate the publication of false and disparaging fraud allegations regarding Little River, further damaging Little River's economic interests.

51.     Little River had no knowledge of the HFPP presentation and BCBSTX's communications with UnitedHealthcare regarding the presentation until internal BCBSTX documents were produced in the Parties' Arbitration in March of 2019.  Until discovery of these false statements to the broader healthcare community, Little River was unaware of the tortious

actions of BCBSTX that went well beyond its contractual dispute that was recently resolved in Arbitration.

52. All of BCBSTX's aforementioned actions were done with, malice, fraudulent intent, and at a bare minimum, bad faith, as BCBSTX knew that fraud did not occur, did not provide updated information about Little River with government regulators or other industry payors, and further failed to share exculpatory evidence provided by Little River—all of which had the foreseeable consequence of causing Little River's demise.

## V.   OBJECTION TO BCBSTX'S PROOF OF CLAIM & BCBSTX'S FRAUDULENT CONCEALMENT OF ITS OWN IMPROPER CONDUCT

53. Trustee incorporates by reference each of the factual allegations contained in the preceding paragraphs.

54. Pursuant to 11 U.S.C. § 502, Trustee objects to Proof of Claim No. 422, filed by Defendant in the Bankruptcy Proceeding, in its entirety and requests that it be disallowed in its entirety. Claim No. 422 seeks payment of amounts that are not enforceable against the Debtors under applicable law and are based on the factual dispute already decided in the Arbitration Proceeding. In the alternative, Trustee requests that Claim No. 422 be equitably subordinated pursuant to 11 U.S.C. §§ 510(c).

55. Regarding its disparaging comments (verbal and written) and other actions against Little River, Little River was not aware of these actions until after it filed for bankruptcy, and additional discovery is needed to further reveal the extent of BCBSTX's improper actions.

56. On information and belief, BCBSTX was fraudulently concealing its actions from Little River to ensure that Little River was not aware of BCBSTX's improper actions with government regulators, third-party insurance payors, and others, until ultimately it proved too late and Little River was forced into Bankruptcy.

# VI.   CAUSES OF ACTION

## COUNT I
## Business Disparagement

57.    Trustee incorporates by reference all of the foregoing allegations as if set forth at length herein.

58.    BCBSTX deliberately published false information regarding Little River's billing practices by prematurely submitting an incomplete Case Notification to OIG, and further by making no effort to update or amend its Case Notification with material information.  BCBSTX knew the Case Notification contained false information about Little River, or acted with reckless disregard for the veracity of the information, but nevertheless submitted the Case Notification pursuant to BCBSTX's scheme to disparage, injure, and intimidate Little River. BCBSTX also intentionally withheld material information from the Case Notification which was necessary to prevent it from being misleading.

59.    BCBSTX deliberately published verbally and in writing false and disparaging claims that Little River has engaged in fraudulent billing practices, despite having known (or having should have known) that those allegations were not true, to a significant number of participants in the healthcare community, including, but not limited to, Little River's primary insurance payors, regulators, and healthcare associations.  BCBSTX further explicitly instructed these members of the healthcare community, in particular other insurance payors, to target Little River through reduced payment, amended or terminated contracts, and referrals to federal law enforcement, among other instructions.

60.    BCBSTX's actions and false statements about Little River severely damaged Little River's economic interests, including, but not limited to, its interests with insurance payors upon whom Little River depended for payment.

61.     BCBSTX's Case Notification is not entitled to qualified immunity because it was submitted with malice, fraudulent intent, or bad faith; namely to give BCBSTX improper leverage over Little River.

62.     BCBSTX acted with malice in publishing the false statements knowing they were false, with reckless disregard for their veracity for the purpose of injuring Little River, with ill will and/or with intent to interfere with Little River's economic interests.

63.     BCBSTX acted in bad faith and lacked privilege to publish the false statements.

64.     BCBSTX's publishing of the false statements caused Little River's business to suffer substantial and special damages, including but not limited to economic injury arising from loss of sales, loss of credit, loss of business; as well as exemplary damages.

**COUNT II**
**Civil Conspiracy to Commit Business Disparagement, Tortious Interference with Existing Contracts, Unfair Competition, and Tortious Interference with Prospective Contracts**

65.     Trustee incorporates by reference all of the foregoing allegations as if set forth at length herein.

66.     Upon information and belief, BCBSTX and the BCBS Association agreed to work cooperatively to promote BCBSTX's policy of using government regulators as leverage against rural vulnerable hospitals, like Little River.

67.     Pursuant to this illicit scheme, BCBSTX initiated the meritless Investigation, failed to exhaust BCBSTX's own eighteen steps for completing investigations, and then provided the incomplete and unsupported Investigation file to the OIG.

68.     At all relevant times, BCBSTX knew, or should have known, its allegations of fraud against Little River were, and are, false.

69.     In addition to the Case Notification, BCBSTX's false publication of fraud allegations against Little River before, at, and after the HFPP Workshop presentations occurred in furtherance of the BCBSTX's conspiracy with the BCBS Association, as well as other insurance payors. BCBSTX was a member of a combination of two or more of these entities that conspired to harm Little River. Little River reserves the right to amend this claim as discovery is ongoing and additional co-conspirators may be uncovered as Little River learns additional facts.

70.     Upon information and belief, the objective of this combination was to accomplish the purpose of target Little River through reduced payments, amended or terminated contracts, and referrals to federal law enforcement, among other instructions; all in the pursuit of profiting BCBSTX and its co-conspirators to Little River's severe detriment.

71.     Upon information and belief, the members of this conspiracy had a meeting of the minds as to this objective, as evidenced by the conduct described in this Complaint that occurred before, at, and after the HFPP Workshop presentations.

72.     Upon information and belief, BCBSTX committed the unlawful, overt acts, as described in this Complaint, in furtherance of this course of action and objective.

73.     The various actions underlying Defendant's illegal actions also constitute business disparagement, tortious interference with existing contracts, unfair competition under common law, and tortious interference with prospective contracts under the applicable laws.

74.     As a direct result of Defendant's conspiracy to disparage Little River, Little River suffered and continues to suffer substantial damages.

**COUNT III**
**Abuse of Process**

75.     Trustee incorporates by reference all of the foregoing allegations as if set forth at length herein.

76. BCBSTX, in conjunction with the BCBS Association, made improper use of the OIG reporting process by submitting to OIG the Case Notification that, upon information and belief, BCBSTX knew, or with any effort to ascertain its veracity should have known, contained false information about Little River and omitted information from Little River necessary to prevent the notification from being misleading.

77. BCBSTX's purpose of improperly submitting the Case Notification was to disparage, injure, and intimidate Little River pursuant to BCBSTX's scheme to apply pressure against Little River.

78. The submission of the Case Notification was intended to cause governmental regulators to initiate an investigation regarding Little River.

79. As a direct result of this abuse of the OIG reporting process, Little River suffered and continues to suffer substantial damages.

## COUNT IV
## Tortious Interference with Existing Contracts

80. Trustee incorporates by reference all of the foregoing allegations as if set forth at length herein.

81. BCBSTX verbally and in writing, including in its presentations and direct communications, publically made false and disparaging claims that Little River engaged in fraudulent billing practices to a significant number of members of the healthcare community, including, but not limited to, other significant insurance payors and others in the healthcare industry with whom Little River had existing beneficial contractual relationships.

82. BCBSTX made it known to others in the healthcare industry, including other insurance payors, that it was negotiating for lower payment rates for laboratory services with rural hospitals, including Little River.

83.     BCBSTX's verbal and written false and disparaging statements, statements regarding revisions to payment rates, and explicit guidance that insurance payors should place Little River on prepayment review, and, re-contract, or terminate its contracts, and refer the case to federal law enforcement, triggered healthcare payors and others in the healthcare industry with whom Little River had relationships to change their payment methods under their existing contracts, including restricting payment for covered laboratory services, as well as seeking contract amendments to reduce payment rates for such services.

84.     BCBSTX's actions foreseeably resulted in a loss of benefits of these contracts and lost profits.

## COUNT V
### Tortious Interference of Prospective Contracts

85.     Trustee incorporates by reference all of the foregoing allegations as if set forth at length herein.

86.     BCBSTX verbally and in writing, including in its presentations and direct communications, publically made false and disparaging claims that Little River engaged in fraudulent billing practices to a significant number of members of the healthcare community, including, but not limited to, significant insurance payors and others in the healthcare industry with whom Little River was engaged in negotiation for expansion of its operations and facilities.

87.     On information and belief, BCBSTX's verbal and written false and disparaging claims triggered others in the healthcare industry to abandon plans to partner with Little River in its ongoing expansion efforts.  These expansion plans included, but were not limited to, Little River's plans to build a Georgetown Surgery Center and Little River's contractual relationships with its growing network of physicians and other related business dealings.

88.     BCBSTX's actions resulted in a loss of benefits of these contracts and lost profits.

## COUNT VI
## Common Law Claim for Unfair Competition

89.     Trustee incorporates by reference all of the foregoing allegations as if set forth at length herein.

90.     BCBSTX verbally and in writing publically made false and disparaging claims that Little River engaged in fraudulent billing practices to a significant number of members of the healthcare community, including, but not limited to, significant insurance payors and others in the healthcare industry with whom Little River had existing beneficial contractual relationships. BCBSTX further explicitly instructed these members of the healthcare community, in particular other insurance payors, to target Little River through reduced payment, amended or terminated contracts, and referrals to federal law enforcement, among other instructions.

91.     BCBSTX made it known to others in the healthcare industry, including other payors, that it was negotiating lower payment rates for laboratory services with Little River.

92.     BCBSTX triggered healthcare payors and others in the healthcare industry with whom Little River had relationships to change their payment methods under their existing contracts, including restricting payment for covered laboratory services, as well as seeking contract amendments to reduce payment rates for such services. BCBSTX accomplished this through its false and disparaging statements and its explicit guidance that insurance payors should: put Little River on prepayment review; amend, re-contract, or terminate the contracts of those rural healthcare providers who decline to amend their contracts; and refer allegations of fraud to federal law enforcement.

93.     These tortious acts of BCBSTX foreseeably interfered with Little River's ability to conduct its business, as it led other payors to reduce their payments for valid and covered laboratory services, as well as seek lower paying contracts with Little River and cancel existing

and prospective business dealings that Little River was engaged in while BCBSTX was taking these improper actions.

94.     As a direct and proximate result of BCBSTX's wrongful conduct Little River has suffered damages, and will continue to suffer damages, in an amount to be fully demonstrated at a hearing in this proceeding.

**COUNT VII**
**Exemplary Damages**

95.     Trustee incorporates herein by reference all of the foregoing allegations as if set forth at length herein.

96.     Exemplary damages against BCBSTX are appropriate in this case because BCBSTX acted with bad faith and/or malice in (1) publically engaging in business disparagement of Little River; (2) interfering with existing contracts, and (3) interfering with prospective contracts.

97.     For all of the reasons set forth above, Trustee requests an award of exemplary damages in excess of its economic damages.

**COUNT VIII**
**Declaratory Judgment**

98.     Trustee incorporates herein by reference all of the foregoing allegations as if set forth at length herein.

99.     Trustee asks the Court to declare that BCBSTX engaged is business disparagement of Little River by deliberately publishing false disparaging claims regarding Little River's billing practices to numerous individuals, that this was done with malice, fraudulent intent, and bad faith, and that BCBSTX lacked privilege to make these false statements.

100.     Trustee asks the Court to declare that BCBSTX engaged in a civil conspiracy with others by initiating meritless Investigations to exert business pressure on Little River, and that

underlying actions of the conspiracy constitute business disparagement, among other claims under applicable law.

101.    Trustee asks the Court to declare that BCBSTX engaged in an abuse of process by making a bad-faith Case Notification to the OIG for the purpose of exerting business pressure on Little River.

102.    Trustee asks the Court to declare that BCBSTX interfered with existing contracts by making false disparaging claims against Little River to those entities which Little River had existing contracts, as well as inappropriately making changes in payment behavior and making such changes known to those entities, and providing guidance in how to make the same business relationship changes with Little River. This directly resulted in those entities changing payment practices under those existing contracts and/or seeking new contracts with lower reimbursement rates.

103.    Trustee asks the Court to declare that BCBSTX interfered with prospective contracts by making false disparaging claims against Little River to those entities which Little River had existing contracts, as well as inappropriately making changes in payment behavior and making such changes known to those entities, and providing guidance in how to make the same business relationship changes with Little River. This directly resulted in those entities changing its prospective business plans and/or abandoning joint expansion projects with Little River due to these allegations and lower payment rates.

104.    Trustee asks the Court to declare that BCBSTX engaged in unfair competition by making statements and taking other actions that interfered with Little River's ability to conduct its business, as BCBSTX's actions led other payors to reduce their payments for valid and covered

services, as well as seeking lower paying contracts with Little River and cancel joint business plans that Little River was engaged in while BCBSTX was taking these actions.

105.    As a direct result of BCBSTX'S actions, omissions, and breaches, Little River has suffered actual and significant consequential damages to be determined at a hearing in this matter.

## VII.    DISCOVERY RULE

106.    To the extent applicable, the Discovery Rule applies to delay the accrual of Little River's causes of action in this matter, as the nature of Little River's injuries and BCBSTX's conduct was inherently undiscoverable. Little River discovered the basis for these claims as described in this Complaint. Little River exercised due diligence prior to the assertion of these claims and only upon uncovering BCBSTX's conduct was Little River able to assert these claims, within the applicable statute of limitations.

## VIII.    JURY DEMAND

107.    The Trustee hereby demands a trial by jury on all triable issues.

## IX.    REQUEST FOR RELIEF

**WHEREFORE**, Trustee requests the following relief:

A.    BCBSTX's Proof of Claim No. 422 is disallowed in its entirety, or in the alternative, is equitably subordinated pursuant to 11 U.S.C. §§ 510(c).

B.    Judgment in favor of Trustee and against BCBSTX on Counts I through VIII in an amount to be determined in this proceeding, plus all applicable penalties, exemplary damages, pre and post-judgment interest, and attorneys' fees and costs under applicable law, and declarations in its favor as set forth and requested in Count VIII.

C.    Such other and further relief as the Court may deem just and proper.

Dated: September 14, 2020

Respectfully submitted,

*/s/ Brad Thompson*
Brad Thompson
State Bar No. 24046968
BThompson@duanemorris.com
Jacob P. Arechiga
State Bar No. 24069309
JArechiga@duanemorris.com
James Earl
State Bar No. 24099133
JVEarl@duanemorris.com
**DUANE MORRIS LLP**
Las Cimas IV
900 S. Capital of Texas Hwy, Suite 300
Austin, TX 78746-5435
Tel.: (512) 277-2247  Fax: (512) 277-2301

**ATTORNEYS FOR PLAINTIFF &
SPECIAL COUNSEL TO JAMES
STUDENSKY, CHAPTER 7 TRUSTEE**

By:*/s/ Brian T. Cumings*
Brian T. Cumings
State Bar No. 24082882
GRAVES, DOUGHERTY, HEARON &
MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: 512.480.5626
Facsimile: 512.536.9926
bcumings@gdhm.com

**COUNSEL FOR JAMES STUDENSKY,
CHAPTER 7 TRUSTEE**